**GRANT & EISENHOFER P.A.**
Irene R. Lax (*Pro Hac Vice*)
485 Lexington Ave., 29th Floor
New York, NY 10017
Tel: (646) 722-8512
ilax@gelaw.com

**AL OTRO LADO, INC.**
Karlyn Kurichety (Cal Bar No. 313265)
634 S Spring St, Suite 908
Los Angeles, CA 90014
Tel: (253) 882-8071
karlyn@alotrolado.org

*Attorneys for Plaintifs*

[additional counsel on signature page]

## UNITED STATES DISTRICT COURT
## CENTRAL DISTRICT OF CALIFORNIA
## WESTERN DIVISION

| | |
|---|---|
| TAMMY JANE OWEN as the Administrator of the Estate of Benjamin James Owen; AL OTRO LADO, INC.; and MIRAN MIRIMANIAN,<br><br>        Plaintiffs,<br><br>  v.<br><br>U.S. IMMIGRATION AND CUSTOMS ENFORCEMENT; and U.S. DEPARTMENT OF HOMELAND SECURITY – OFFICE FOR CIVIL RIGHTS AND CIVIL LIBERTIES,<br><br>        Defendants. | Case 2:22-cv-00550-DSF-AFM<br><br>**NOTICE OF MOTION FOR PRELIMINARY INJUNCTION AND PARTIAL JUDGMENT ON THE PLEADINGS**<br><br>Filed Concurrently with:<br><br>- Memorandum of Points and Authorities<br>- [Proposed] Order<br>- Declaration of Irene R. Lax<br>- Declaration of Jeremy Jong<br>- Declaration of R. Andrew Free<br><br>United States District Judge: Hon. Dale S. Fischer<br><br>Date:    December 19, 2022<br>Time:   1:30 P.M.<br>Courtroom:  Courtroom 7D |

1    NOTICE IS HEREBY GIVEN THAT on December 19, 2022 at 1:30 p.m.

2  or as soon thereafter as counsel may be heard in the above-entitled Court, located

3  at 350 W. 1st Street, Los Angeles, CA 90012-4565 in Courtroom 7D before the

4  Hon. Dale S. Fischer, Plaintiffs Tammy Jane Owen as the Administrator of the

5  Estate of Benjamin James Owen, Al Orto Lado, Inc., and Miran Mirimanian will

6  and hereby move the Court for a Preliminary Injunction and for Partial Judgment

7  on the Pleadings.  This Motion is based on this Notice of Motion, Memorandum

8  of Points and Authorities filed herewith, declarations of Irene R. Lax, Jeremy

9  Jong, and R. Andrew Free, the pleadings and papers on file herein, and upon such

10  other matters as may be presented to the Court at the time of hearing.

11  Dated:  September 30, 2022          Respectfully submitted,

12                                      By:    */s/ Irene R. Lax*
                                        Irene R. Lax (*Pro Hac Vice*)
13                                      **GRANT & EISENHOFER P.A.**
                                        485 Lexington Ave, 29th Floor
14                                      New York, NY 10017
                                        Tel: (646) 722-8512
15                                      ilax@gelaw.com

16                                      Samuel Mukiibi (*pro hac vice*)
                                        **GRANT & EISENHOFER P.A.**
17                                      123 Justison Street, 7th Floor
                                        Wilmington, DE 19801
18                                      Tel: (302) 622-7086
                                        smukiibi@gelaw.com
19
                                        M. Elizabeth Graham (Cal. Bar No. 143085)
20                                      **GRANT & EISENHOFER P.A.**
                                        201 Mission Street, Suite 1200
21                                      San Francisco, California 94105
                                        Tel: 415-293-8210
22                                      Fax: 415-789-4367
                                        egraham@gelaw.com
23
                                        Karlyn Kurichety (Cal Bar No. 313265)
24                                      **AL OTRO LADO, INC.**
25                                      634 S Spring St, Suite 908
                                        Los Angeles, CA 90014
26                                      Tel: (253) 882-8071
27                                      karlyn@alotrolado.org

28                                      *Attorneys for Plaintiffs*

1

**NOTICE OF MOTION FOR PRELIMINARY INJUNCTION AND PARTIAL
JUDGMENT ON THE PLEADINGS**

1

2

## **L.R. 7-3 MEET AND CONFER STATEMENT**

3

This motion is made following the conference of counsel pursuant to L.R.

4

7-3 which took place on September 29, 2022.

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

**NOTICE OF MOTION FOR PRELIMINARY INJUNCTION AND PARTIAL
JUDGMENT ON THE PLEADINGS**

**GRANT & EISENHOFER P.A.**
Irene R. Lax (*Pro Hac Vice*)
485 Lexington Ave., 29th Floor
New York, NY 10017
Tel: (646) 722-8512
ilax@gelaw.com

**AL OTRO LADO, INC.**
Karlyn Kurichety (Cal Bar No. 313265)
634 S Spring St, Suite 908
Los Angeles, CA 90014
Tel: (253) 882-8071
karlyn@alotrolado.org

*Attorneys for Plaintiffs*
[additional counsel on signature page]

## UNITED STATES DISTRICT COURT
## CENTRAL DISTRICT OF CALIFORNIA
## WESTERN DIVISION

| | |
|---|---|
| TAMMY JANE OWEN as the Administrator of the Estate of Benjamin James Owen; AL OTRO LADO, INC.; and MIRAN MIRIMANIAN, <br><br> Plaintiffs, <br><br> v. <br><br> U.S. IMMIGRATION AND CUSTOMS ENFORCEMENT; and U.S. DEPARTMENT OF HOMELAND SECURITY – OFFICE FOR CIVIL RIGHTS AND CIVIL LIBERTIES, <br><br> Defendants. | Case 2:22-cv-00550-DSF-AFM <br><br> **MEMORANDUM OF LAW IN SUPPORT OF MOTION FOR PRELIMINARY INJUNCTION AND PARTIAL JUDGMENT ON THE PLEADINGS** |

# **TABLE OF CONTENTS**

**Page**

TABLE OF AUTHORITIES ..................................................................................... ii

I.  PRELIMINARY STATEMENT .................................................................... 1

II.  STATEMENT OF RELEVANT FACTS ....................................................... 3

III.  ARGUMENT ................................................................................................. 7

    A.  PLAINTIFFS ARE ENTITLED TO PARTIAL JUDGMENT ON THE PLEADINGS ................... 7

        1.  Defendants Failed To Make Responsive Documents Promptly Available And Plaintiffs Are Entitled To A Declaratory Judgment That Defendants' Failed To Comply With FOIA Deadlines ................................................................. 7

        2.  Plaintiffs Are Entitled to Partial Judgment On the Pleadings Concerning The Gourgen FOIA Request ....................................................................... 10

    B.  LEGAL STANDARD FOR INJUNCTIVE RELIEF ............................................. 13

    C.  THE COURT HAS JURISDICTION TO GRANT THE REQUESTED RELIEF ......................... 15

    D.  PLAINTIFFS ARE ENTITLED TO INJUNCTIVE RELIEF ....................................... 16

        1.  Plaintiffs Are Likely To Prevail On The Merits Of Their Claim ................. 16

        2.  Plaintiffs Will Suffer Irreparable Injury If The Injunction Is Not Granted... 19

        3.  Defendants Will Not Be Injured By An Injunction, Which Is In The Public Interest .............................................................................................. 21

        4.  The Court Should Order Defendants To Process Plaintiffs' FOIA Request Immediately ....................................................................................... 23

        5.  In The Alternative, ICE And CRCL Should Produce No Less Than 1,000 Pages Per Month For Each Of Plaintiffs' FOIA Requests ........................... 24

IV.  CONCLUSION ............................................................................................ 25

**MEMORANDUM OF LAW IN SUPPORT OF PRELIMINARY INJUNCTION AND PARTIAL JUDGMENT ON THE PLEADINGS**

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Aguirre v. U.S. Nuclear Regul. Comm'n*,
    2020 WL 804292 (S.D. Cal. Feb. 18, 2020) ........................................ 12

*AIDS Healthcare Foundation v. FDA*,
    2014 WL 10983763 (C.D. Cal. Feb. 13, 2014)................................... 22

*Al-Fayed v. CIA*,
    254 F.3d 300 (D.C. Cir. 2001) ........................................................... 14

*Alliance for Wild Rockies v. Cottrell*,
    632 F.3d 1127 (9th Cir. 2011) ........................................................... 13

*Am. Civil Liberties Union v. Dept of Defense*,
    339 F. Supp (S.D.N.Y. 2004)............................................... 15, 16, 22

*Amoco Production Co. v. Gambell*,
    480 U.S. 531 (1987) ........................................................................... 13

*Anderson v. U.S. Postal Serv.*,
    7 F. Supp. 2d 583 (E.D. Pa. 1998), *aff'd*, 187 F.3d 625 (3d Cir. 1999) ............ 11

*AOL v. Wolf*,
    952 F.3d 999 (9th Cir. 2020) ............................................................. 20

*Apotex, Inc. v. FDA*,
    2006 WL 1030151 (D.D.C. Apr. 19, 2006) ...................................... 18

*August v. FBI*,
    328 F.3d 697 (D.C. Cir. 2003) ......................................................... 19

*Biodiversity Legal Found. v. Badgley*,
    309 F.3d 1166 (9th Cir. 2002)............................................................. 9

*Board of Educ. v. Pico*,
    457 U.S. 853 (1982) ........................................................................... 19

*Citizens for Resp. & Ethics in Wash. v. DOJ*,
    746 F.3d 1082 (D.C. Cir. 2014) ....................................................... 11

ii

*Cornelius v. NAACP Legal Def. & Educ. Fund*,
    473 U.S. 788 (1985) ....................................................................... 19

*Ctr. to Prevent Handgun Violence v. Dep't of the Treasury*,
    40 F. Supp. 2d 3 (D.D.C. 1999) .................................................... 21

*Cuban v. SEC*,
    744 F. Supp. 2d 60 (D.D.C. 2010) ................................................ 11

*Cucci v. Drug Enf't Admin.*,
    871 F. Supp. 508 (D.D.C. 1994) ................................................... 10

*DOJ v. Reporters Committee for Freedom of the Press*,
    489 U.S. 749 (1989) ....................................................................... 21

*Elec. Frontier Found. v. Office of the Director of Nat'l Intelligence*,
    2007 WL 4208311 .......................................................................... 22

*Elec. Privacy Info. Ctr. v. Dept of Justice*,
    416 F. Supp. 2d 30 (D.D.C. 2006) .......................................... 15, 19

*EPA v. Mink*,
    410 U.S. 73 (1973) ......................................................................... 17

*Fed. Election Commission v. Akins*,
    524 U.S. 11 (1998) ........................................................................... 9

*Fiduccia v. DOJ*,
    185 F.3d 1035 (9th Cir. 1999)......................................................... 8

*Gilmore v. U.S. Dep't of Energy*,
    33 F. Supp. 2d 1184 (N.D. Cal. 1998) ..................................... *passim*

*Idaho Watersheds Project v. Hahn*,
    307 F.3d 815 (9th Cir. 2002).......................................................... 14

*Jud. Watch v. DOJ*,
    2018 WL 10758508 (D.C. Cir. June 22, 2018)................................ 11

*Judicial Watch, Inc. v. U.S. Dep't of Energy*,
    191 F. Supp. 2d 138 (D.D.C. 2002) ............................................... 22

*Lahr v. Nat'l Transp. Safety Bd.*,
    569 F.3d 964 (9th Cir. 2009)........................................................... 10

iii

**MEMORANDUM OF LAW IN SUPPORT OF PRELIMINARY INJUNCTION
AND PARTIAL JUDGMENT ON THE PLEADINGS**

*League of Women Voters v. Newby*,
   838 F.3d 1 (D.C. Cir. 2016) ................................................................ 20

*Lewis v. I.R.S.*,
   823 F.2d 375 (9th Cir. 1987) .............................................................. 10

*Long v. IRS*,
   693 F.2d 907 (9th Cir. 1982) ......................................................... 14, 16

*Los Angeles Times Communications LLC v. Dep't of Labor*,
   483 F. Supp. 2d 975 (C.D. Cal. 2007) ............................................... 21

*Martins v. U.S. Citizenship & Immigration Servs.*,
   962 F. Supp. 2d 1106 (N.D. Cal. 2013) ............................................. 13

*Munaf v. Geren*,
   553 U.S. 674 (2008) ............................................................................ 13

*N.L.R.B. v. Robbins Tire & Rubber Co.*,
   437 U.S. 214 (1978) ............................................................................ 10

*N.L.R.B. v. Sears, Roebuck & Co.*,
   421 U.S. 132 (1975) ...................................................................... 16, 17

*Nat. Res. Def. Council, Inc. v. United States EPA*,
   966 F.2d 1292 (9th Cir.1992) ............................................................... 9

*Natural Res. Def. Council v. Dep't of Energy*,
   191 F. Supp. 2d 41 (D.D.C. 2002) ..................................................... 22

*Nightingale v. U.S. Citizenship & Immigr. Servs.*,
   333 F.R.D. 449 (N.D. Cal. 2019) ................................................. 15, 24

*Nken v. Holders*,
   556 U.S. 418 (2009) ............................................................................ 20

*Nurse v. Sec'y of the Air Force*,
   231 F. Supp. 2d 323 (D.D.C. 2002) ................................................... 11

*Oglesby v. US Dep't of Army*,
   920 F.2d 57 (D.C. Cir. 1990) ............................................................. 15

*Open America v. Watergate Special Prosecution Force*,
   547 F.2d 605 (D.C. Cir. 1976) ..................................................... 23, 24

**MEMORANDUM OF LAW IN SUPPORT OF PRELIMINARY INJUNCTION
AND PARTIAL JUDGMENT ON THE PLEADINGS**

*Our Children's Earth Found. v. Nat'l Marine Fisheries Serv.*,
 2015 WL 4452136 (N.D. Cal. Jul. 20, 2015) ................................................. 8, 15

*Ramirez v. U.S. Immigration & Customs Enf't*,
 310 F. Supp.3d 7 (D.D.C. 2018) ..................................................................... 20

*S. Yuba River Citizens League v. Nat'l Marine Fisheries Serv.*,
 2008 WL 2523819 (E.D. Cal. Jun. 20, 2008) ...................................................... 8

*Sammis v. Barnhardt*,
 2002 U.S. Dist. LEXIS 10321 (N.D. Cal. June 6, 2002) .................................. 21

*Saravia for A.H. v. Sessions*,
 905 F.2d 1137 (9th Cir. 2018) ......................................................................... 13

*Sea Shepherd Conservation Soc'y v. Internal Revenue Serv.*,
 89 F. Supp. 3d 81 (D.D.C. 2015) ..................................................................... 11

*Sierra Club v. EPA*,
 2018 WL 10419238 (N.D. Cal. Dec. 26, 2018) ............................................... 23

*Sierra On-Line, Inc. v. Phoenix Software, Inc.*,
 739 F.2d 1415 (9th Cir. 1984) .................................................................... 13, 14

*Stanco v. Internal Revenue Serv.*,
 2020 WL 5107623 (E.D. Cal. Aug. 31, 2020) ................................................. 12

*Sun Microsystems, Inc. v. Microsoft Corp.*,
 188 F.3d 1115 (9th Cir. 1999) ......................................................................... 14

*Sussman v. U.S. Marshals Serv.*,
 494 F.3d 1106 (D.C. Cir. 2007) ....................................................................... 11

*Transgender Law Center v. United States Immigration and Customs
 Enforcement*,
 46 F.4th 771 (9th Cir. 2022) ............................................................................ 16

*Weinberger v. Romero–Barcelo*,
 456 U.S. 305 (1982) ......................................................................................... 13

*Winter v. Natural. Res. Def. Council*,
 555 U.S. 7 (2008) ............................................................................................. 13

**MEMORANDUM OF LAW IN SUPPORT OF PRELIMINARY INJUNCTION
AND PARTIAL JUDGMENT ON THE PLEADINGS**

*Yagman v. Pompeo*,
   868 F.3d 1075 (9th Cir. 2017)...................................................... 11, 12

**Statutes**

5 U.S.C. § 552 ................................................................................ *passim*

28 U.S.C. § 1331 ..................................................................................... 15

28 U.S.C. §§ 2201 and 2202........................................................................ 1

OPEN Government Act of 2007, Pub. L. 110-175, § 6(b), 121 Stat. 2524
   (2007)................................................................................................. 22

**Other Authorities**

Federal Rules of Civil Procedure Rule 12(c) ............................................. 1

Local Rule 37-1 ........................................................................................ 3

Federal Rules of Civil Procedure Rule 26(f)...................................... 6, 23

Federal Rules of Civil Procedure Rule 26(g) ........................................... 4

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

**MEMORANDUM OF LAW IN SUPPORT OF PRELIMINARY INJUNCTION
AND PARTIAL JUDGMENT ON THE PLEADINGS**

# I.   **PRELIMINARY STATEMENT**

This is an action brought by Plaintiffs Tammy Jane Owen as the wife and Administrator of the Estate of Benjamin James Owen ("Tammy"), Al Otro Lado, Inc. ("AOL"), and Miran Mirimanian ("Miran" and collectively with Tammy and AOL, the "Plaintiffs" and each a "Plaintiff"), under the Freedom of Information Act ("FOIA"), 5 U.S.C. § 552, et seq., and the Declaratory Judgment Act, 28 U.S.C. §§ 2201 and 2202, seeking records related to the untimely, preventable deaths of Benjamin James Owen ("Ben"), Maria Celeste Ochoa-Yoc De Ramirez ("Maria"), and Gourgen Mirimanian ("Gourgen") while all three individuals were in the custody of the U.S. Immigration and Customs Enforcement ("ICE"), an agency sub-component of the U.S. Department of Homeland Security ("DHS"), and generally concerning the in-custody deaths of other persons detained by ICE.

This Motion seeks, pursuant to Rule 12(c) of the Federal Rules of Civil Procedure, Partial Judgment on the Pleadings on the "promptly available" requirement of FOIA.  It is undisputed that Defendants failed to do what Congress requires of all agencies in receipt of properly-directed FOIA requests: make non-exempt agency records "promptly available." 5 U.S.C. § 552(a)(3)(A).  To make Plaintiffs wait *years* for completion of a FOIA request so long as the agency trickles out a handful of documents per month under a timeline, as Defendants have done here, renders the requirements of Section 552(a)(3)(A) effectively meaningless.

Plaintiffs further seek Judgment on the Pleadings with respect to the FOIA request directed to ICE stemming from Gourgen's death (the "Gourgen FOIA Request"), including a finding that Plaintiff Miran constructively exhausted his administrative remedies prior to filing this action and that this Court has subject matter jurisdiction of the Gourgen FOIA Request.  Four years ago, Miran's father, Gourgen, died in ICE custody.  Miran requested Gourgen's records from ICE.

**MEMORANDUM OF LAW IN SUPPORT OF PRELIMINARY INJUNCTION**
**AND PARTIAL JUDGMENT ON THE PLEADINGS**

FOIA obligates ICE to make those requested records promptly available.  Instead, ICE withheld and continues to withhold Gourgen's death records under a gallimaufry of shifting and contradictory excuses.  ICE first claimed that only two pages of records exist.   After losing an administrative appeal, ICE's next response admitted the records existed but were exempt because of an ongoing investigation—the claimed investigation was in fact.  Before this Court, ICE admits to having hundreds of pages of records responsive to the Gourgen FOIA Request, yet questions this Court's jurisdiction on the grounds that Plaintiff Miran allegedly failed to exhaust administrative remedies by not filing an administrative appeal.  However—and dispositive to this claim—ICE also admits to having failed to provide Miran his notice of his right to appeal.  By failing to provide notice of administrative remedies, ICE constructively exhausted the need for an administrative appeal.  Plaintiff Miran is consequently entitled to judgment as a matter of law that ICE has violated the FOIA by unlawfully withholding responsive agency records.

Plaintiffs further seek a preliminary injunction enjoining Defendants ICE and DHS – Office of Civil Rights and Civil Liberties ("DHS CRCL," and collectively with ICE, the "Defendants" and each a "Defendant") from unlawfully withholding agency records concerning Ben, Maria, and Gourgen's deaths.   Specifically, Plaintiffs seek an order compelling the processing and production of documents responsive to Plaintiffs' FOIA requests, an order requiring ICE and DHS CRCL to each underline produce responsive records at a rate no less than 1,000 pages per month for each of Plaintiffs' FOIA requests, and an order requiring Defendants to process and disclose the requested records "promptly."

The timely processing and production of documents is critical here because Ben, Maria, and Gourgen's deaths are not outliers.   They are just three of the

**MEMORANDUM OF LAW IN SUPPORT OF PRELIMINARY INJUNCTION
AND PARTIAL JUDGMENT ON THE PLEADINGS**

hundreds of deaths of people in ICE custody since 2003, which have alarmingly and horrifically increased over the past decade.  ICE in-custody deaths and the agency's failure to address their common, well-documented causes, have provoked significant and widespread public outcry for change, reform, and even abolition of ICE's deadly detention system.  These deaths are thus part of a larger systemic breakdown of the federal government's detention program.  This context provides the reason why Ben's, Maria's, and Gourgen's cases have become a significant part of a broader effort to prevent additional deaths under ICE's watch, including widespread efforts by Plaintiff AOL to inform the public about these issues and advocate for changes in the federal detention system. Additionally, Defendants have violated and continue to violate their FOIA obligations to make records "promptly available," and to treat Plaintiffs' requests on a first-in, first-out basis, and thus injunctive relief is necessary to at the bare minimum set the rate of production in this matter.

## II.    STATEMENT OF RELEVANT FACTS[1]

Plaintiffs respectfully direct the Court to the Amended Complaint (Doc. 58, the "Complaint" or "Compl.") for a full recitation of the facts of this case.  Since filing the Complaint, serious questions remain unanswered about Ben, Maria, and Gourgen's deaths, and Defendants' continued delay in releasing responsive records hinders Plaintiffs' ability to find answers.

***Plaintiff Tammy***

On January 25, 2020, Ben, a 39-year-old British national, died while in ICE custody a mere 12 days after being detained following ICE's issuance of a warrantless immigration detainer request.  Plaintiff Tammy, Ben's wife, submitted

---

[1] Pursuant to Local Rule 37-1, on September 29, 2022, the parties met and conferred to discuss Plaintiffs' instant motion, which Defendants oppose.

**MEMORANDUM OF LAW IN SUPPORT OF PRELIMINARY INJUNCTION**
**AND PARTIAL JUDGMENT ON THE PLEADINGS**

a FOIA request to Defendant ICE on July 22, 2021 via ICE's listed FOIA email requesting records regarding, *inter alia*, Ben's custody and death and general ICE operations at the Baker County Detention Center in Macclenny, Florida ("Owen FOIA Request"). Plaintiff Tammy sent follow-up correspondences on September 14, 2021, and September 16, 2021. Plaintiff Tammy further resubmitted the FOIA request to ICE by uploading it to ICE's online FOIA portal on October 31, 2021. On November 18, 2021, Plaintiff Tammy sent a follow-up email to an ICE FOIA officer. On July 1, 2022, only *after* the filing of the Complaint (Doc. 58), Defendant ICE served its initial response to the Owen FOIA Request, enclosing 449 pages of responsive documents. Since that time, Defendant ICE has produced the following additional responses: July 26, 2022 third interim response producing 51 pages; August 31, 2022 fourth interim response producing 305 pages; and September 26, 2022 fifth interim response producing 208 pages. Defendants' document production is ongoing.

***Plaintiff AOL***

On March 8, 2020, Maria, a 22-year-old Guatemalan asylum seeker, died in ICE custody six months after entering the United States seeking asylum. On January 4, 2021, Plaintiff AOL submitted a FOIA request to ICE requesting records regarding, *inter alia*, the custody and death of Maria Celeste Ochoa-Yoc De Ramirez ("Yoc de Ramirez FOIA Request"). To date, AOL has received a small subset of documents responsive to the Yoc de Ramirez FOIA Request. The Joint Rule 26(g) report submitted by the parties in this action details that ICE estimates having 10,600 pages of potentially responsive documents to this FOIA request. *See* Doc. 69, p. 6.

On March 11, 2021, AOL sent another FOIA request to ICE regarding various prior FOIA requests ("ICE Meta-FOIA Request"). On December 16, 2021,

**MEMORANDUM OF LAW IN SUPPORT OF PRELIMINARY INJUNCTION AND PARTIAL JUDGMENT ON THE PLEADINGS**

AOL sent Defendant DHS CRCL a FOIA request for records regarding various ICE detention centers ("CRCL Report FOIA Request").  On February 7, 2022, DHS CRCL responded to the request and identified various responsive records held by ICE.  On May 3, 2022, **after** the filing of Plaintiffs' Amended Complaint, ICE served its first interim response to these FOIA requests, enclosing 751 pages of records responsive to the ICE Meta-FOIA Request and the CRCL Report FOIA Request.  On August 15, 2022, DHS CRCL produced 90 pages responsive to the ICE Meta-FOIA Request and the CRCL Report FOIA Request.  At this time, Defendants' document production in response to these FOIA requests is ongoing.

### *Plaintiff Miran*

On February 7, 2018, when ICE took 54-year-old Armenian national Gourgen Mirimanian into its custody, ICE knew he needed medication to control his hypertension. (Doc. 58, ¶¶ 49-65, Exhibit K, at p. 1).  On April 10, 2018, guards found Gourgen dead in his bunk, allegedly killed by hypertension and atherosclerotic cardiovascular disease.  *Id.*  On June 19, 2018, Miran submitted a FOIA request to ICE (and other agencies) seeking records related to Gourgen and his in-custody death ("Gourgen FOIA Request" and collectively with the Owen FOIA Request, the Yoc de Ramirez FOIA Request, the ICE Meta-FOIA Request, and the CRCL Report FOIA Request, the "FOIA Requests" and each a "FOIA Request").  By June 24, 2018, ICE had completed its investigation into Gourgen's death, as admitted in Defendants' Answer to Plaintiffs' Amended Complaint ("Answer").  Doc. 61, ¶¶ 112-13; Doc. 58, ¶ 114, Ex. K, at p. 73; *id.* at Ex. L (a separate FOIA request related to open death investigations confirmed no open death investigation pertaining to Gourgen).  Although ICE's death investigation of Gourgen is complete, on July 6, 2018, ICE produced a mere two pages of records, which do not include ICE's death investigation.  Doc. 58, ¶ 104.  On July 14, 2018,

**MEMORANDUM OF LAW IN SUPPORT OF PRELIMINARY INJUNCTION
AND PARTIAL JUDGMENT ON THE PLEADINGS**

Plaintiff Miran administratively appealed ICE's response; his appeal was largely sustained, and his original FOIA request was remanded to ICE for additional searching. *Id.* at ¶¶ 105-07.

The remanded appeal provided another opportunity for ICE to disclose Gourgen's death investigation report. ICE did not. Instead, ICE's May 6, 2019 response now claimed that the records sought related to an ongoing investigation and were thus exempt from disclosure pursuant to FOIA Exemption 7(A). *Id.* at ¶109; Answer, Doc. 61, ¶ 109 (admitting allegation). As Defendants' Answer admits, ICE failed to notify Plaintiff Miran of his right to appeal the denial of his FOIA request. Doc. 58, ¶ 108; Answer, Doc. 61, ¶ 110 (ICE "admit[s] that the [denial] letter makes no express reference to any right of appeal."). Miran accordingly did not file an appeal and instead reasonably expected the records to be made available upon termination of ICE's alleged open investigation. At the time of the Complaint's filing, nearly four years after his initial FOIA request, Miran had received no responsive medical, detention, or investigatory records. Doc. 58, ¶¶ 117, 120. In the parties' Joint Rule 26(f) report (Doc. 69, p. 7), Defendants admit that ICE has in its possession "150 pages of potentially responsive documents in response to the Mirimanian request," yet do not provide a timeline for producing these records or cite any exemption barring their release. Instead, for the first time during this litigation, ICE claims that Miran failed to exhaust his administrative remedies by failing to file an appeal. *Id.* at 7-8.

### *ICE and CRCL's rate of respectively processing 500 and 450 pages records per month*

In the Joint Rule 26(f) Report, Defendants declared that they would finally provide records responsive to Plaintiffs' FOIA Requests. *See* Doc. 69, p. 6-7. For the Owen FOIA Request and Yoc de Ramirez FOIA Request, ICE committed to a

**MEMORANDUM OF LAW IN SUPPORT OF PRELIMINARY INJUNCTION
AND PARTIAL JUDGMENT ON THE PLEADINGS**

"rolling production" wherein it processes "500 pages of *potentially* responsive documents each month." *Id*. ICE anticipated finishing its response to the Yoc de Ramirez FOIA Request by June 28, 2024, which clearly violates the promptly available requirement.  *Id.* at p. 7.  For the CRCL Report FOIA Request, Defendant DHS-CRCL claims the right to slow record production even further to "450 pages of potentially responsive documents each month[,]" to be completed by January 17, 2023. *Id.* Defendants do not explain the production disparity between the two rates of processing. Furthermore, Defendants have not articulated any foreseeable harm to the agencies if these records were released in whole or in part.

## III.   ARGUMENT

### A.   PLAINTIFFS ARE ENTITLED TO PARTIAL JUDGMENT ON THE PLEADINGS

#### 1.   Defendants Failed To Make Responsive Documents Promptly Available And Plaintiffs Are Entitled To A Declaratory Judgment That Defendants' Failed To Comply With FOIA Deadlines

It is undisputed that Defendants failed to do what Congress requires of all agencies in receipt of properly-directed FOIA requests: make non-exempt agency records "promptly available." 5 U.S.C. § 552(a)(3)(A).  Agencies in receipt of properly-directed FOIA requests are under an *obligation* to ensure that they adequately search for and *promptly* make available responsive records.  *See* 5 U.S.C. §§ 552(a)(3)(A), 552(a)(3)(C); *Zemansky*, 767 F.2d at 571.  Failure to make a timely determination about the disclosure of documents, regardless of whether that agency later makes a legitimate decision to withhold relevant documents, is nonetheless an improper withholding in violation of the FOIA.  *See Gilmore*, 33 F. Supp. 2d at 1188. To be excused from the "promptly" requirement, Defendants must show exceptional circumstances justifying the delay.   5 U.S.C § 552(a)(6)(C).   While "exceptional

**MEMORANDUM OF LAW IN SUPPORT OF PRELIMINARY INJUNCTION AND PARTIAL JUDGMENT ON THE PLEADINGS**

circumstances" are not defined, the FOIA provides that such exceptional circumstances *cannot include* "a delay that results from a predictable agency workload of requests . . . unless the agency demonstrates reasonable progress in reducing its backlog of pending requests."  5 U.S.C. § 552(a)(6)(C)(ii).

The uncontroverted record shows that Defendants' proposed disclosure schedule was not "prompt[]," as the FOIA requires.  Here, the record is beyond dispute: Defendants failed to satisfy the requirements of 5 U.S.C. § 552(a)(6)(A) within the required statutory deadlines.  Plaintiffs first submitted the Owen FOIA Request on July 22, 2021, the Yoc de Ramirez FOIA Request on January 4, 2021, the ICE Meta-FOIA Request on March 11, 2021, the CRCL Report FOIA Request on December 16, 2021, and the Gourgen FOIA Request on June 19, 2018.  Declaration of Irene R. Lax at ¶ 4 ("Lax Decl."); Declaration of Jeremy Jong at ¶¶ 12, 15-6 ("Jong Decl."); Declaration of R. Andrew Free at ¶ 12 ("Free Decl.").  For each FOIA Request submitted by Plaintiffs, a document production remains outstanding, and in many cases, productions only commenced ***after***, *i.e.* because of, the filing of this litigation.  Moreover, to date, Defendants' document productions have obvious deficiencies, including inadequate search tasking and the absence of critical documents, including the root cause analysis of the deaths of Ben, Maria, and Gourgen, and all drafts of each's detainee death review.  Defendants' failure to make a timely determination regarding the response to Plaintiffs' FOIA requests is alone a violation of the FOIA.  *See Gilmore*, 33 F. Supp. 2d at 1188.

Nor is there any justification for Defendants' delay. *See, e.g.*, *Fiduccia v. DOJ*, 185 F.3d 1035, 1041 (9th Cir. 1999) ("Congress gave agencies 20 *days*, not years, to decide whether to comply with requests and notify the requesters[.]") (emphasis in original). The text of Section 552(a)(3)(A) is unambiguous—Defendants must make the records Plaintiffs seek available promptly, which *does not* mean ***years*** later. *See*

**MEMORANDUM OF LAW IN SUPPORT OF PRELIMINARY INJUNCTION**
**AND PARTIAL JUDGMENT ON THE PLEADINGS**

*Gilmore*, 33 F. Supp. 2d at 1185 (granting summary judgment to FOIA requester following 5-month agency delay); *Our Children's Earth Found. v. Nat'l Marine Fisheries Serv.*, 2015 WL 4452136 at *8 (N.D. Cal. Jul. 20, 2015) ("[T]he [agencies'] failure to comply with the FOIA's time limits is, by itself, a violation of the FOIA."); *S. Yuba River Citizens League v. Nat'l Marine Fisheries Serv.*, 2008 WL 2523819 at *5 (E.D. Cal. Jun. 20, 2008) (same). Plaintiffs are thus entitled to judgment on the pleadings regarding Defendants' violation of the FOIA's promptly available requirement.

For the same reasoning, Plaintiffs are also entitled to a declaratory judgment that Defendants violated the FOIA's deadlines. Declaratory judgment is proper when there are purely legal questions at issue and the judgment will clarify the legal issues and provide clarity to the parties and the public. *Nat. Res. Def. Council, Inc. v. United States EPA* ("NRDC"), 966 F.2d 1292, 1299 (9th Cir.1992); *see also Biodiversity Legal Found. v. Badgley*, 309 F.3d 1166, 1174–75 (9th Cir. 2002). Likewise, declaratory judgment is appropriate when an agency has ignored statutory deadlines. *See, e.g.*, *NRDC*, 966 F.2d at 1299; *Fed. Election Commission v. Akins*, 524 U.S. 11, 21 (1998) (a "plaintiff suffers an 'injury in fact' when the plaintiff fails to obtain information which must be publicly disclosed pursuant to a statute."); *Gilmore*, 33 F. Supp. 2d at 1189 (agency's failure to process FOIA request in a timely manner was itself an injury).

Timeliness is central to the intent and purpose of the FOIA.  Here, Defendants undeniably failed to comply with their obligations under FOIA by their ongoing failure to timely and adequately produce responsive records—ICE did not even acknowledge receipt of the Owen FOIA Request, nor assign it a tracking number or otherwise substantively respond, until ***after*** the Complaint was filed in this matter.  Doc 58, ¶74.  Furthermore, ICE did not respond to ICE Meta-FOIA

Request made on March 11, 2021 and did not respond to any of AOL's seven inquiries made between April 23 and October 22, 2021. By the time this case was filed, ICE had provided no substantive response to ICE Meta-FOIA Request. ICE's failures to respond to Plaintiffs' FOIA Requests are thus in violation of the FOIA.

Indeed, in none of the communications with Plaintiffs have Defendants justified their failure to make a final determination within the required twenty-day period applicable to standard FOIA requests, nor have they invoked any of the "unusual circumstances" under which FOIA allows for a delayed response. *See* 5 U.S.C. § 552(a)(6)(B)(iii)(III). Thus, a declaratory judgment stating Defendants violated the FOIA by failing to comply with the statutory deadlines set forth in 5 U.S.C. § 552(a)(6)(A)(i) and (ii) is appropriate.

## 2. Plaintiffs Are Entitled to Partial Judgment On the Pleadings Concerning The Gourgen FOIA Request

Plaintiffs seek Partial Judgment on the Pleadings that Plaintiff Miran constructively exhausted his administrative remedies prior to filing this action and that this Court has subject matter jurisdiction of the Gourgen FOIA Request. By withholding records from a completed investigation under FOIA Exemption 7(A), ICE continues to deny Miran his statutorily required prompt access to unexempted records. FOIA's "strong presumption in favor of disclosure" requires narrowly construing all exemptions and tasks the agency with justifying the withholding of information under an exemption. *Lahr v. Nat'l Transp. Safety Bd.*, 569 F.3d 964, 973 (9th Cir. 2009). "The applicable portion of Exemption 7(A) exempts from disclosure 'investigatory records compiled for law enforcement purposes, *but only to the extent that the production of such records would . . . interfere with enforcement proceedings.*'" *Lewis v. I.R.S.*, 823 F.2d 375, 379 (9th Cir. 1987) (quoting 29 U.S.C. § 552(b)(7)(A)) (emphasis added). ICE agrees that its own

records show Gourgen's death investigation was completed on June 24, 2018, long before its May 6, 2019 denial under Exemption 7(A).  Doc. 61, ¶¶ 112-13; *see* Doc. 58, Compl., Ex. K, at p. 73.  As of May 8, 2019, there were no open ICE investigations pertaining to Gourgen.  *See* Doc. 58, Compl, ¶ 114, Ex. L.

Records withheld under 7(A) as potentially interfering in a law enforcement proceeding are only temporarily barred from FOIA disclosure.  *See, e.g., N.L.R.B. v. Robbins Tire & Rubber Co.*, 437 U.S. 214, 236 (1978).  When the underlying reason for the 7(A) exemption expires, the records must be disclosed.  *Id.* at 236.  The only major exception, inapplicable here, is when the records' disclosure would adversely affect other ongoing investigations.  *See Cucci v. Drug Enf't Admin.*, 871 F. Supp. 508, 511 (D.D.C. 1994) (permitting 7(A) exemption where records were "intertwined with other ongoing investigations").

As of ICE's May 6, 2019 denial letter, ICE's investigation of Gourgen's death is closed.  ICE has not claimed that releasing Gourgen's death investigation records would jeopardize another ongoing investigation.  Therefore, even if Gourgen's investigation had been open at the time of Plaintiff's FOIA request— which it was not—ICE was and remains obligated to disclose these records now that the investigation is terminated.  *See Jud. Watch v. DOJ*, 2018 WL 10758508, at *1 (D.C. Cir. June 22, 2018); *Citizens for Resp. & Ethics in Wash. v. DOJ*, 746 F.3d 1082, 1097 (D.C. Cir. 2014); *Sussman v. U.S. Marshals Serv.*, 494 F.3d 1106, 1115 (D.C. Cir. 2007); *Sea Shepherd Conservation Soc'y v. Internal Revenue Serv.*, 89 F. Supp. 3d 81, 95 (D.D.C. 2015) ; *Cuban v. SEC*, 744 F. Supp. 2d 60, 87 (D.D.C. 2010).

Before this Court, ICE's only defense is to question whether Plaintiff actually satisfied the constructive exhaustions requirements such that this Court can properly hear his claims.  *See* Doc. 69, p. 8, ll. 9-20.  ICE agrees that it failed to provide

Plaintiff his statutorily required notice of a right to an administrative appeal. Plaintiff has and continues to maintain that this failure constitutes constructive exhaustion. Doc. 58, ¶¶ 110-11. Before filing a FOIA suit, a requester "must first exhaust available administrative remedies, including an appeal within the agency." *Yagman v. Pompeo*, 868 F.3d 1075, 1083-84 (9th Cir. 2017) (citing § 552(a)(6)(A)(i)–(ii), (C)(i)). Administrative remedies are deemed constructively exhausted when an "agency fails to comply with the applicable time limit provisions." 5 U.S.C. § 552 (6)(C)(i); *see Nurse v. Sec'y of the Air Force*, 231 F. Supp. 2d 323, 328 (D.D.C. 2002) ("The FOIA is considered a unique statute because it recognizes a constructive exhaustion doctrine for purposes of judicial review upon the expiration of certain relevant FOIA deadlines."); *see also Anderson v. U.S. Postal Serv.*, 7 F. Supp. 2d 583, 586 (E.D. Pa. 1998), *aff'd*, 187 F.3d 625 (3d Cir. 1999). Under the FOIA time limit provisions, "within 20 days" of a request, and in the case of an adverse decision, the agency must notify the requester of "the right of such person to appeal to the head of the agency, within a period determined by the head of the agency that is not less than 90 days after the date of such adverse determination." 5 U.S.C. § 552 (a)(6)(A); *see Stanco v. Internal Revenue Serv.*, 2020 WL 5107623, at *6 (E.D. Cal. Aug. 31, 2020). Here, ICE failed to provide Plaintiff Miran with this notice and "admits that the [denial] letter makes no express reference to any right of appeal." Doc. 61, ¶ 110. This admission conclusively proves that Miran's administrative remedies were constructively exhausted. Also, by warning Plaintiff that other exemptions might apply "once all pending matters are resolved and FOIA Exemption 7(A) no longer applies," ICE misled Miran to reasonably believe that records would be produced upon the investigation's closure, rendering an appeal unnecessary. Doc. 58, ¶ 109.

**MEMORANDUM OF LAW IN SUPPORT OF PRELIMINARY INJUNCTION**
**AND PARTIAL JUDGMENT ON THE PLEADINGS**

Moreover, administrative exhaustion is "a prudential rather than jurisdictional consideration," meaning that "courts can waive the requirement when, for example, further administrative proceedings would prove futile." *Yagman*, 868 F.3d at 1083-84. "A claimant can show futility of administrative review if he shows that '[r]equiring him to exhaust administrative remedies would not serve the policies underlying exhaustion.'" *Aguirre v. U.S. Nuclear Regul. Comm'n*, 2020 WL 804292, at *3 (S.D. Cal. Feb. 18, 2020) (quoting *Cassim v. Bowen*, 824 F.2d 791, 795 (9th Cir. 1987)).

Here, further administrative proceedings would be futile because ICE has already refused to disclose records after Plaintiff's first successful appeal. Plaintiff previously appealed ICE's two-page record disclosure as the product of a demonstrably inadequate search. Doc. 58, ¶¶ 105-07. After the remand, rather than conduct the required search, ICE fabricated an ongoing investigation in order to improperly invoke Exemption 7(A). ICE continues to withhold the requested records despite acknowledging having completed Gourgen's death investigation on June 24, 2018. Doc. 61, ¶¶ 112-13; *see* Doc. 58, Ex. K, at p. 73. A second appeal would only provide ICE with another opportunity to plead a new, equally groundless excuse for not disclosing Gourgen's death report. Therefore, even if this Court finds no constructive exhaustion occurred—which it should—this Court should waive the exhaustion requirement for the reasons above and order that ICE disclose records responsive to the Gourgen FOIA Request, including Gourgen's death records, to his family.

**B.** **LEGAL STANDARD FOR INJUNCTIVE RELIEF**

A preliminary injunction is a device for "preventing the irreparable loss of rights before judgment." *Sierra On-Line, Inc. v. Phoenix Software, Inc.*, 739 F.2d 1415, 1422 (9th Cir. 1984) (citation omitted). For a court to issue a

preliminary injunction, a plaintiff must demonstrate (1) a likelihood of success on the merits, (2) a likelihood of irreparable harm that would result if an injunction were not issued, (3) the balance of equities tips in favor of the plaintiff, and (4) an injunction is in the public interest. *See Winter v. Natural. Res. Def. Council,* 555 U.S. 7, 20, (2008); *Munaf v. Geren,* 553 U.S. 674, 689-690, (2008); *Amoco Production Co. v. Gambell,* 480 U.S. 531, 542 (1987); *Weinberger v. Romero–Barcelo,* 456 U.S. 305, 311–312, (1982); *Saravia for A.H. v. Sessions*, 905 F.2d 1137, 1142 (9th Cir. 2018).

A preliminary injunction may be appropriate when a plaintiff raises "serious questions going to the merits" in lieu of a likelihood of success on the merits of the case, and the "balance of hardships tips sharply in the plaintiff's favor," provided that the other elements for preliminary relief are met. *Alliance for Wild Rockies v. Cottrell,* 632 F.3d 1127, 1131–32 (9th Cir. 2011); *see Martins v. U.S. Citizenship & Immigration Servs.,* 962 F. Supp. 2d 1106, 1119 (N.D. Cal. 2013). Furthermore, in deciding whether to grant the injunction, "the court must balance the equities between the parties and give due regard to the public interest." *Idaho Watersheds Project v. Hahn*, 307 F.3d 815, 833 (9th Cir. 2002). As the FOIA provides, "the court shall determine the matter *de novo*." 5 U.S.C. § 552(a)(4)(B); *see also Al-Fayed v. CIA*, 254 F.3d 300, 308 (D.C. Cir. 2001). In determining whether a preliminary injunction is proper, "[t]he district court is not required to make any binding findings of fact; it need only find probabilities that the necessary facts can be proved." *Sierra On-Line, Inc.*, 739 F.2d at 1423. Moreover, "the greater the relative hardship to the moving party, the less probability of success must be shown." *Sun Microsystems, Inc. v. Microsoft Corp.*, 188 F.3d 1115, 1119 (9th Cir. 1999) (*quoting Nat'l Ctr. For Immigrants Rights v. INS*, 743 F.2d 1365, 1369 (9th Cir. 1984)).

**MEMORANDUM OF LAW IN SUPPORT OF PRELIMINARY INJUNCTION
AND PARTIAL JUDGMENT ON THE PLEADINGS**

## C.   THE COURT HAS JURISDICTION TO GRANT THE REQUESTED RELIEF

The FOIA expressly grants jurisdiction in the district courts to enjoin an agency from improperly withholding agency records.   *Gilmore v. U.S. Dep't of Energy*, 33 F. Supp. 2d 1184, 1186 (N.D. Cal. 1998) (citing 5 U.S.C. § 552(a)(4)(B); *Kissinger v. Reports Committee for Freedom of the Press*, 445 U.S. 136, 150 (1980)); *Long v. IRS*, 693 F.2d 907, 909 (9th Cir. 1982) (citation omitted) ("In utilizing its equitable powers to enforce the provisions of the FOIA, the district court may consider injunctive relief where appropriate . . . to bar future violations that are likely to occur.")).

> The district court has jurisdiction to enjoin the agency from withholding agency records and to order the production of any agency records improperly withheld from the complainant.  In such a case the court shall determine the matter de novo[.]

5 U.S.C. § 552(a)(4)(B).   Plaintiffs' claims in the instant motion are ripe for adjudication because Plaintiffs have exhausted all applicable administrative remedies.  *See* 5 U.S.C. § 552(a)(6)(C)(i) (a FOIA plaintiff exhaust administrative remedies where the agency fails to comply with the applicable time limit provisions of this paragraph); *see Oglesby v. US. Dep't of Army,* 920 F.2d 57, 62 (D.C. Cir. 1990).[2]

Federal courts exercise their statutory authority to grant motions for a preliminary injunction in FOIA cases where the facts support an injunction.  *See, e.g.*, *Elec. Privacy Info. Ctr. v. Dept of Justice,* 416 F. Supp. 2d 30, 35 (D.D.C. 2006) *("EPIC")* (granting preliminary injunction in FOIA case and requiring processing within 20 days, and a *Vaughn* index within 30 days); *Am. Civil Liberties Union v. Dept of Defense,* 339 F. Supp. 2d. 501, 503 (S.D.N.Y. 2004) ("*ACLU*") (granting preliminary injunction in FOIA case and requiring production in one

---

[2] This Court also has jurisdiction pursuant to 28 U.S.C. § 1331.

month).  Courts have held that the "FOIA imposes no limits on courts' equitable powers in enforcing its terms" and "unreasonable delays in disclosing non-exempt documents violate the intent and purpose of the FOIA, and the courts have a duty to prevent [such] abuses."  *Payne Enter., Inc.*, 837 F.2d at 494 (quotation omitted).

Moreover, the FOIA imposes a definite timeline for agency responses.  ICE should have "determine[d] within 20 [business] days" after receiving Plaintiffs' FOIA requests whether to comply or deny the request and then "immediately notify" Plaintiffs of "such determination and reasons therefor[.]"  5 U.S.C. § 552(a)(6)(A)(i).  ICE has repeatedly ignored its obligation to process the FOIA Requests within 20 days: "multiple courts, including in this District, have found that violation of FOIA's statutory 20-day deadline constitutes a harm."  *Nightingale v. U.S. Citizenship & Immigr. Servs.*, 333 F.R.D. 449, 461 (N.D. Cal. 2019) (citing *Brown v. U.S. Customs & Border Prot.*, 132 F. Supp. 3d 1170, 1173 (N.D. Cal. 2015); *Our Children's Earth Found. v. Nat'l Marine Fisheries Serv.*, No. 14-1130-SC, 2015 WL 4452136, at *7 (N.D. Cal. July 20, 2015) (internal quotation marks and citation omitted); *Long v. U.S. I.R.S.*, 693 F.2d 907, 910 (9th Cir. 1982).

### D.  PLAINTIFFS ARE ENTITLED TO INJUNCTIVE RELIEF

The FOIA expressly provides for injunctive relief.  5 U.S.C. § 552(a)(4)(B); *see ACLU,* 339 F. Supp. 2d. at 503 (recounting three cases where district courts ordered productions within 30, 60, or 85 days and granting plaintiffs' motions for preliminary injunction).  Here, the preliminary injunction factors establish Plaintiffs' entitlement to injunctive relief.

### 1.  Plaintiffs Are Likely To Prevail On The Merits Of Their Claim

Plaintiffs are clearly entitled to processing of their FOIA requests, and thus Plaintiffs' likelihood of prevailing on the merits could not be stronger.  Agencies in

receipt of properly drafted FOIA requests are under an obligation to ensure that they adequately search for and "promptly" make available responsive records.  *See* 5 U.S.C. §§ 552(a)(3)(A); *see Transgender Law Center v. United States Immigration and Customs Enforcement*, 46 F.4th 771, 777 (9th Cir. 2022) (finding agencies failed to meet their burden to show search adequacy "beyond material doubt" in a case also involving the death of an individual in DHS custody).

Although preliminary injunctive relief is an exceptional remedy in FOIA cases, such relief is appropriate where, as here, an agency has utterly failed to timely process a FOIA request.  As discussed *supra*, here Defendants have violated the FOIA's promptly available requirement.  *See supra*, Section II.A.1.  Moreover, the intent and purpose of the FOIA further evidences the egregiousness of Defendants' unlawful conduct.  The purpose of the FOIA is "to establish a general philosophy of full agency disclosure unless information is exempted under clearly delineated statutory language."  *N.L.R.B. v. Sears, Roebuck & Co.*, 421 U.S. 132, 136 (1975) (quoting S. Rep. No. 813, 89th Cong., 1st Sess. 3 (1965); *EPA v. Mink*, 410 U.S. 73, 79-90 (1973)).  As noted by the U.S. Supreme Court:

> Without question, the [FOIA] is broadly conceived.  It seeks to permit access to official information long shielded unnecessarily from public view and attempts to create a judicially enforceable public right to secure such information from possibly unwilling official hands.

*EPA v. Mink*, 410 U.S. at 80.  "As the [FOIA] is structured, virtually every document generated by an agency is available to the public in one form or another, unless it falls within one of the [FOIA's] nine exemptions."  *Sears*, 421 U.S. at 136.

In establishing and later amending FOIA, Congress sought to ensure the public's timely access to government records.  Congress even amended the FOIA to address the common complaint of agency delays in responding to FOIA requests.  *Gilmore*, 33 F. Supp. 2d at 1187; *id.* at 1185 ("Congress has repeatedly stressed the

**MEMORANDUM OF LAW IN SUPPORT OF PRELIMINARY INJUNCTION
AND PARTIAL JUDGMENT ON THE PLEADINGS**

need for timely compliance with the requirements of FOIA.  In amending the FOIA in 1974 to include a ten-day required response period, Congress noted that it was doing so 'in order to contribute to the fuller and faster release of information, which is the basic objective of the Act.") (internal citation omitted).  As explained by Congress:

> [I]nformation is often useful only if it is timely.  Thus, excessive delay by the agency in its response is often tantamount to denial.  It is the intent of this bill that the affected agencies be required to respond to inquiries and administrative appeals within specific time limits.

*Id.*  In order to emphasize the importance of agency adherence to FOIA deadlines, Congress provided the public with redress in court for any agency failure to comply with the FOIA, including allowing punishment by contempt.  *EPA v. Mink*, 410 U.S. at 79 (quoting 5 U.S.C. § 552(a)(3)).  Congress also amended the FOIA to allow for the recovery of attorneys' fees and costs where requesters are forced to resort to the judicial process to obtain requested documents, and in some instances permitting disciplinary action against the employee responsible for the wrongful withholding.  5 U.S.C. §§ 552(a)(4)(E), 552(a)(4)(F)(i).

Furthermore, failing to task a search in a timely manner may render the agency's response inadequate. An initial under inclusive search tasking, combined with the passage of time and the routine destruction of records that occurs within agencies as a matter of course under the Federal Records Act, can result in responsive records being permanently lost or destroyed.  For the foregoing reasons, Defendants have not made any records "promptly available."  *See also supra*, Section II.A.1.

**MEMORANDUM OF LAW IN SUPPORT OF PRELIMINARY INJUNCTION
AND PARTIAL JUDGMENT ON THE PLEADINGS**

## 2.   Plaintiffs Will Suffer Irreparable Injury If The Injunction Is Not Granted

Unless Defendants' unlawful failure to comply with their obligations to produce all relevant non-exempt documents responsive to Plaintiffs' FOIA requests is immediately enjoined, Plaintiffs and their clients will suffer irreparable harm.

Initially, Plaintiffs have already been irreparably harmed by Defendants' violation of the FOIA by the agencies' failure to adequately search for and timely produce relevant, non-exempt documents, as the FOIA gives Plaintiffs the right to use these records within a reasonable time period.  Irreparable harm has been found where governmental inaction and delay takes away "a statutory entitlement[.]" *Apotex, Inc. v. FDA*, 2006 WL 1030151, at *17 (D.D.C. Apr. 19, 2006).  This is precisely the case in this action—Plaintiffs' clear and undeniable right to non-exempt public agency documents is clearly articulated by the FOIA, yet was unlawfully denied by Defendants failure to respond to many of the FOIA Requests until ***after*** initiation of this action and which responses continue to be incomplete and ongoing.

AOL is also irreparably harmed by Defendants' unlawful conduct in its capacity as a legal services organization whose mission is to advance the rights of indigent deportees, migrants, refugees and their family. Jong Decl. at ¶¶ 23-5. Defendant's untimely and inadequate document production significantly impairs key deadlines for AOL.  *Id*.  AOL critically relies on the timely receipt of relevant information through FOIA requests to support various advocacy projects and government accountability work, including efforts geared towards ending the detention of individuals in the United States.  Jong Decl. at ¶¶ 1-8, 17-8, 24.  Put simply, Defendants' delay in production of critical and relevant information has thwarted and continues to thwart AOL's advocacy efforts, especially because "stale information is of little value."  *Payne Enter.*, 837 F.2d at 494; *EPIC,* 416 F. Supp.

**MEMORANDUM OF LAW IN SUPPORT OF PRELIMINARY INJUNCTION AND PARTIAL JUDGMENT ON THE PLEADINGS**

2d at 40- 41; *see also August v. FBI*, 328 F.3d 697, 699 (D.C. Cir. 2003) ("[T]he statutory goals [of FOIA] — efficient, prompt, and full disclosure of information — can be frustrated by agency actions that operate to delay the ultimate resolution of the disclosure request.") (internal quotation marks and citations omitted).

It is a few short weeks from the November 2022 midterm Congressional elections. Information received in connection with the instant FOIA Requests could help inform the public about the manner in which the government runs U.S. immigrations agencies, helping voters make informed decisions. Similarly, this information affects AOL's advocacy work with its campaign partners. Jong Decl. at ¶¶ 25-7. The Supreme Court has long recognized our democracy's interest in "the uninhibited, robust, and wide-open debate about matters of public importance that secures an informed citizenry." *Cornelius v. NAACP Legal Def. & Educ. Fund*, 473 U.S. 788, 815 (1985), *quoting New York Times Co. v. Sullivan*, 376 U.S. 254, 270 (1964) (internal quotation marks omitted); *see also Board of Educ. v. Pico*, 457 U.S. 853, 876 (1982) ("[T]he Constitution presupposes the existence of an informed citizenry prepared to participate in governmental affairs."). Moreover, courts have held that obstacles that "make it more difficult for [organizations] to accomplish their primary mission" impose "irreparable harm." *League of Women Voters v. Newby*, 838 F.3d 1, 9 (D.C. Cir. 2016).

There was also significant public outcry in the wake of Ben Owen's January 2020 in-custody death. Lax Decl. at ¶¶13. Ben's death also prompted an investigation by the British Consul General. *Id.* at ¶12. Yet, Defendants' extensive delay in the production of highly relevant records responsive to the Owen FOIA Request prevents both Ben's family and the public at large from receiving this critical information in a timely fashion. *Id.* at ¶¶10-11. Defendants' gross delay in releasing this information of great public concern continues to harm the public's

**MEMORANDUM OF LAW IN SUPPORT OF PRELIMINARY INJUNCTION AND PARTIAL JUDGMENT ON THE PLEADINGS**

right to know about the circumstances of Ben's detention and in-custody death and the actions and decisions of their government.

Given the strength of Plaintiffs' position on the merits, even a relatively underwhelming showing of likely irreparable injury is still adequate to justify the issuance of a preliminary injunction. *See AOL v. Wolf,* 952 F.3d 999, 1007 (9th Cir. 2020) (quoting *Alliance for Wild Rockies,* 632 F.3d at 1131) ("Under the 'sliding scale' approach we use, 'the elements of the preliminary injunction test are balanced, so that a stronger showing of one element may offset a weaker showing of another.'"). Plaintiffs' showing of irreparable harm in the instant case is substantial and supports Plaintiffs' motion for a preliminary injunction.

### 3. Defendants Will Not Be Injured By An Injunction, Which Is In The Public Interest

In cases against the government, the government's interest and public interest factors "merge" into one factor. *See Nken v. Holders*, 556 U.S. 418, 435 (2009). In the instant case, the public interest supports granting injunctive relief, which in no way injures Defendants.

Simply put, "[t]he public interest surely does not cut in favor of permitting an agency to fail to comply with a statutory mandate." *Ramirez v. U.S. Immigration & Customs Enf't*, 310 F. Supp.3d 7, 33 (D.D.C. 2018) (*citing Jacksonville Port Auth. V. Adams*, 556 F.2d 52, 59 (D.C. Cir. 1988) ("there is an overriding public interest . . . in the general importance of an agency's faithful adherence to its statutory mandate.")). Without a preliminary injunction, Defendants are effectively given permission to ignore the FOIA's statutory mandate regarding the timing and adequacy of responses to FOIA requests. The public interest will be further served by the expedited release of the requested records because it furthers the FOIA's purpose of "shedding light on an agency's performance of its statutory duties."

---

**MEMORANDUM OF LAW IN SUPPORT OF PRELIMINARY INJUNCTION
AND PARTIAL JUDGMENT ON THE PLEADINGS**

*DOJ v. Reporters Committee for Freedom of the Press*, 489 U.S. 749, 773 (1989); *Sammis v. Barnhardt*, 2002 U.S. Dist. LEXIS 10321, at *3-*4 (N.D. Cal. June 6, 2002); *Los Angeles Times Communications LLC v. Dep't of Labor*, 483 F. Supp. 2d 975, 981 (C.D. Cal. 2007). Moreover, the public interest weighs in favor of a preliminary injunction because "[t]here is public benefit in the release of information that adds to citizens' knowledge of government activities." *Ctr. to Prevent Handgun Violence v. Dep't of the Treasury*, 40 F. Supp. 2d 3, 5 (D.D.C. 1999). Each of Plaintiffs' FOIA Requests pertains to an in-custody death under Defendant ICE's control and each is representative of the widespread issue of repeated in-custody deaths of person detained by ICE. Plaintiffs have clearly established that Ben, Maria's and Gourgen 's deaths are without question a matter of "widespread and exceptional media interest." *See* Lax Decl. at ¶ 13; Jong Decl. at ¶ 19; Free Decl. at ¶ 3-4. For these reasons, the public interest, which here is treated as akin to the government's interest, strongly favors the injunctive relief requested.

Moreover, Defendants are in no way "burdened" or injured by a requirement that they comply with the law. The immediate relief that Plaintiffs seek will require nothing more than what the law already obliges—the statutorily recognized entitlement to seek public documents from government agencies. The requested relief will also not burden the interests of other parties who have submitted FOIA requests to Defendants in any manner beyond that already foreseen by Congress. As a sister district court has pointed out, citing Ninth Circuit appellate authority, "any complaints about the burdens of complying with the [FOIA] are best addressed to Congress, not the courts." *Elec. Frontier Found. v. Office of the Director of Nat'l Intelligence,* 2007 WL 4208311 at * 6 (citing *Fiduccia*, 185 F.3d at 1041). Congress deliberately opted to impose penalties upon agencies that fail to

**MEMORANDUM OF LAW IN SUPPORT OF PRELIMINARY INJUNCTION
AND PARTIAL JUDGMENT ON THE PLEADINGS**

observe the FOIA's deadlines without a showing of exceptional circumstances justifying the non-compliance. OPEN Government Act of 2007, Pub. L. 110-175, § 6(b), 121 Stat. 2524 (2007).

### 4. The Court Should Order Defendants To Process Plaintiffs' FOIA Request Immediately

In several cases, courts have imposed specific processing deadlines on agencies, requiring prompt delivery of large quanta of non-exempt records. In *Judicial Watch, Inc. v. U.S. Dep't of Energy*, 191 F. Supp. 2d 138 (D.D.C. 2002), the court ordered the Commerce Department and the Transportation Department to process a combined 15,000 pages of material within 60 days, and to provide the requester with a *Vaughn* index within 72 days. *Id.* at 141. Similarly, in *Natural Res. Def. Council v. Dep't of Energy,* 191 F. Supp. 2d 41 (D.D.C. 2002), the Court ordered the Energy Department to complete the "vast majority" of processing 7,500 pages of records within 32 days, to complete all processing within 48 days, and to provide the requester with a *Vaughn* index within 63 days. *Id.* at 43-44. In *ACLU,* the court ordered a number of agencies to produce or identify "all responsive documents," and to provide the requesters with a *Vaughn* index within 30 days. 339 F. Supp. 2d at 505. This Court has also previously ordered agencies to produce large amounts of FOIA-requested documents within relatively short periods. *See, e.g.*, *AIDS Healthcare Foundation v. FDA*, 2014 WL 10983763 at *3 (C.D. Cal. Feb. 13, 2014) (ordering FDA to review all responsive documents and produce a *Vaughn* index within 60 days).

Plaintiffs therefore request that this Court order Defendants to complete the processing of the FOIA Requests and produce all non-exempt records responsive thereto within 30 days of entry of an appropriate order and provide Plaintiffs with a *Vaughn* index, if applicable, concurrently with the agencies' response.

**MEMORANDUM OF LAW IN SUPPORT OF PRELIMINARY INJUNCTION
AND PARTIAL JUDGMENT ON THE PLEADINGS**

**5.    In The Alternative, ICE And CRCL Should Produce No Less Than 1,000 Pages Per Month For Each Of Plaintiffs' FOIA Requests**

Even now, Defendants continue to flaunt FOIA's promptly availability requirement.   As detailed in the Joint Rule 26(f) report, Defendants have unilaterally decided to meter the processing of the responsive records at a pace of 500 for ICE and 450 for DHS CRCL.   *See* Doc. 69, p. 5-7.   Per ICE's schedule, ICE's response to the Owen FOIA Request will only be completed on September 30, 2022, the CRCL Report FOIA Request by January 17, 2023, and the Yoc de Ramirez FOIA Request by June 28, 2024, *years* after submission of these respective requests.   Defendants cannot independently decide whether and when to disclose responsive records, nor does the current rate of production comply with the FOIA's clear mandate requiring prompt access to responsive government records.   *See Sierra Club v. EPA*, 2018 WL 10419238, at *5 (N.D. Cal. Dec. 26, 2018) (rejecting Defendant's proposed four years to respond to FOIA request as "a very far cry from making them 'promptly available' as required by FOIA.").   However, this Court need not evaluate the reasonableness of ICE's schedule because ICE has failed to actually apply for an *Open America* stay.

By independently metering release of Plaintiffs' responsive records, Defendants attempt to give themselves the relief that can only be afforded by this Court.   Applying FOIA's plain language, the Ninth Circuit has already forbidden this kind of unilateral agency grant of its own *Open America* stay.[3]   *See Nightingale*

---

[3] In *Open America v. Watergate Special Prosecution Force*, 547 F.2d 605, 616 (D.C. Cir. 1976), the D.C. Circuit defined "exceptional circumstances" to mean "when an agency . . . is deluged with a volume of requests for information vastly in excess of that anticipated by Congress" and "when the existing resources are inadequate to deal with the volume of such requests within the time limits" of FOIA.

**MEMORANDUM OF LAW IN SUPPORT OF PRELIMINARY INJUNCTION AND PARTIAL JUDGMENT ON THE PLEADINGS**

*v. U.S. Citizenship & Immigr. Servs.*, 333 F.R.D. 449, 461 (N.D. Cal. 2019) ("an agency cannot single-handedly invoke the 'exceptional circumstances' provision to extend time.").  Instead of unilateral agency action, when an agency's "exercising due diligence" encounters unavoidable delay because of "exceptional circumstances," it may seek a court-ordered *Open America* stay extending its response deadlines. 5. U.S.C §552(a)(6)(C)(i).  Had Defendants applied for such a stay, this Court might have used its discretion to "retain jurisdiction and allow the agency additional time to complete its review of the records." 5. U.S.C. §552(a)(4)(A)(viii)(II)(cc).  Defendants did not.  The statute clearly states that the failure to make records promptly available is only "excused for the length of time provided by court order," not for the length of time unilaterally determined by the agency. *Id.*  Simply put, Defendants cannot qualify for an *Open America* stay without having applied for an *Open America* stay.  In the many months since this case's filing, Defendants have chosen not to do so.  Thus, permitting Defendants' torpid record production schedule would reward their policy of repeated FOIA violations while running contrary to the statute's purpose.  Should Defendants be incapable of producing all responsive records by a set date, Plaintiffs will accept production at a slower pace of 1000 pages of records per request each month.

## IV.    <u>CONCLUSION</u>

Judgment on the Pleadings is proper here, and a permanent injunction is necessary. Plaintiff Miran constructively exhausted all administrative remedies prior to the filing of this action and this Court has subject matter jurisdiction of the Gourgen FOIA Request. Defendants failed to make records responsive to Plaintiffs' FOIA Requests promptly available in violation of FOIA. Thus, the Court should enjoin Defendants from withholding agency records responsive to Plaintiffs' FOIA Requests and grant the relief requested by Plaintiffs in the attached proposed Order.

**MEMORANDUM OF LAW IN SUPPORT OF PRELIMINARY INJUNCTION
AND PARTIAL JUDGMENT ON THE PLEADINGS**

Respectfully submitted,

Dated:  September 30, 2022

By:    */s/ Irene R. Lax*
       Irene R. Lax (*Pro Hac Vice*)
       **GRANT & EISENHOFER P.A.**
       485 Lexington Ave, 29th Floor
       New York, NY 10017
       Tel: (646) 722-8512
       ilax@gelaw.com

       Samuel Mukiibi (*pro hac vice*)
       **GRANT & EISENHOFER P.A.**
       123 Justison Street, 7th Floor
       Wilmington, DE 19801
       Tel: (302) 622-7086
       smukiibi@gelaw.com

       M. Elizabeth Graham (Cal. Bar No. 143085)
       **GRANT & EISENHOFER P.A.**
       201 Mission Street, Suite 1200
       San Francisco, California 94105
       Tel: 415-293-8210
       Fax: 415-789-4367
       egraham@gelaw.com

       Karlyn Kurichety (Cal Bar No. 313265)
       **AL OTRO LADO, INC.**
       634 S Spring St, Suite 908
       Los Angeles, CA 90014
       Tel: (253) 882-807

**MEMORANDUM OF LAW IN SUPPORT OF PRELIMINARY INJUNCTION
AND PARTIAL JUDGMENT ON THE PLEADINGS**