BRIAN M. BOYNTON
Principal Deputy Assistant Attorney General

ELIZABETH J. SHAPIRO
Deputy Director, Federal Programs Branch

M. ANDREW ZEE (CA #272510)
Attorney
Civil Division, Federal Programs Branch
United States Department of Justice
450 Golden Gate Ave.
Room 7-5395
San Francisco, CA 94102
Tel. (415) 436-6646
Email: m.andrew.zee@usdoj.gov

*Attorneys for Defendants*

**UNITED STATES DISTRICT COURT**
**CENTRAL DISTRICT OF CALIFORNIA**
**WESTERN DIVISION**

| | |
|---|---|
| TAMMY JANE OWEN as the Administrator of the Estate of Benjamin James Owen; AL OTRO LADO, Inc.; and MIRAN MIRIMANIAN<br><br>        Plaintiffs,<br><br>    vs.<br><br>U.S. IMMIGRATION AND CUSTOMS ENFORCEMENT; and U.S. DEPARTMENT OF HOMELAND SECURITY – OFFICE FOR CIVIL RIGHTS AND CIVIL LIBERTIES,<br><br>        Defendants. | Case No.: 2:22-cv-00550-DSF-AFM<br><br>**DEFENDANTS' OPPOSITION TO PLAINTIFFS' MOTION FOR PRELIMINARY INJUNCTION AND PARTIAL JUDGMENT ON THE PLEADINGS**<br><br>Hearing Date: December 19, 2022<br><br>Hearing Time: 1:30 p.m.<br><br>Location: Courtroom 7D |

# TABLE OF CONTENTS

INTRODUCTION ............................................................................................... 1

BACKGROUND ................................................................................................ 2

LEGAL STANDARDS ...................................................................................... 5

ARGUMENT ..................................................................................................... 6

I.      PLAINTIFF MIRAN'S REQUEST FOR JUDGMENT ON THE PLEADINGS IS
        MOOT BECAUSE ICE HAS WAIVED ITS EXHAUSTION DEFENSE ...................... 6

II.     A DECLARATORY JUDGMENT THAT DEFENDANTS VIOLATED THE FOIA'S
        "PROMPTLY AVAILABLE" PROVISION IS NOT WARRANTED. ........................... 6

III.    PLAINTIFFS ARE NOT ENTITLED TO A PRELIMINARY INJUNCTION. ............. 10

        A.      Plaintiffs have not shown that they are likely to suffer any irreparable harm absent
                an injunction .................................................................................... 12

        B.      Plaintiffs have not shown that they are likely to succeed on the merits. ............... 17

        C.      The public interest and Defendants would both be harmed by an injunction
                requiring immediate processing and disclosure. .................................................... 20

CONCLUSION .................................................................................................... 23

# TABLE OF AUTHORITIES

**Cases**

*Al-Fayed v. C.I.A.*,
    No. 00-2092, 2000 WL 34342564 (D.D.C. Sept. 20, 2000) .................................................. 13

*All. for the Wild Rockies v. Cottrell*,
    632 F.3d 1127 (9th Cir. 2011) ........................................................................................ 12

*Anderson v. United States*,
    612 F.2d 1112 (9th Cir. 1979) ........................................................................................ 11

*Beal v. Missouri Pac. R. R. Corp.*,
    312 U.S. 45 (1941) .................................................................................................. 5, 7, 8

*Chaverra v. ICE*,
    No. CV 18-289(JEB), 2020 WL 7419670 (D.D.C. Nov. 5, 2020) ..................................... 19

*Citizens for Resp. & Ethics in Washington v. Fed. Election Comm'n*,
    711 F.3d 180 (D.C. Cir. 2013) ..................................................................................... 7, 18

*Colbert v. FBI*,
    Civ. No. 16-CV-1790(DLF), 2018 WL 6299966 (D.D.C. Sept. 3, 2018) ........................... 19

*Ctr. to Prevent Handgun Violence v. Dep't of the Treasury*,
    40 F. Supp. 2d 3 (D.D.C. 1999) ...................................................................................... 23

*Daily Caller v. U.S. Dep't of State*,
    152 F. Supp. 3d 1 (D.D.C. 2015)..................................................................................... 23

*Daily Caller News Found. v. FBI*,
    387 F. Supp. 3d 112 (D.D.C. 2019) ................................................................................ 19

*Defs. of Wildlife v. U.S. Border Patrol*,
    623 F. Supp. 2d 83 (D.D.C. 2009) .................................................................................. 11

*Earth Island Inst. v. U.S. Forest Serv.*,
    351 F.3d 1291 (9th Cir. 2003) ........................................................................................ 12

*Elec. Privacy Info. Ctr. v. Dep't of Def.*,
    355 F. Supp. 2d 98 (D.D.C. 2004) .................................................................................. 14

*Elec. Privacy Info. Ctr. v. Dep't of Justice*,
    15 F. Supp. 3d 32 (D.D.C. 2014) .................................................................................... 22

*Fang Lin Ai v. United States*,
    809 F.3d 503 (9th Cir. 2015) ............................................................................................ 5

*Feldman v. Arizona Sec'y of State's Off.*,
    840 F.3d 1057 (9th Cir. 2016) ........................................................ 10

*Fleming v. Pickard*,
    581 F.3d 922 (9th Cir. 2009) ..................................................... 5, 10

*Freedom Watch v. BLM*,
    325 F. Supp. 3d 139 (D.D.C. 2018) ................................................ 19

*Judicial Watch v. DHS*,
    514 F. Supp. 2d 7 (D.D.C. 2007) ............................................. 14, 23

*Long v. DHS*,
    436 F. Supp. 2d 38 (D.D.C. 2006) ................................................. 22

*Mayo v. U.S. Gov't Printing Off.*,
    839 F. Supp. 697 (N.D. Cal. 1992) ................................................. 15

*Mazurek v. Armstrong*,
    520 U.S. 968 (1997) (per curiam) ............................................. 5, 10

*Middle East Forum v. Dep't of Homeland Security*,
    297 F. Supp. 3d 183 (D.D.C. 2018) ................................................ 22

*Minier v. CIA*,
    88 F.3d 796 (9th Cir. 1996) .......................................................... 16

*Nat'l Sec. Counselors v. Dep't of Justice*,
    848 F.3d 467 (D.C. Cir. 2017) ....................................................... 19

*Navigators Ins. Co. v. Dep't of Just.*,
    155 F. Supp. 3d 157 (D. Conn. 2016) .................................... 18, 20, 21

*New York Times Co. v. Def. Health Agency*,
    No. 21-CV-566 (BAH), 2021 WL 1614817 (D.D.C. Apr. 25, 2021) ............ 18, 20

*Oakland Tribune, Inc. v. Chronicle Pub. Co.*,
    762 F.2d 1374 (9th Cir. 1985) ....................................................... 12

*Pick v. Motorola Sols., Inc.*,
    No. 220CV08011JWHPVCX, 2022 WL 409681 (C.D. Cal. Feb. 10, 2022) ........ 16

*Pinson v. U.S. Dep't of Just.*,
    975 F. Supp. 2d 20 (D.D.C. 2013) .................................................. 16

*Progress v. Consumer Fin. Prot. Bureau*,
    No. CV 17-686(CKK), 2017 WL 1750263 (D.D.C. May 4, 2017) ............. 22, 23

*Reprod. Health Servs. v. Strange*,
    3 F.4th 1240 (11th Cir. 2021) ......................................................... 5

*Rosen v. Hollywood Show, LLC*,
  2019 WL 4138658 (C.D. Cal. June 3, 2019) ...................................................... 8

*S. Yuba River Citizens League v. Nat'l Marine Fisheries Serv.*,
  No. CIVS-06-2845 LKK/JFM, 2008 WL 2523819 (E.D. Cal. June 20, 2008) ........ 9

*Sai v. Transportation Sec. Admin.*,
  54 F. Supp. 3d 5 (D.D.C. 2014) ................................................................. 14, 17

*San Diego Cnty. Gun Rights Comm. v. Reno*,
  98 F.3d 1121 (9th Cir. 1996) ....................................................................... 9

*Sassman v. Brown*,
  73 F. Supp. 3d 1241 (E.D. Cal. 2014) ......................................................... 12

*Spencer v. Kemna*,
  523 U.S. 1 (1998) ........................................................................................ 8

*Stanley v. Univ. of S. Cal.*,
  13 F.3d 1313 (9th Cir. 1994) ..................................................................... 11

*Transwestern Pipeline Co. v. 17.19 Acres of Prop. Located in Maricopa Cty.*,
  550 F.3d 770 (9th Cir. 2008) ...................................................................... 10

*United States v. Innovative Biodefense, Inc.*,
  No. SACV180996DOCJDEX, 2019 WL 6971054 (C.D. Cal. Aug. 22, 2019) ...... 5, 7, 8

*Univ of Texas v. Caminsch*,
  451 U.S. 390 (1981) ................................................................................... 11

*Williams & Connolly v. S.E.C.*,
  662 F.3d 1240 (D.C. Cir. 2011) ................................................................... 9

*Winter v. Natural Resources Defense Council*,
  555 U.S. 7 (2008) ................................................................................ 5, 6, 10

**Statutes**

5 U.S.C. § 552 ........................................................................................ *passim*

## INTRODUCTION

Two individuals, Tammy Owen (Tammy) and Miran Mirimanian (Miran), and a legal services organization, Al Otro Lado (AOL), submitted in 2018 and 2021 a total of five Freedom of Information Act (FOIA) requests to Defendants Immigration and Customs Enforcement (ICE) and the DHS Office of Civil Rights and Civil Liberties (CRCL).[1]  Collectively, Plaintiffs' FOIA requests sought information about specific individuals who died while in ICE detention facilities and more generally about treatment of ICE detainees in detention facilities.  Dissatisfied with Defendants' responses to their requests, Plaintiffs in January 2022 filed this FOIA action.  Since Plaintiffs filed suit, Defendants have completed their processing of one of the requests at issue, and for the remaining requests, Defendants are releasing non-exempt records to Plaintiffs on a monthly basis and diligently reviewing the more than 12,000 pages of potentially responsive records that remain.

Now, more than eight months after they filed suit, Plaintiffs ask this Court for emergency relief in the form of a preliminary injunction compelling Defendants to complete all processing of their FOIA requests and to release all non-exempt records within thirty days.  A preliminary injunction should be denied for multiple reasons.  First and most clearly, Plaintiffs have not shown that they will be irreparably harmed by receiving document productions on a monthly basis and having their requests processed at the current rate of 500 and 450 pages per month for ICE and CRCL—rates and production methods that have been endorsed by numerous courts.  Second, Plaintiffs have not shown that they are likely to prevail on the merits.  There is no provision in the FOIA that obligates a government agency to process and release all records in response to a FOIA request by a date certain, as Plaintiffs here request.  And Defendants have struck the appropriate balance between the competing demands from other requesters on their FOIA offices, and are devoting substantial resources to processing Plaintiffs' remaining requests at rates which, again, numerous courts have approved.  Third, granting a preliminary injunction would impose an undue

---

[1] For consistency, Defendants refer in this memorandum to the individual Plaintiffs Tammy and Miran by their first names, just as Plaintiffs do in their First Amended Complaint and in the motion before the Court.

1

burden on Defendants and, critically, other FOIA requesters and the public more generally, by moving Plaintiffs—who have demonstrated no urgent necessity to receive records—straight to the front of the line. Because Plaintiffs cannot satisfy any of the requisite elements for the extraordinary remedy of a preliminary injunction, it should be denied.

Furthermore, the Court should deny Plaintiffs' Rule 12(c) motion for partial judgment on the pleadings. First, Plaintiffs' request that the Court deem Plaintiff Miran to have exhausted his administrative remedies, even though he did not exhaust his administrative appeal options, is now moot. Defendant ICE elected to waive exhaustion and to process Plaintiff Miran's request. Defendant CRCL, meanwhile, has completed processing of that request and released all responsive, non-exempt records. Second, Plaintiffs are not entitled to a declaratory judgment that Defendants have violated a provision of the FOIA directing that records be made "promptly available." *See* 5 U.S.C. § 552(a)(6)(C). Plaintiffs did not assert any such claim in the First Amended Complaint and, to the extent that they did, Defendants timely denied those allegations in their Answer—alone sufficient to defeat a Rule 12(c) motion for judgment on the pleadings.

Plaintiffs' motion for partial judgment on the pleadings and for a preliminary injunction should be denied in its entirety.

## BACKGROUND

On June 19, 2018, Plaintiff Miran submitted identical FOIA requests (the Gourgen Request) to ICE and CRCL seeking records relating to the death of Gourgen Mirimanian while he was detained at an ICE facility. *See* First Am. Compl. (FAC), Ex. I, ECF No. 58-9. As set forth in the attached Declaration of Lynnea Schurkamp, ICE's Deputy FOIA Officer, ICE first responded to the Gourgen request on July 6, 2018 by releasing two pages of responsive records. *See* Schurkamp Decl. ¶ 14. Following Plaintiff Miran's successful administrative appeal of that response, ICE remanded the request for additional processing. *Id.* On May 6, 2019, following the remand, ICE issued its final response to Plaintiff Miran, stating that no responsive records would be produced because of open, ongoing investigations under FOIA Exemption 7(A). *Id.* Plaintiff Miran did not file an administrative appeal of ICE's May 6, 2019 final response. Notwithstanding Plaintiff Miran's failure to appeal, ICE has elected to waive the appeal requirement and is now

processing approximately 1,800 pages of potentially responsive records in response to the Gourgen Request. *Id.* Furthermore, as explained in the attached Declaration of Rosemary Law, CRCL's FOIA Officer, CRCL has completed its processing and production of documents in response to the Gourgen Request. *See* Law Decl. ¶ 6. CRCL released 16 pages to the requester. *Id.* CRCL also referred certain responsive pages to ICE, which ICE processed and released to Plaintiffs on October 31, 2022. Schurkamp Decl. ¶ 15.[2]

On January 4, 2021, Plaintiff AOL submitted a FOIA request (the Yoc De Ramirez Request) to ICE seeking records relating to the death of Maria Celeste Ochoa-Yoc De Ramirez while she was detained at an ICE facility. *See* FAC, Ex. E, ECF No. 58-5. ICE identified approximately 10,600 pages of records that were potentially responsive to this request. Schurkamp Decl. ¶ 16. On August 31 and October 31, 2022, ICE made productions of records responsive to the Yoc De Ramirez Request, and ICE continues to process that request at a rate of 500 pages per month and to make rolling productions on a monthly basis. *Id.* Given the current volume of potentially responsive records, as Defendants indicated to Plaintiffs, ICE anticipates that it will complete its processing by the end of June 2024. Although ICE offered to work with Plaintiffs to reduce the timetable for completing processing by negotiating the breadth of this request, Plaintiffs declined to do so. *See* Declaration of M. Andrew Zee, Ex. M (email thread).

On March 11, 2021, Plaintiff AOL submitted a FOIA request (the Meta-FOIA Request) to ICE seeking records created in response to several previously-submitted FOIA requests. *See* FAC, Ex. F, ECF No. 58-6. On May 31, 2022, ICE completed its processing and production of documents in response to the Meta-FOIA Request. ICE produced 309 pages of documents in full and redacted portions of an additional 179 pages. Schurkamp Decl. ¶ 18 & Ex. A.

On July 22, 2021, Plaintiff Tammy submitted a FOIA request (the Owen Request) to ICE seeking records relating to the death of Ben Owen while he was detained at an ICE facility. *See* FAC, Ex. B, ECF No. 58-2. In response, ICE located potentially responsive document and has on

---

[2] During CRCL's processing of the Gourgen Request, CRCL also referred certain records to DHS's Office of Inspector General (OIG). OIG has completed processing that referral and produced non-exempt records to Plaintiffs. *See* Law Decl. ¶ 6.

July 1, July 26, September 26, and October 31, 2022 sent responses to Plaintiffs indicating that

had processed over 1,900 pages of records.  Schurkamp Decl. ¶ 19.

As ICE was finalizing its most recent production, ICE determined that, for purposes of

completeness, it should conduct additional searches for potentially responsive records to the Yoc

De Ramirez and Owen Requests.  *Id.* ¶¶ 17, 20.  Whatever records ICE locates from those searches,

it will process for release to Plaintiffs.

On December 16, 2021, Plaintiff AOL submitted a FOIA request (the CRCL Report

Request) to CRCL seeking records relating to any reports that CRCL prepared with regard to

certain ICE detention facilities.  *See* FAC, Ex. G, ECF No. 58-7.  CRCL referred this request, in

part, to ICE for a response.  Law Decl. ¶ 7.  ICE made productions of non-exempt referred

documents responsive to the CRCL Report Request on May 31 and October 31, 2022, and

continues to process the approximately 834 pages of referred records remaining for eventual

release to Plaintiffs.  Schurkamp Decl. ¶ 21.  For the portion not referred to ICE, CRCL has made

rolling productions of records to Plaintiffs on February 7, August 15, September 15, and October

14, 2022, and has to date processed approximately 1,484 pages of responsive records.  Law Decl.

7.  CRCL has approximately 1,933 pages of potentially responsive records remaining, which it

continues to process at a rate of 450 pages per month.  *Id.*[3]

On January 25, 2022, Plaintiffs filed this action and on April 29, 2022, they amended their

Complaint.  ECF Nos. 1, 57.  In the August 1, 2022, Joint Rule 26(f) Report, the parties agreed

that the case should be fully resolved on summary judgment, and proposed to submit cross-motions

for summary judgment beginning in August 2024, after both Defendants have completed

processing of all requests.  *See* ECF No. 69 at 9, 12 ("The parties submit that all issues in this

FOIA action can be decided and fully resolved on summary judgment according to the following

briefing schedule.").  The Court approved the parties' proposed briefing schedule for summary

judgment cross-motions.  *See* ECF Nos. 70, 71.  Plaintiffs filed their Motion for Preliminary

---

[3] CRCL also referred certain records responsive to the CRCL Report Request to OIG, which has completed processing that referral.  *See* Law Decl. ¶ 7.

Injunction and Partial Judgment on the Pleadings (Pls.' Mot.) on September 30, 2022.  ECF No. 74.

## LEGAL STANDARDS

"Judgment on the pleadings is properly granted when there is no issue of material fact in dispute, and the moving party is entitled to judgment as a matter of law." *Fleming v. Pickard*, 581 F.3d 922, 925 (9th Cir. 2009).  When considering a Rule 12(c) motion, the court must "accept[] facts alleged by the nonmoving party as true and draw[] all inferences in its favor." *Fang Lin Ai v. United States*, 809 F.3d 503, 506 (9th Cir. 2015).  When a plaintiff moves for judgment on the pleadings, "denials and allegations of the answer which are well pleaded must be taken as true." *Beal v. Missouri Pac. R. R. Corp.*, 312 U.S. 45, 51 (1941);   *Reprod. Health Servs. v. Strange*, 3 F.4th 1240, 1258 (11th Cir. 2021) (observing that when "a plaintiff moves for judgment on the pleadings, . . . the court must consider the defendant's answer, and treat any factual allegations denied by the defendant as false"), *reh'g en banc granted, opinion vacated on other grounds sub nom. Reprod. Health Servs. on behalf of Ayers v. Strange*, 22 F.4th 1346 (11th Cir. 2022), and *abrogated by Dobbs v. Jackson Women's Health Org.*, 142 S. Ct. 2228 (2022). Therefore, "[a] plaintiff's motion  for judgment on the pleadings cannot  be  granted  if  the Defendant's answer raises a fact or an affirmative defense that, if true, would defeat recovery." *United States v. Innovative Biodefense, Inc.*, No. SACV180996DOCJDEX, 2019 WL 6971054, at *3 (C.D. Cal. Aug. 22, 2019).

"A preliminary injunction is an extraordinary and drastic remedy, one that should not be granted unless the movant, by a clear showing, carries the burden of persuasion." *Mazurek v. Armstrong*, 520 U.S. 968, 972 (1997) (per curiam) (quoting 11A C. Wright, A. Miller, & M. Kane, Federal Practice and Procedure § 2948, pp. 129-130 (2d ed. 1995)).  "A plaintiff seeking a preliminary injunction must establish that he is likely to succeed on the merits, that he is likely to suffer irreparable harm in the absence of preliminary relief, that the balance of equities tips in his favor, and that an injunction is in the public interest." *Winter v. Natural Resources Defense Council*, 555 U.S. 7, 20 (2008).

**ARGUMENT**

## I.   PLAINTIFF MIRAN'S REQUEST FOR JUDGMENT ON THE PLEADINGS IS MOOT BECAUSE ICE HAS WAIVED ITS EXHAUSTION DEFENSE.

Plaintiff Miran submitted the Gourgen Request to ICE on June 19, 2018, and ICE acknowledged receipt on June 25, 2018. Schurkamp Decl. ¶ 14. Eleven days later (and seventeen days after submission of the request) on July 6, 2018, ICE issued its final response to Plaintiff Miran and produced two pages of records. *Id.* Plaintiff Miran then successfully appealed ICE's initial response. *Id.* On remand, ICE via letter dated May 6, 2019, informed Plaintiff Miran that it would not be producing any additional records because doing so could reasonably be expected to interfere with ongoing investigations and the records were exempt under FOIA Exemption 7(A). *See* FAC, Ex. J. ECF No. 57-10. ICE's May 6, 2019, letter stated on its face that it was ICE's "final response." *Id.* Plaintiff Miran admits that he never appealed that final response.

Plaintiff Miran contends that his conceded failure to appeal should be excused because ICE did not provide him with notice of his right to appeal, as set forth in 5 U.S.C. § 552(a)(6)(A). To avoid dispute on this question and eliminate any need for the Court to rule on this issue, on October 2022, Defendant ICE chose to waive the administrative exhaustion requirement and to process the approximately 1,800 pages it has located that are potentially responsive to the Gourgen Request. Schurkamp Decl. ¶ 14. (ICE has already processed the records referred to it by CRCL in response to the Gourgen Request. *Id.* ¶ 15.) ICE's voluntary action moots Plaintiff's request that the Court "waive the exhaustion requirement . . . and order that ICE disclose records responsive to the Gourgen FOIA Request." Pls.' Mot. 13:20-22. No partial judgment on the pleadings need therefore be granted or otherwise adjudicated.

## II.   A DECLARATORY JUDGMENT THAT DEFENDANTS VIOLATED THE FOIA'S "PROMPTLY AVAILABLE" PROVISION IS NOT WARRANTED.

Plaintiffs also seek partial judgment on the pleadings in the form of a declaratory judgment stating that Defendants have not made non-exempt agency records "promptly available" as set forth in 5 U.S.C. § 552(a)(3)(A), and that Defendants have violated "the FOIA's deadlines." Pls.' Mot. 1:13-17; *id.* at 9:9-10. By the latter, Plaintiffs are presumably—but not clearly—referring to

§ 552(a)(6)(A)(i)'s and (ii)'s twenty-day deadlines for an agency to make an initial determination in response to a FOIA request and to an administrative appeal, respectively.  *See* 5 U.S.C. § 552(a)(6)(A)(i), (ii).  In their First Amended Complaint, however, Plaintiffs did not assert any claim that Defendants had violated these statutory provisions, instead asserting three counts, each of which alleged that Defendants had violated a different provision of the FOIA, § 552(a)(4)(B). *See* FAC at 23-24.[4]  True, Plaintiffs included in their Prayer for Relief a request that the Court declare Defendants to "have violated the promptly available provision of the FOIA," but nowhere did they actually plead a claim for such a timing violation, nor one for violation of the twenty-day response deadlines set forth in 5 U.S.C. § 552(a)(6)(A)(i) and (ii).  Moreover, the First Amended Complaint contains no reference whatsoever to 5 U.S.C. §§ 552(a)(6)(C) or (a)(3)(A), which are the two statutory provisions in which the "promptly available" language appears.  (It is furthermore unclear the extent to which Plaintiffs are actually pursuing relief under § 552(a)(6)(A), as the proposed order submitted with their motion makes reference only to the "promptly available" provision, which appears in a different statutory subsection.  *See* ECF No. 74-1.)

Moreover, even if Plaintiffs had clearly asserted these timing claims in the First Amended Complaint, "if the agency does not adhere to FOIA's explicit timelines, the 'penalty' is that the agency cannot rely on the administrative exhaustion requirement to keep cases from getting into court." *Citizens for Resp. & Ethics in Washington v. Fed. Election Comm'n*, 711 F.3d 180, 189-90 (D.C. Cir. 2013) (*CREW*).  The remedy is not, as Plaintiffs here request, for the Court to exercise its direction to issue a declaratory judgment.  Because Plaintiffs have already exercised their right to proceed in district court—which Defendants do not challenge—there is no basis to award declaratory relief.

In any event, it is enough to defeat Plaintiffs' motion for partial judgment on the pleadings that Defendants have denied Plaintiffs' allegations—to the extent they have been made at all— that Defendants have not made records "promptly available." *See Beal*, 312 U.S. at 51; *Innovative*

---

[4] Plaintiffs appear to have erroneously captioned their second count as one for violation of § 552(a)(4)(B) when in fact they may be attempting to allege a violation of 5 U.S.C. § 552(a)(7)(A). *Compare* FAC "Count II" Heading *with id.* ¶ 133.

*Biodefense, Inc.*, 2019 WL 6971054, at *3 ("A plaintiff's motion for judgment on the pleadings cannot be granted if the Defendant's answer raises a fact or an affirmative defense that, if true, would defeat recovery."). The closest Plaintiffs come to alleging undue delay in Defendants' production of documents is where they assert, as a legal conclusion, that Defendants did not "make reasonable and timely efforts to search for and release agency records" in response to their FOIA requests. *See* FAC ¶¶ 127, 128, 137, 143, 144.[5] Yet even assuming such a legal conclusion is sufficient on a Rule 12(c) motion, Defendants denied each of those paragraphs when they answered the FAC. *See* Defs.' Answer ¶¶ 127, 128, 137, 143, 144, ECF No. 61. Defendants likewise denied that Plaintiffs were entitled to the declaratory relief (or any other relief) sought in their Prayer for Relief. *See id.* at 21. As this court has concluded, a motion for judgment on the pleadings fails when the defendants "denie[s] several material allegations in its answer" since for purposes of a Rule 12(c) motion "those denials must be accepted as true." *Rosen v. Hollywood Show, LLC*, 2019 WL 4138658, at *2 (C.D. Cal. June 3, 2019); *see also Beal*, 312 U.S. at 51; *Innovative Biodefense, Inc.*, 2019 WL 6971054, at *3.

Defendants have controverted Plaintiffs' material allegations, and that is sufficient to defeat Plaintiffs' Rule 12(c) motion. It is therefore not Defendants' burden, as non-movants in response to a Rule 12(c) motion, to demonstrate why their processing of records has been sufficiently prompt under the statute. Nonetheless, even if the Court were to scrutinize the merits of Plaintiffs' arguments, there is no basis to award declaratory relief. Defendants do not deny that they did not meet the 20-day deadline set forth in 5 U.S.C. § 552(a)(6)(A)(i) for initial responses to Plaintiffs' requests, but declaratory relief should not be granted solely for such past conduct. The Supreme Court has made clear that declaratory relief is inappropriate when, as here, it would do no more than opine upon the validity of past action with no continuing effect. *Spencer v. Kemna*, 523 U.S. 1, 18 (1998) (Federal courts are "not in the business of pronouncing that past actions which have no demonstrable continuing effect were right or wrong"). And the Ninth

---

[5] Again, however, notwithstanding these allegations, Plaintiffs never squarely asserted a violation of either 5 U.S.C. § 552(a)(6)(C) or (a)(3)(A)—the provisions containing the "promptly available" language on which they now seek a partial judgment *on* the pleadings.

1    Circuit has made clear that when a plaintiff seeks declaratory relief, "it is insufficient for them to

2    demonstrate only a past injury." *San Diego Cty. Gun Rights Comm. v. Reno*, 98 F.3d 1121, 1126

3    (9th Cir. 1996); *cf. Williams & Connolly v. S.E.C.*, 662 F.3d 1240, 1243 (D.C. Cir. 2011) ("Once

4    the documents are released to the requesting party, there no longer is any case or controversy.").

5    There is no question that any conceivable injury to Plaintiffs from the timing of Defendants' initial

6    responses  to their requests is in the past, and declaratory relief should therefore not be awarded.

7          Plaintiffs' argument that Defendants did not make responsive records "promptly available"

8    is likewise insufficient to justify declaratory relief.   While Defendants continue to process

9    documents potentially responsive to Plaintiffs' requests which are not yet completed, they began

10    producing documents for those requests in February 2022, and are continuing to do so on a rolling

11    basis each month.  At least one court has explained that producing documents in this way "accords

12    with the purpose of the statute, which favors prompt release of responsive documents."  *S. Yuba*

13    *River Citizens League v. Nat'l Marine Fisheries Serv.*, No. CIVS-06-2845 LKK/JFM, 2008 WL

14    2523819, at *15 (E.D. Cal. June 20, 2008).  Indeed, "it is preferable for an agency to release

15    documents to a requester on a rolling basis, as they are determined to be responsive to the request."

16    *Id.*

17          Moreover, it is the breadth of Plaintiffs' requests which drives the volume of responsive

18    records and, in turn, the amount of time those requests will take to process.[6]  And that is even after

19    Defendants have voluntarily increased their processing rates for these requests to 500 pages per

20    month for ICE and 450 pages per month for CRCL.  As more fully set forth *infra* in opposing

21    Plaintiffs' request for a preliminary injunction, numerous courts have approved processing rates

22    at—or even below—these levels.  Contrary to Plaintiffs' contention, Defendants have processed

23    and continue to process Plaintiffs' requests as quickly as practically possible in view of their

24    resources, and are providing non-exempt records to Plaintiffs on a monthly basis.  Plaintiffs

25    therefore cannot and have not prevailed on a claim that Defendants have not made records

26

27

28        [6] Notably, Plaintiffs declined to engage with Defendants' offer to negotiate the breadth of
the Yoc de Ramirez Request in order to complete processing sooner. *See* Zee Decl. ¶ 2 & Ex. M.

"promptly available"—insofar as such a claim was asserted at all in the First Amended Complaint. At minimum, a dispute of fact exists over whether Defendants' processing has been sufficiently "prompt," and judgment on the pleadings is thus not appropriate. *Fleming*, 581 F.3d at 925 (9th Cir. 2009) (judgment on the pleadings can be granted when, among other things, "there is no issue of material fact in dispute").

Granting Plaintiffs' request for partial judgment on the pleadings would at this juncture be inappropriate in light of Defendants' denials in the Answer, Plaintiffs' failure to squarely assert a claim based on the FOIA's "promptly available" provision, and, finally, the fact that Defendants have been releasing records since February 2022 for those requests not yet completely processed.

## III.    PLAINTIFFS ARE NOT ENTITLED TO A PRELIMINARY INJUNCTION.

Beyond partial judgment on the pleadings, Plaintiffs request that the Court grant them the extraordinary emergency relief of a preliminary injunction, and order Defendants to produce all non-exempt records and a *Vaughn* index within thirty days. Pls.' Mot. 23:23-26. In the alternative, Plaintiffs ask the Court to require Defendants to produce—not only process—at least 1,000 pages per month. Plaintiffs, however, fail to meet the "stringent" standard necessary to obtain this extraordinary remedy. *Feldman v. Arizona Sec'y of State's Off.*, 840 F.3d 1057, 1066-67 (9th Cir. 2016) (citing *Winter*, 555 U.S. at 22).

"A preliminary injunction is an extraordinary and drastic remedy, one that should not be granted unless the movant, by a clear showing, carries the burden of persuasion." *Mazurek*, 520 U.S. at 972 (per curiam) (quoting 11A C. Wright, A. Miller, & M. Kane, Federal Practice and Procedure § 2948, pp. 129-130 (2d ed. 1995)). "A plaintiff seeking a preliminary injunction must establish that he is likely to succeed on the merits, that he is likely to suffer irreparable harm in the absence of preliminary relief, that the balance of equities tips in his favor, and that an injunction is in the public interest." *Winter*, 555 U.S. at 20. A "possibility" of irreparable harm is insufficient; irreparable harm must be *likely* in the absence of an injunction. *Id.* at 22.

A preliminary injunction is "primarily issued to preserve the status quo of the parties." *Transwestern Pipeline Co. v. 17.19 Acres of Prop. Located in Maricopa Cty.*, 550 F.3d 770, 776 (9th Cir. 2008). But Plaintiffs do not seek to preserve the status quo; rather, they seek a mandatory

injection to accelerate Defendants' processing and to compel the release of records.  Such a request to change the status quo is "particularly disfavored" in law.  *Stanley v. Univ. of S. Cal.*, 13 F.3d 1313, 1320 (9th Cir. 1994).  As the Ninth Circuit has acknowledged, "when a mandatory preliminary injunction is requested, the district court should deny such relief 'unless the facts and law clearly favor the moving party.'"  *Id.* (quoting *Anderson v. United States*, 612 F.2d 1112, 1114 (9th Cir. 1979)).

Furthermore, "it is generally inappropriate for a federal court at the preliminary-injunction stage to give a final judgment on the merits."  *Univ of Texas v. Caminsch*, 451 U.S. 390, 395 (1981).  But by requesting the release of all non-exempt records in less than one month or the compulsory monthly release of 1,000 pages of records through a preliminary injunction, Plaintiffs are asking this Court in advance, and without seeing any records, to hold that Defendants are required to release particular records.  That inverts the traditional sequence of proceedings in FOIA litigation, and would effectively grant Plaintiffs a victory on the merits at this early stage of the case.  *See, e.g.*, *Defs. of Wildlife v. U.S. Border Patrol*, 623 F. Supp. 2d 83, 87 (D.D.C. 2009) ("FOIA cases typically and appropriately are decided on motions for summary judgment.").  Prematurely deciding the merits would moreover be contrary to the parties' statement in the Joint Rule 26(f) Report that "*all issues* in this FOIA action can be decided and fully resolved on summary judgment," on which the Court relied when it adopted their joint proposed summary judgment briefing schedule.  *See* ECF No. 69 at 12 (emphasis added).

Ultimately, Plaintiffs are unable to meet their burden of demonstrating that they are entitled to the extraordinary relief of a preliminary injunction.  As explained above, CRCL has fully processed the Gourgen Request, and ICE has completed the ICE Meta-FOIA Request, and there is no longer anything for the Court to enjoin concerning those requests.  With respect to the FOIA requests where processing remains ongoing, Plaintiffs have not demonstrated any likelihood of irreparable harm, nor have they demonstrated that they are likely to succeed on the merits.  Additionally, the requested mandatory injunction would place an undue burden on Defendants, and it would not serve the public interest.  The motion should be denied.

**A.      Plaintiffs have not shown that they are likely to suffer any irreparable harm absent an injunction.**

The Court should deny Plaintiffs' request for preliminary injunctive relief because they have not met their burden to "show that irreparable harm is likely to result in the absence of the injunction." *All. for the Wild Rockies v. Cottrell*, 632 F.3d 1127, 1135 (9th Cir. 2011).  A plaintiff "must establish that irreparable harm is likely, not just possible, in order to obtain a preliminary injunction." *Id.* at 1131.  It is therefore "not enough" for Plaintiffs "to identify a purported injury which is only theoretical or speculative." *Earth Island Inst. v. U.S. Forest Serv.*, 351 F.3d 1291, 1311 (9th Cir. 2003).

As noted above, the ICE Meta-FOIA Request is complete, as is CRCL's processing of the Gourgen Request, and the requested preliminary injunction therefore could not apply to those requests.  For the remaining requests, Plaintiffs' own lack of urgency in bringing this motion for purported emergency relief undercuts any claim of irreparable harm.  Plaintiffs' motion for preliminary injunction arrives more than three years after submitting the Gourgen Request (June 2018), a year and a half after submitting the Yoc De Ramirez Request (January 2021), fourteen months after submitting the Owen Request (July 2021), and ten months after submitting the CRCL Report Request (December 2021).  Further, Plaintiffs waited over eight months after filing this lawsuit to seek preliminary relief.  These delays "impl[y] a lack of urgency and irreparable harm." *Oakland Tribune, Inc. v. Chronicle Pub. Co.*, 762 F.2d 1374, 1377 (9th Cir. 1985).  Further still, even though the FOIA itself contains a mechanism for a requester to seek expedited processing, Plaintiffs did not request expedition until September 29, 2022—the day before this motion was filed.  *See* Schurkamp Decl. ¶ 22; Law Decl. ¶ 8.[7]  Any colorable claim of irreparable harm is therefore sharply undercut by the lack of urgency with which Plaintiffs themselves have from the outset proceeded.  *See, e.g.*, *Sassman v. Brown*, 73 F. Supp. 3d 1241, 1252 (E.D. Cal. 2014) (denying relief when plaintiff waited seven months to file suit and seek preliminary injunction).

---

[7] Both ICE and CRCL denied Plaintiffs' request for expedited processing due to procedural deficiencies in the request and, in the alternative, because Plaintiffs had not shown any entitlement to expedited processing on the merits.  Schurkamp Decl. ¶ 22 & Ex. G; Law Decl. ¶ 8 & Ex. L.

1    Setting aside Plaintiffs' delay in seeking supposed emergency relief, Plaintiffs have not

2    shown that they are likely to suffer irreparable harm from Defendants' processing rates for their

3    outstanding requests.

4    *Plaintiff AOL*

5    Plaintiff AOL has not shown irreparable harm from Defendants' processing rate of the Yoc

6    De Ramirez Request or the CRCL Report Request. Although Plaintiff AOL asserts generally that

7    Defendants are withholding "critical and relevant information" that, according to AOL, "thwarts

8    [its] advocacy efforts," AOL does not explain why any claimed harm from delay is irreparable, or

9    even explain which particular requested records are essential to its advocacy mission. Pls.' Mot.

10   19. Nor does Plaintiff AOL explain why the rolling productions Defendants are providing in

11   response to the two requests at issue are not sufficient to support its asserted advocacy efforts. At

12   bottom, Plaintiff AOL's claim of harm appears to rest on the speculative belief that they will

13   receive "stale" records that, AOL contends, will no longer be of interest in what Plaintiff AOL

14   calls a "current and ongoing debate" about immigration detention policy. Jong Decl. ¶¶ 23-24,

15   ECF No. 74-8. But there is no sign that what Plaintiffs concede is an "ongoing debate" about

16   immigration detention facilities will soon fade away, and Plaintiffs certainly make no assertion

17   otherwise. *See Al-Fayed v. C.I.A.*, No. 00-2092, 2000 WL 34342564, at *5 (D.D.C. Sept. 20,

18   2000) (finding no irreparable harm when the plaintiff made conclusory assertion that expedited

19   processing of government records was necessary to "engage in informed discussion and debate,"

20   noting that the plaintiff failed to explain why "information will not retain its value if procured

21   through the normal FOIA channels"), *aff'd* 254 F.3d 300 (D.C. Cir. 2001).

22   Similarly, contrary to Plaintiffs' claims of urgency, there is no apparent event on the

23   horizon which would diminish the value of the records Plaintiff AOL has requested. Although

24   Plaintiff AOL refers elliptically to "key deadlines" that are supposedly "impair[ed]" by

25   Defendants' alleged delay, neither Plaintiffs' brief nor Plaintiff AOL's supporting declaration

26   identify what those deadlines might be, or for that matter identify any deadlines at all. Pls.' Mot.

27   19:20-24 (citing Jong Decl. ¶¶ 23-25). Plaintiffs also tout the November 2022 midterm elections

28   and speculate that some undefined response to the FOIA requests "could" help inform voters about

13

1   immigration policy.  Pls.' Mot. 20:5-8; Jong Decl. ¶ 25.  But Plaintiff AOL fails to identify how

2   its own interests—as opposed to voters' interests—could be undercut by some unspecified record's

3   release after the election, let alone why the ongoing productions of non-exempt documents do not

4   serve those same interests.  In any event, the November 2022 elections will have come and gone

5   during the briefing of this motion under the parties' *agreed* schedule, let alone whenever the

6   motion is decided.  This alleged harm could therefore not be remedied by a preliminary injunction

7   even if Plaintiffs had been able to substantiate it.   Having failed to demonstrate any urgent and

8   pressing need for the requested records, Plaintiff AOL necessarily fails to show that any claimed

9   harm is irreparable, "because [a FOIA plaintiff] is entitled to obtain all responsive and non-exempt

10   documents at the conclusion of the litigation." *Sai v. Transportation Sec. Admin.*, 54 F. Supp. 3d

11   5, 10 (D.D.C. 2014).   Clearly, Plaintiff AOL, like many FOIA requesters, wishes to have its

12   requested records processed immediately.  But while that may be "understandable," such a "desire,

13   without   more,   is   insufficient   to   constitute   the   irreparable   harm   necessary   to   justify   the

14   extraordinary relief requested here." *Judicial Watch v. DHS*, 514 F. Supp. 2d 7, 10 (D.D.C. 2007).

15        *Plaintiff Tammy*

16        As noted above, ICE has completed processing of the records responsive to the Owen

17   Request that it has located to date, but may need to process additional records pending the outcome

18   of recently tasked additional searches.  Schurkamp Decl. ¶¶ 19-20.  Plaintiff Tammy, however,

19   has not established a likelihood of irreparable harm absent an injunction.  In their brief, Plaintiffs

20   refer to "public outcry" following Ben's death in January 2020, but fail to explain how that

21   measure of public interest from nearly three years ago somehow amounts to irreparable harm to

22   Plaintiffs today. Pls.' Mot. 20:20-21; *see Elec. Privacy Info. Ctr. v. Dep't of Def.,* 355 F. Supp. 2d

23   98 (D.D.C. 2004) ("Fatal to [plaintiff's] request for expedited treatment is the failure in its original

24   FOIA to demonstrate that there is any current public interest in the *specific subject* of that request."

25   (emphasis added)).  They further contend that Defendants' processing rates prevent "Ben's family

26   and the public at large" from receiving "critical information in a timely fashion."  Pls.' Mot. 20:22-

27   25.  But the  only claim of harm which matters is that of Plaintiff Tammy, which is made second-

28   hand through a declaration of counsel.  *See* Lax Decl. ¶ 11, ECF No. 74-2.  Ms. Lax states in her

14

1    declaration that upon the release of responsive records, Plaintiff Tammy will achieve closure and

2    will be able to "learn how and why Ben died."   Lax Decl. ¶¶ 10-11.   But that claim rests on

3    speculation about the content of the released records and an assumption that whatever records

4    Plaintiff Tammy might wish to obtain will not be withheld pursuant to a statutory exemption.   And

5    Plaintiffs already agreed to a summary judgment briefing schedule in which any disputes over

6    withholdings will not be resolved until late 2024 at the earliest.   *See* ECF No. 69 at 12 (joint

7    proposed summary judgment briefing schedule); ECF Nos. 70, 71 (adopting proposed briefing

8    schedule).   Moreover, even assuming counsel is accurate in their prediction of what records will

9    be disclosed, and what their effect will be, there is no assertion that Plaintiff Tammy will not

10   eventually receive them, or that the alleged delay causes a harm that is irreparable.

11          *Plaintiff Miran*

12          CRCL has completed its processing of the Gourgen Request, and ICE, having waived its

13   exhaustion defense, is processing responsive records.   But while Plaintiffs AOL and Tammy at

14   least attempt to demonstrate irreparable harm, Plaintiffs' brief is completely silent on any claim of

15   irreparable harm to Plaintiff Miran from the alleged delay in processing the Gourgen Request.   *See*

16   Pls.' Mot. 19-21.   That failure alone is sufficient to defeat Plaintiffs' request for injunctive relief

17   on this request.   Nor can Plaintiffs rely on their generalized argument that non-compliance with

18   the FOIA's statutory timelines amounts to irreparable harm.   *See Mayo v. U.S. Gov't Printing Off.*,

19   839 F. Supp. 697, 699-700 (N.D. Cal. 1992) (rejecting the plaintiff's contention "that upon a prima

20   facie showing of an FOIA violation, a plaintiff is entitled to immediate injunctive relief without

21   regard to irreparable harm or likelihood of success on the merits"), *aff'd*, 9 F.3d 1450 (9th Cir.

22   1993).

23          Although Plaintiffs failed to cite it in their brief, paragraph 16 of the Declaration of Andrew

24   Free, ECF No. 74-19,  does contain a conclusory, third-party assertion of harm to Plaintiff Miran

25   from the alleged delays in ongoing processing.   But, like the third-party harm assertion for Plaintiff

26   Tammy, it does not describe with any particularity the records whose non-disclosure to date

27   allegedly harms Plaintiff Miran.   It also rests on speculation about the contents of those unspecified

28   records and an assumption that those records will not be withheld under an applicable FOIA

1    exemption.  Finally, there is no explanation for why the alleged delay results in harm to Plaintiff

2    Miran that is irreparable.  Plaintiffs specify no fast-approaching event or deadline by which they

3    need particular records—lest they suffer some irreversible setback that would amount to

4    irreparable harm.

5                              *          *          *

6         Finally, insofar as Plaintiffs seek a mandatory injunction requiring Defendants to produce

7    a *Vaughn* index within 30 days, *see* Pls.' Mot. 23:25-26, they make no attempt to explain why any

8    irreparable harm is likely to occur absent such relief.  That failure to demonstrate irreparable harm

9    alone deprives Plaintiffs of any claim to a preliminary injunction concerning a *Vaughn* index.  But

10   even if Plaintiffs had attempted to show such harm, there is no warrant to require expedited

11   production of a *Vaughn* index.  The lone purpose for a *Vaughn* index, after all, is to litigate any

12   disputes over FOIA exemptions, and it is typically produced by the defendant together with

13   summary judgment briefing—which the parties agreed would be the mechanism for resolving "all

14   issues in this FOIA action," ECF No. 69 at 12.  *See, e.g.*, *Pinson v. U.S. Dep't of Just.*, 975 F.

15   Supp. 2d 20, 32 (D.D.C. 2013) (denying request for preliminary injunction to compel production

16   of a *Vaughn* index because "a *Vaughn* index is not typically required until the Defendants must

17   factually support a motion for summary judgment" and case was "not yet in a posture for

18   dispositive briefing"); *Pick v. Motorola Sols., Inc.*, No. 220CV08011JWHPVCX, 2022 WL

19   409681, at *5 (C.D. Cal. Feb. 10, 2022) (citing *Pinson* and deeming request for *Vaughn* index at

20   the preliminary injunction stage an "unusual form[] of relief").  Any disputes over exemptions

21   will, as the parties agreed and the Court has directed, be accomplished by cross-motions for

22   summary judgment.  And Plaintiffs agreed to (and the Court ordered) a briefing schedule which

23   contemplates briefing commencing in August 2024, *i.e.*, *after* Defendants have completed

24   processing on their current schedule.  *See* ECF No. 69 at 12 (joint proposed summary judgment

25   briefing schedule); ECF Nos. 70, 71 (adopting proposed briefing schedule).  Plaintiffs cannot show

26   any irreparable harm from not receiving a *Vaughn* index on an expedited basis when the need for

27   that document, should there be a need at all, *see Minier v. CIA*, 88 F.3d 796, 804 (9th Cir. 1996)

28   ("*Vaughn* indices, however, are not appropriate in all FOIA cases"), will not arise until August

                                          16

2024.

Because Plaintiffs have failed to show irreparable harm in the absence of a preliminary injunction, their motion should be denied on this ground alone.  *See Sai*, 54 F. Supp. 3d at 11 (denying a preliminary injunction when the plaintiff "failed to demonstrate *any* time sensitive need for the requested information that will be irreparably lost if disclosure does not occur immediately and this case is allowed to proceed down the typical path of FOIA litigation" (citation omitted)).

**B.      Plaintiffs have not shown that they are likely to succeed on the merits.**

Beyond recounting the legislative purpose of the FOIA and rehashing their legal conclusion that Defendants have not made documents "promptly available,"  Plaintiffs have not articulated any argument for why they are likely to succeed on the merits.  On the contrary, for the FOIA requests where processing is outstanding, Defendants are processing the records and making rolling productions at a monthly rate that numerous courts have endorsed as reasonable.  And insofar as Plaintiffs ultimately seek to challenge any exemptions asserted by Defendants in their record releases, Defendants intend to defend those assertions on the merits at summary judgment— just as the parties agreed to do.

Defendants agree with Plaintiffs that they are "entitled to processing of their FOIA requests." Pls.' Mot. 16:25.  But it does not follow from that proposition, as Plaintiffs contend, that their "likelihood of prevailing on the merits could not be stronger." *Id.* at 16:25-26.  While Plaintiffs are no doubt entitled to have Defendants process and produce records, Plaintiffs proffer no reason why they are entitled to have ICE and CRCL process, in the span of thirty days, the thousands of pages of records potentially responsive to the FOIA requests which remain pending. Nor do Plaintiffs offer any reason why the law requires Defendants to exceed the already generous monthly processing rates they are employing and to produce—not merely process—at least 1,000 pages per month.

Plaintiffs' argument appears to be that simply because Defendants were untimely in making their initial responses to the requests, Defendants should be judicially ordered to produce all records on an arbitrary and unreasonable 30-day timetable, and to thereby privilege Plaintiffs'

requests to the detriment of other FOIA requesters.[8]  But an "alleged failure by the defendants to respond within the 20-day statutory deadline, under 5 U.S.C. § 552(a)(6)(A)(i), does not entitle plaintiff to immediate processing and production."  *New York Times Co. v. Def. Health Agency*, No. 21-CV-566 (BAH), 2021 WL 1614817, at *5 (D.D.C. Apr. 25, 2021); *Navigators Ins. Co. v. Dep't of Just.*, 155 F. Supp. 3d 157, 167-68 (D. Conn. 2016) (rejecting the argument "that an agency's violation of FOIA's deadlines entitles the requester to automatic disclosure of the requested documents without any analysis of the agency's claimed exemptions").  Rather, as the D.C. Circuit has explained, "[i]f the agency does not adhere to FOIA's explicit timelines, the 'penalty' is that the agency cannot rely on the administrative exhaustion requirement to keep cases from getting into court."  *CREW*, 711 F.3d at 189.  "[T]he consequence of agency delay in rendering [an initial] determination bears *only* on the requester's ability to get into court"; it "merely opens the courthouse doors for a lawsuit and authorizes judicial supervision of the agency's diligence in responding to the request."  *New York Times*, 2021 WL 1614817 at *6.  In short, while Defendants' initial responses to Plaintiffs' FOIA request may have been untimely, that "does not trigger entitlement to production of responsive records, much less immediate production, of the enormous data sets plaintiff's FOIA requests seek."  *Id.*

Insofar as Plaintiffs claim that Defendants' processing rates of 500 and 450 pages per month are too slow, numerous courts, including those in the Ninth Circuit, have disagreed.  *See ACLU Found. v. U.S. Dep't of Justice*, No. 3:19-cv-00290, Doc. 110 (N.D. Cal. Mar. 26, 2021) (ordering DHS to "process a minimum of 250 pages per month"); *Informed Consent Action Network v. Nat'l Institutes of Health*, No. 2:20-cv-1277, Doc. 53 (D. Ariz. Jan. 3, 2022) (agency

---

[8] Plaintiffs also assert general legal propositions about the adequacy of FOIA searches.  *See* Pls.' Mot. 17:1-6, 18:17-21.  But Plaintiffs never directly contend that there is some issue with the adequacy of Defendants' searches, let alone demonstrate that they are likely to prevail on any claim along those lines.  In any event, if it is litigated at all, the adequacy of Defendants' searches is an issue to be resolved at the summary judgment stage of the case.  *New York Times*, 2021 WL 1614817 at *6 ("Just because defendants have begun but not completed their searches and processing of responsive records within the 20-day statutory period does not mean those searches are inadequate or the efforts are not reasonable; instead, this claim is *simply premature*." (emphasis added)).

1   "shall complete its production . . . at its current pace of at least 300 pages per month"); *see also*

2   *Freedom Watch v. BLM*, 325 F. Supp. 3d 139, 142 (D.D.C. 2018) (agreeing with schedule of 500

3   pages per month despite the fact that processing of plaintiff's FOIA request would take

4   approximately 500 months); *Chaverra v. ICE*, No. CV 18-289 (JEB), 2020 WL 7419670, at *1

5   (D.D.C. Nov. 5, 2020) (explaining that "the explosion of FOIA requests and subsequent litigation

6   has created a substantial workload for agencies," and that "[w]hile all requesters are eager to jump

7   to the front of the queue, this Court and others have approved production schedules" involving a

8   500 page per month rate); *Colbert v. FBI*, Civ. No. 16-CV-1790 (DLF), 2018 WL 6299966, at *3

9   (D.D.C. Sept. 3, 2018) (permitting a processing rate of 500 pages per month for 71,000 responsive

10   records); *Daily Caller News Found. v. FBI*, 387 F. Supp. 3d 112, 121 (D.D.C. 2019) (finding "no

11   reason in this case to vary from the FBI's policy of processing 500 pages per month" even though

12   there were estimated to be 7,000 potentially responsive documents).[9]   The D.C. Circuit, in fact,

13   has observed that an agency's policy of processing 500 pages per request per month "serves to

14   *promote* efficient responses to a larger number of requesters."   *Nat'l Sec. Counselors v. Dep't of*

15   *Justice*, 848 F.3d 467, 471-72 (D.C. Cir. 2017) (emphasis added).   As outlined in the ICE and

16   CRCL declarations, that is exactly the balancing that Defendants have undertaken in order to strike

17   the appropriate balance between FOIA disclosure obligations and inevitable resource constraints.

18           Plaintiffs may not like the fact that it will take many months to complete the processing of

19   their remaining requests at these rates, but that is simply a function of the breadth of responsive

20

21

22       [9] Courts also routinely approve processing schedules at a rate of *less than* 500 or 450 pages
per month. *See, e.g.*, *Ctr. for Repro. Rights v. State*, No. 18-cv-2217 (D.D.C. Apr. 3, 2019)

23   (directing a 300-page-per-month processing rate where there were over 123,000 potentially
responsive pages); *Citizens United v. State*, No. 16-cv-67 (D.D.C. Aug. 16, 2016) (ordering 300

24   page per month review rate despite plaintiff's request that agency review 2,000 pages per month);
*Judicial Watch v. State*, No. 17-cv-205 (D.D.C. June 30, 2017) (ordering 300 page-per-four-week

25   review rate despite plaintiff's request that agency review on average more than 16,000 pages per
month); *Citizens United v. State*, No. 18-cv-326 (D.D.C. May 30, 2018 & June 6, 2018) (ordering

26   300 page-per-month review rate despite plaintiff's request that agency review almost 8,000 pages
per month, "in light of the resource constraints and production orders in other cases"); *Blixseth v.*

27   *Dep't of Justice*, No. 18-cv-2281 (D.D.C. Dec. 17, 2018) (ordering 300 page-per-month review

28   rate); *Jordan v. Dep't of Justice*, No. 17-cv-2702 (D.D.C. Aug. 28, 2018) (same).

records the agencies have located based on those requests.  Notably, when Defendants raised the breadth of the Yoc De Ramirez Request with Plaintiffs and sought "to discuss possibilities to narrow the request so that you would obtain the documents you most care about more quickly," Plaintiffs declined to engage and never took Defendants up on this offer.  *See* Zee Decl. ¶ 2 & Ex. M.

While Plaintiffs are surely entitled to have their remaining FOIA requests diligently processed, they are not entitled to dictate the processing rate to the agency through a preliminary injunction, nor are they entitled to jump to the head of the queue ahead of the many other FOIA requesters who would in turn be affected by Plaintiffs' requested injunction.  Plaintiffs' claims of an untimely initial response by Defendants do not entitle them to immediate processing, *see, e.g.*, *New York Times*, 2021 WL 1614817 at *5-6, *Navigators Ins. Co.*, 155 F. Supp. 3d at 167-68, and Defendants' 450- and 500-page-per-month processing rates are both reasonable in view of their finite resources and supported by numerous court decisions.  Plaintiffs are unlikely to succeed on the merits of their claims.

### C.       The public interest and Defendants would both be harmed by an injunction requiring immediate processing and disclosure.

In contrast to Plaintiffs' speculative and unsubstantiated claims of irreparable harm, a preliminary injunction requiring Defendants to complete all processing of the remaining requests within thirty days would impose undue burdens on Defendants and impair the interests of other FOIA requesters and thereby the public interest.  As explained in the attached ICE and CRCL declarations, imposing an arbitrary 30-day completion deadline would force these components to do in the work of one month what their resources can handle only in many times that.  Further, a judicially-imposed processing requirement necessarily takes resources away from other requests (some of which preceded Plaintiffs' and which are themselves in litigation).

Plaintiffs' requested injunction would harm CRCL and ICE by straining those agencies' limited FOIA resources and impairing their ability to process other FOIA requests already in the queue.  It is not true, as Plaintiffs assert, that Defendants have ignored FOIA's statutory mandates.  As explained above, Defendants have in fact processed several thousand pages of records, and

CRCL has completed processing the Gourgen Request, and ICE has completed the ICE Meta-FOIA Request. Those efforts have come against a backdrop of increasing numbers of FOIA requests which are often of increasing complexity—over 100,000 annually for ICE—coupled with finite staff and resources. Schurkamp Decl. ¶¶ 4-13; Law Decl. ¶ 9. Because Plaintiffs' remaining requests are in litigation, ICE has adopted its 500-page per month processing rate that it applies to such requests—as of the date of this filing, there are approximately 157 cases in FOIA litigation, requiring ICE to review approximately 32,500 pages per month, of which it releases on average 13,500 pages. Schurkamp Decl. ¶ 10. Based on these workloads, each of the 3 ICE FOIA paralegals reviews more than 10,000 pages per month. *Id.*

CRCL meanwhile has only one FOIA officer, who is responsible for processing all FOIA and Privacy Act requests directed to CRCL. Law Decl. ¶¶ 1-2, 9. CRCL currently has 41 requests pending, 13 of which are in litigation. *Id.* ¶ 9. It generally processes those requests in a manner that allows it to devote resources to multiple requests at any given time, but accelerates processing for those cases where the requester files suit in federal court. *Id.* Under the current workload, CRCL's FOIA officer processes potentially responsive records for numerous FOIA requests each month, in addition to managing other administrative aspects of CRCL's FOIA office. *Id.* ¶ 2-3.

Were the Court to grant the requested injunction and require Defendants to process all documents in less than one month or to release at least 1,000 pages per month, it would unduly strain Defendants' resources. ICE, for example, would need to devote all of its FOIA staff just to Plaintiffs' request, depriving ICE of its ability to timely process other requests, some of are under competing court deadlines and litigation commitments. Schurkamp Decl. ¶ 23. CRCL, meanwhile would essentially be required to immediately reassign all staffing resources to the CRCL Reports Request, and thus to delay other FOIA requests and jeopardize its efforts to meet other court deadlines and processing commitments. Law Decl. ¶ 10. Plainly, if Plaintiffs' were to obtain the requested injunction, Defendants would be harmed as a result.

The public would also suffer from an injunction putting Plaintiffs in a privileged position relative to other FOIA requesters. By filing suit in federal court, Plaintiffs here have *already* obtained more favorable treatment than other FOIA requesters, some of whom submitted requests

1   to Defendants *before* Plaintiffs did.  Law Decl. ¶ 10.  Imposing an onerous, artificial deadline that

2   is beyond the agencies' capabilities through a preliminary injunction would only hinder the

3   average FOIA requester even further by favoring their more litigious counterparts.  *See Long v.*

4   *DHS*, 436 F. Supp. 2d 38, 45 (D.D.C. 2006) (placing plaintiffs' request ahead of others that are

5   awaiting responses to their requests would injure others who made their requests before the

6   plaintiff or who have presented more meritorious applications for expedited processing); *Middle*

7   *East Forum v. Dep't of Homeland Security*, 297 F. Supp. 3d 183, 187 (D.D.C. 2018) (finding that

8   the plaintiff had not provided reasons that its requests should take precedence over other FOIA

9   requests); *Elec. Privacy Info. Ctr. v. Dep't of Justice*, 15 F. Supp. 3d 32, 47 (D.D.C. 2014) (denying

10  motion for preliminary injunction requesting immediate production of documents pursuant to

11  FOIA request and noting that allowing the plaintiff "to jump to the head of the line would upset

12  the agency's processes and be detrimental to the other expedited requesters").  As ICE and CRCL

13  explain in their declarations, the burdens from competing FOIA requests and other litigation

14  deadlines are actively consuming the components' limited FOIA resources.  Stretching those

15  resources further still, when Plaintiffs are already receiving favorable treatment, would only serve

16  to harm Defendants and the overall public's interest in orderly implementation of the FOIA.  *See*

17  *Progress v. Consumer Fin. Prot. Bureau*, No. CV 17-686 (CKK), 2017 WL 1750263, at *7

18  (D.D.C. May 4, 2017) (explaining that the public "has an interest in ensuring that only non-exempt

19  materials are released, and consequently, that agencies have sufficient time to review materials

20  before they are produced").

21          Plaintiffs are surely aware that their request for favored treatment with a preliminary

22  injunction will affect other requesters, but ignore that fact when they implausibly claim that

23  granting them emergency relief "will also not burden the interests of other parties who have

24  submitted FOIA requests to Defendants in any manner beyond that already foreseen by Congress."

25  Pls.' Mot. 22:19-21.  Plaintiffs have not shown—and cannot show—that other FOIA requesters

26  will not be harmed if Plaintiffs' requests consume a disproportionate share of Defendants'

27  processing resources.  As Defendants have shown, forcing Defendants to process all responsive

28  documents to Plaintiffs' requests that remain outstanding would drain resources from other

1   requesters.  Schurkamp Decl. ¶¶ 23-26; Law Decl. ¶¶ 9-10.  The public interest would be ill-served

2   by forcing government agencies to accelerate FOIA processing to unreasonable levels based on

3   nothing more than conclusory and speculative contentions that the requested information is time-

4   sensitive.  *See Progress*, 2017 WL 1750263, at *7; *Daily Caller v. U.S. Dept' of State*, 152 F.

5   Supp. 3d 1, 15 (D.D.C. 2015).

6          Defendants do not disagree with Plaintiffs' assertion that there is a public benefit in the

7   release of government information through the FOIA—indeed, that is one of the statute's core

8   purposes.  *See* Pls.' Mot. 22 (citing *Ctr. to Prevent Handgun Violence v. Dep't of the Treasury*, 40

9   F. Supp. 2d 3, 5 (D.D.C. 1999)).  But Defendants are meeting that interest by providing monthly

10  rolling productions in response to the FOIA requests still outstanding—and the public interest has

11  already been served for those requests Defendants have already completed.  Plaintiffs, meanwhile,

12  have "failed to explain why the public interest can only be served by the *immediate* release of the

13  records requested," nor explained why the public interest would not be served by Defendants'

14  current rate of processing. *Judicial Watch v. DHS*, 514 F. Supp. 2d at 11 ("That the public interest

15  can only be served by the immediate release of these records simply has not been demonstrated").

16  Nor have Plaintiffs indicated in their briefing that they have done anything with the many pages

17  of records produced to date to meet the public's asserted interest in these issues.  "In short, forcing

18  [Defendants] to produce all requested records on an impracticably brief deadline raises a

19  significant risk of harm to the public and private interests served by the thorough processing of

20  responsive agency records prior to their ultimate production." *Daily Caller*, 152 F. Supp. 3d at 15.

21         A preliminary injunction that would give Plaintiffs preferential treatment over other FOIA

22  requesters is not in the public interest and would unduly burden Defendants' limited FOIA

23  resources.  Because Plaintiffs cannot satisfy these required elements for injunctive relief, the

24  motion should be denied.

25                          **CONCLUSION**

26         For the foregoing reasons, Plaintiffs' motion for preliminary injunction and for partial

27  judgment on the pleadings should be denied.

28

1  Dated: October 31, 2022                    Respectfully submitted,

2

3                                              BRIAN M. BOYNTON
                                               Principal Deputy Assistant Attorney General

4                                              ELIZABETH J. SHAPIRO
                                               Deputy Director, Federal Programs Branch
5

6                                              /s/ M. Andrew Zee
                                               M. ANDREW ZEE (CA #272510)
7                                              Attorney
                                               Civil Division, Federal Programs Branch
8                                              United States Department of Justice
                                               450 Golden Gate Ave.
9                                              Room 7-5395
                                               San Francisco, CA 94102
10                                             Tel. (415) 436-6646
                                               Email: m.andrew.zee@usdoj.gov
11
                                               Attorneys for Defendants
12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28