UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA
WESTERN DIVISION

| | |
|---|---|
| TAMMY JANE OWEN as the Administrator of the Estate of Benjamin James Owen; AL OTRO LADO, Inc.; and MIRAN MIRIMANIAN,<br><br>Plaintiffs,<br><br>vs.<br><br>U.S. IMMIGRATION AND CUSTOMS ENFORCEMENT; and U.S. DEPARTMENT OF HOMELAND SECURITY – OFFICE FOR CIVIL RIGHTS AND CIVIL LIBERTIES,<br><br>Defendants. | Case No.: 2:22-cv-00550-DSF-AFM<br><br>**DECLARATION OF LYNNEA SCHURKAMP** |

I, Lynnea Schurkamp, pursuant to 28 U.S.C. § 1746, hereby declare as follows:

1. I am one of two Deputy FOIA Officers of the Freedom of Information Act Office (the "ICE FOIA Office") at U.S. Immigration and Customs Enforcement ("ICE"). The ICE FOIA Office is responsible for processing and responding to all Freedom of Information Act ("FOIA"), 5 U.S.C. § 552, amended by the OPEN Government Act of 2007, Pub. L. No. 110-175, 121 Stat. 2524, and Privacy Act of 1974 (the "Privacy Act"), 5 U.S.C. § 552a, requests received at ICE. I have held this position since August 1, 2021. I am the ICE official responsible for supervising ICE responses to requests for records in litigation. Prior to this position, I was the Assistant Disclosure Officer of the U.S. Secret Service FOIA Intake Team from July 21, 2019, to July 31, 2021. Prior to that I was the FOIA Program Manager/Litigation Coordinator for the National Organic Program in the Agricultural Marketing Service, U.S. Department of Agriculture for one year.

2. My official duties and responsibilities include the oversight and supervision of the ICE FOIA Litigation Team which is responsible for reviewing and producing records for ICE FOIA requests when a complaint has been filed with a court. The Litigation Team will send out search taskings, gather responsive records, review records for responsiveness, process productions, and release records with applicable withholdings to the plaintiff or plaintiff's counsel. Due to my experience and the nature of my official duties, I am familiar with ICE's procedures for responding to requests for information pursuant to provisions of the FOIA and the Privacy Act.

3. I make this declaration in support of ICE's position in the above-captioned case. The statements contained in this declaration are based upon my personal knowledge, my review of documents kept by ICE in the ordinary course of business, and information provided to me by other ICE employees in the course of my official duties.

**RECENT STATISTICS REGARDING FOIA REQUESTS SUBMITTED TO ICE**

4. As of October 9, 2022, the ICE FOIA Office is processing approximately 19,765 open FOIA requests addressing a backlog of 17,529 requests.[1] There are approximately 157 open federal district court cases, and 75 cases in active record production.

5. In fiscal year ("FY") 2020, the number of FOIA requests the ICE FOIA Office handled dramatically increased to over 100,000 from approximately 64,000 in FY 2019. Since FY 2020, that number has continued to increase, with the ICE FOIA Office handling approximately 105,000 requests in FY 2021 and over 110,000 requests in FY 2022. This spike in ICE FOIA's workload is attributed to an increase in the number of requests from individuals for documents in their immigration file coupled with increased public interest in the Department's implementation of Presidential and/or Executive Orders.

6. Between FY 2017 and FY 2020, the ICE FOIA Office experienced approximately a 240% increase in FOIA requests. This dramatic increase in ICE FOIA's workload is attributed

---

[1] Backlog cases are those that have been pending for over 20 days.

to an increase in the number of referrals ICE received from USCIS and the increased public interest in the Department's operations as they pertain to recent Presidential and/or Executive Orders and subsequent guidance from the Secretary of Homeland Security.

**COMPLEXITY AND VOLUME OF FOIA REQUESTS RECEIVED BY ICE**

7. In addition to the increasing volume of FOIA requests, ICE has also experienced an increase in the complexity of FOIA requests, both in terms of volume and substance. For example, it is common to see FOIA requests with 50 to 60 sub-parts comprising several pages, searches of numerous program offices, and a universe of records made up of thousands of pages that must be reviewed and processed one page at a time. These FOIA requests take considerably longer to process due to extensive searches and the intricacy of the documents and/or data produced. In FY 2019, one FOIA requester alone – a data clearing house – filed more than 370 FOIA requests seeking extensive data extracts. In FY 2020, the same requester filed more than 480 similar FOIA requests and over 520 in FY 2021.

8. In response to the increasingly heavy workload, the ICE FOIA Office has adopted the court-sanctioned practice of generally handling backlogged requests on a "first-in, first-out basis," which ensures fairness to all FOIA requesters by not prioritizing one request over another. This practice applies to requests that are in litigation. The reason for this is that the principle of fairness to all requesters would be jeopardized were a requester permitted to "jump the line" simply by virtue of filing a case in U.S. District Court. Generally, the only exception to this is where a court orders processing at rates above the ICE FOIA Office's current processing rate for all cases.

**CURRENT WORKLOAD OF THE ICE FOIA LITIGATION PROCESSING UNIT**

9. The increasing complexity and volume of ICE FOIA's workload and backlog (see paragraphs 4-7) creates the potential that some FOIA requests could become subject to litigation in U.S. District Court.

10. The ICE FOIA Litigation Team consists of 3 ICE FOIA Paralegals and 3 temporary detailees from other ICE Program Offices who serve on 120-day details to the ICE FOIA Office. The ICE FOIA Litigation Team's workload has increased such that it is currently

processing approximately 157 active FOIA litigations as of the date of this declaration and of which approximately 75 have rolling productions. ICE's normal processing rate for cases in litigation is 500 pages per month. This yields a monthly litigation review of approximately 32,500 pages and an average of 13,500 pages released every month. Based on this workload, each ICE FOIA Litigation Team member reviews approximately 5,416 pages per month.

11. The ICE FOIA Litigation Processing Unit also drafts, assigns, and tracks all searches for responsive documents concerning FOIA litigations. The FOIA litigation search taskings frequently span dozens of ICE program and field offices and require the Unit to keep track of hundreds of thousands of responsive records, as well as the documentation from searches of the program offices and field offices.

12. The ICE FOIA Litigation Processing Unit has collateral duties, in addition to processing documents pursuant to litigation. For example, the processing unit prepares various reports for statistical tracking, responds to Congressional inquiries and requests for records, redacts Prison Rape Elimination Act reports, sends out FOIA Exemption (b)(4) submitter notices, and manages litigation consults and referrals from other agencies. Additionally, the processing unit supports attorneys in the ICE Office of the Principal Legal Advisor with federal FOIA litigation, by assisting in the creation of *Vaughn* indexes, reviewing declarations, and coordinating on joint status reports to the court. These collateral duties must also be met for ICE to satisfy its legal obligations.

13. To meet its obligations for all cases in litigation by ensuring that all of the FOIA matters progress, and each requester receives a response, the ICE FOIA Office typically cannot process more than 500 pages per month per case. Any increase in production for one case will inevitably hinder ICE FOIA's ability to process records for production in other matters.

**PROGRESS ON THE INSTANT CASE**

***The Gourgen FOIA Request***

14. On June 19, 2018, ICE received Plaintiff Miran Mirimanian's FOIA request for records related to the death of his father, Gourgen Mirimanian (the "Gourgen Request."). ICE acknowledged receipt and assigned Plaintiff Miran's FOIA request tracking number 2018-ICFO-

45391 on June 25, 2018. The ICE FOIA Office provided a final response with two (2) pages of records, to the Plaintiff Miran, on July 6, 2018. Plaintiff Miran filed an appeal of the agency's response on July 14, 2018, challenging the adequacy of the agency's search. On July 24, 2018, the ICE Office of the Principal Legal Advisor ("OPLA") acknowledged the appeal and assigned it the tracking number 2018-ICAP-00390. On August 22, 2018, OPLA issued a final response to the appeal, remanding the request back to the ICE FOIA Office to conduct additional searches. On remand, ICE conducted a search that yielded approximately 1,778 pages of potentially responsive records. The ICE FOIA Office provided a final response to Plaintiff Miran on May 6, 2019, and stated that, due to the open status of ongoing investigations, ICE was withholding the records in full under FOIA Exemption 7(A). Plaintiff Miran did not appeal ICE's May 6, 2019, final response. Notwithstanding the fact that the requester, Plaintiff Miran, had not exhausted the administrative appeal procedures, the open investigation that was the basis of ICE's previous assertion of FOIA Exemption 7(A) has now closed, and the ICE FOIA Office has elected in its discretion to process and voluntarily release all non-exempt, responsive records. As of October 31, 2022, approximately 1,778 pages of potentially responsive records remain to be processed by the ICE FOIA Office.

15. On October 15, 2022, ICE received from the DHS Office of Civil Rights and Civil Liberties ("CRCL") a referral of records (119 pages) that CRCL had identified as potentially responsive to Plaintiff Miran's request that he had submitted to CRCL. The ICE FOIA Office made a single production of non-exempt, responsive records on October 31, 2022 (119 pages processed.) *See* attached Ex. F (ICE Oct. 31, 2022 letter).

***The Yoc De Ramirez Request***

16. On January 4, 2021, ICE received Plaintiff AOL's FOIA request related to the death of Maria Celeste Ochoa-Yoc De Ramirez (the "Yoc De Ramirez Request."). The ICE FOIA Office made productions of the non-exempt, responsive records on August 31, 2022 (500 pages processed), and October 31, 2022 (203 pages processed). *See* attached Ex. D (ICE Aug. 31, 2022 letter); Ex. F (ICE Oct. 31, 2022 letter). As of October 31, 2022, approximately 9,957 pages of potentially responsive records remain to be processed by the ICE FOIA Office.

5

17. For purposes of completeness, in late October 2022, the ICE FOIA Office initiated additional searches for responsive documents which may result in additional records that need to be processed.

### The AOL "Meta-FOIA" Request

18. On March 11, 2021, ICE received Plaintiff AOL's request for records related to the processing of previously submitted FOIA requests (the "Meta-FOIA Request."). ICE acknowledged receipt and assigned Plaintiff AOL's FOIA request tracking number 2021-ICFO-32419 on March 11, 2021. The ICE FOIA Office located and processed all potentially responsive records and made a single production of the non-exempt, responsive records on May 31, 2022 (696 pages processed). *See* attached Ex. A (ICE May 31, 2022 letter). ICE has now completed its processing of the Meta-FOIA Request.

### The Owen FOIA Request

19. On July 22, 2021, ICE received Plaintiff Tammy's FOIA request for records related to the death of her husband, Benjamin Owen (the "Owen Request."). ICE acknowledged receipt and assigned Plaintiff Tammy's FOIA request tracking number 2022-ICFO-06586 on February 2, 2022. The ICE FOIA Office located and processed potentially responsive records and made productions of non-exempt, responsive records on July 1, 2022 (604 pages processed), July 26, 2022 (496 pages processed), September 26, 2022 (501 pages processed), and October 31, 2022 (326 pages processed). *See* attached Ex. B (ICE July 1, 2022 letter); Ex. C (ICE July 26, 2022 letter); Ex. E (ICE Sep. 26, 2022 letter); Ex. F (ICE Oct. 31, 2022 letter).

20. For purposes of completeness, in late October 2022, the ICE FOIA Office initiated additional searches for responsive documents which may result in additional records that need to be processed.

### The AOL CRCL Report Request

21. On February 15, 2022, ICE received from the DHS Office of Civil Rights and Civil Liberties ("CRCL") a referral of records (259 pages) that CRCL had identified as potentially responsive to Plaintiff AOL's request for reports and records related to certain ICE detention facilities (the CRCL Report Request."). ICE received additional referrals from CRCL

on August 15, 2022 (137 pages); September 15, 2022 (701 pages); and October 15, 2022 (91 pages). ICE acknowledged receipt of these referrals and assigned Plaintiff AOL's FOIA request tracking number 2022-ICFO-07670 on February 15, 2022. The ICE FOIA Office made productions of non-exempt, responsive records on May 31, 2022 (263 pages processed) and October 31, 2022 (91 pages processed.) *See* attached Ex. A (ICE May 31, 2022 letter); Ex. F (ICE Oct. 31, 2022 letter).  As of October 31, 2022, approximately 834 pages of potentially responsive records that were referred by CRCL remain to be processed by the ICE FOIA Office.

22. On September 29, 2022 counsel for Plaintiffs submitted a request for expedited processing of Plaintiffs' requests.  By letter dated October 18, 2022, ICE denied that request for procedural deficiencies and in the alternative because the requests did not qualify for expedition. *See* attached Ex. G (ICE Oct. 18, 2022 letter).  ICE also noted that it was already processing Plaintiffs' requests at the same rate which it would if expedition were granted.

**ADVERSE IMPACTS ON ICE FROM AN ACCELERATED PROCESSING RATE**

23. In this case, if ICE were ordered to process 12,500 pages of records in 30 days, the ICE FOIA Office would be forced to pull all FOIA staff from processing all other FOIA requests to process the approximately 12,500 pages which, as of this declaration, remain to be processed. This would affect the integrity of the FOIA process by not allowing the agency to timely complete all other pending and incoming FOIA requests while these 12,500 pages were being processed.[2] It would also cause the ICE FOIA Office backlog to increase. Further, this could impact other court deadlines and processing commitments and thus jeopardize ICE's ability to meet other commitments.

24. Moreover, the ICE FOIA Office typically cannot *produce* a set number of pages per month. Depending on the volume of records located in the search tasking phase of the administrative stage and/or FOIA litigation, if the Court would order ICE FOIA to *produce*

---

[2] The 12,500-page figure does not include outstanding videos that also need to be processed, which the ICE FOIA Office processes at a rate of 30 minutes per month. It also does not include any additional records that may be found by the October 2022 searches cited in paragraphs 17 and 20.

7

*rather than to review or process* a certain number of pages per month, it is entirely plausible that the processors would have to review hundreds, or even thousands, of additional pages on top of the 500 pages that are attainable, in order to get to the requisite *production* number. ICE FOIA is incapable of achieving this outcome based on finite resources, competing priorities, litigation and non-litigation deadlines, and the sheer volume of overall work.

25. With respect to the remaining searches, ICE has committed to process 500 pages per month of potentially responsive records and to produce any non-exempt information to Plaintiffs on a rolling basis until all potentially responsive records have been processed. As explained above, this rate of processing is the maximum rate ICE can achieve within the available staffing resources of the ICE FOIA Office and while still ensuring fairness to other requesters and commitments in other FOIA litigation.

26. Due to the FOIA Office's limited resources, requiring ICE to process significantly more pages per month in this case, would divert resources to Plaintiff's FOIA requests at the expense of other FOIA requesters. The negative effects on those other FOIA requesters could only be mitigated by assigning additional staff to those requests, but ICE currently lacks the resources to do so.

I declare under penalty of perjury of the laws of the United States of America that the forgoing is true and correct to the best of my knowledge and belief.

Executed on October 31, 2022, at Washington, D.C.

_____
Lynnea Schurkamp