**GRANT & EISENHOFER P.A.**
Irene R. Lax (*Pro Hac Vice*)
485 Lexington Ave., 29th Floor
New York, NY 10017
Tel: (646) 722-8512
ilax@gelaw.com

**AL OTRO LADO, INC.**
Karlyn Kurichety (Cal Bar No. 313265)
634 S Spring St, Suite 908
Los Angeles, CA 90014
Tel: (253) 882-8071
karlyn@alotrolado.org

*Attorneys for Plaintiffs*

[additional counsel on signature page]

**UNITED STATES DISTRICT COURT**
**CENTRAL DISTRICT OF CALIFORNIA**
**WESTERN DIVISION**

| | |
|---|---|
| TAMMY JANE OWEN as the Administrator of the Estate of Benjamin James Owen; AL OTRO LADO, INC.; and MIRAN MIRIMANIAN,<br><br>Plaintiffs,<br><br>v.<br><br>U.S. IMMIGRATION AND CUSTOMS ENFORCEMENT; and U.S. DEPARTMENT OF HOMELAND SECURITY – OFFICE FOR CIVIL RIGHTS AND CIVIL LIBERTIES,<br><br>Defendants. | Case 2:22-cv-00550-DSF-AFM<br><br>**PLAINTIFFS' REPLY BRIEF IN SUPPORT OF MOTION FOR PRELIMINARY INJUNCTION AND PARTIAL JUDGMENT ON THE PLEADINGS** |

**REPLY BRIEF IN SUPPORT OF MOTION FOR PRELIMINARY INJUNCTION AND PARTIAL JUDGMENT ON THE PLEADINGS**

# TABLE OF CONTENTS

**Page**

TABLE OF AUTHORITIES ..................................................................................................... ii

A. DEFENDANTS CHANGE IN POSITION REGARDING THE GOURGEN FOIA REQUEST DEMONSTRATES THAT THIS ISSUE IS NOT MOOT .......................................................... 1

B. THE COURT SHOULD ENFORCE FOIA'S "PROMPTLY AVAILABLE" REQUIREMENT AND ORDER DECLARATORY AND INJUNCTIVE RELIEF ................................................. 2

C. ENJOINING DEFENDANTS' UNLAWFUL WITHHOLDING IS APPROPRIATE ...................... 6

D. PLAINTIFFS WILL SUFFER IRREPARABLE HARM ABSENT A PRELIMINARY INJUNCTION .................................................................................................................. 7

E. DEFENDANTS' DECLARANTS MISLEAD THE COURT ON THE FOIA REQUEST BACKLOG AND THEIR ALLEGED UNDUE BURDEN ...................................................... 10

F. CONCLUSION ............................................................................................................... 12

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Am. Immigration Council v. U.S. Dep't of Homeland Sec.*,
  470 F. Supp. 3d 32 (D.D.C. 2020) ............................................................................ 6

*Brennan Ctr. for Justice v. Dep't of Commerce*,
  498 F. Supp. 3d 87 (D.D.C. 2020) ............................................................................ 6

*Citizens for Resp. and Ethics in Washington v. Fed. Election Commn.*,
  711 F.3d 180 (D.C. Cir. 2013) .................................................................................. 3

*City of Hous. v. Dep't of Hous. & Urban Dev.*,
  24 F.3d 1421 (D.C. Cir. 1994) .................................................................................. 5

*Ctr. for Pub. Integrity v. U.S. Dep't of Defense*,
  411 F. Supp. 3d 5 (D.D.C. 2019) ......................................................................... 3, 9

*Edmonds Inst. v. U.S. Dep't of Interior*,
  383 F. Supp. 2d 105 (D.D.C. 2005) .......................................................................... 3

*Electronic Priv. Info. v. Department of Justice*,
  416 F. Supp. 2d 30 (D.D.C 2006) ......................................................................... 6, 7

*Moore v. U.S. Immigration and Customs Enforcement*,
  513 F. Supp. 3d 742 (W.D. Tex. 2021) ................................................................... 12

*Nightingale v. U.S. Citizenship & Immigration Servs.*,
  2020 WL 7640547 (N.D. Cal. Dec. 17, 2020) ....................................................... 12

*Open Soc'y Justice Initiative v. CIA*,
  399 F. Supp. 3d 161 (S.D.N.Y. 2019) ...................................................................... 3

*Payne Enters., Inc. v. United States*,
  837 F.2d 486 (D.C. Cir. 1988) ........................................................................... 6, 10

*Pereira v. Sessions*,
  138 S.Ct. 2105 (U.S.,2018) ....................................................................................... 5

*Protect Democracy Project, Inc. v. U.S. Dep't of Defense*,
  263 F. Supp. 3d 293 (D.D.C. 2017) .......................................................................... 9

*United States v. W.T. Grant Co.*,
  345 U.S. 629 (1953) .................................................................................................. 2

*Washington Post v. Dep't of Homeland Sec.*,
    459 F. Supp. 2d 61 (D.D.C. 2006).................................................................................9

**Statutes**

5 U.S.C. § 552(a)(6)(C)(i) ..............................................................................................2, 5

5 U.S.C. § 552(a)(2) ............................................................................................................4

5 U.S.C. § 552(a)(2)(1)........................................................................................................4

5 U.S.C. § 552(a)(2)(B-C)...................................................................................................4

5 U.S.C. § 552(a)(2)(E) .......................................................................................................5

5 U.S.C. § 552(a)(3)(A)...................................................................................................2, 3

5 U.S.C. § 552(a)(4)(B) ..................................................................................................2, 3

5 U.S.C. § 552(a)(6)(A) ..................................................................................................2, 3

5 U.S.C. § 552(a)(6)(A)(i)...................................................................................................5

5 U.S.C. § 552(a)(6)(C) ......................................................................................................2

5 U.S.C. § 552(a)(7)(B)(ii) .................................................................................................1

Pub. L. No. 106-554 § 515(a) .............................................................................................8

Rule 26(f)............................................................................................................................4

### A. DEFENDANTS CHANGE IN POSITION REGARDING THE GOURGEN FOIA REQUEST DEMONSTRATES THAT THIS ISSUE IS NOT MOOT

Defendants did not waive their exhaustion defense to Plaintiff Miran[1] until he filed the instant motion. Although Defendants are no longer arguing that Plaintiff Miran failed to exhaust his administrative remedies prior to filing this action (*see* Defendants' Response in Opposition (ECF Doc. 76, the "Response" or "Resp.") at p. 6), Defendants have not explicitly conceded that the voluntary production of responsive records is pursuant to FOIA, such that Plaintiff Miran will have all rights he is entitled to, including the ability to challenge the adequacy of Defendants' search and any claimed exemptions at summary judgment. Moreover, the text of FOIA requires ICE to provide an estimated date for the completion of its document production, *see* 5 U.S.C. § 552(a)(7)(B)(ii), which ICE has not provided.

As explained, ICE originally stated that it could not produce documents responsive to the Gourgen FOIA Request due to an open investigation. Memo at p. 13. However, Defendants completed the Gourgen death investigation on June 24, 2018, and continued to withhold documents. *Id*. Defendants, through their Declarant Lynnea Schurkamp, now state that the "ICE FOIA Office has elected *in its own discretion* to process and voluntarily release all non-exempt, responsive records." *See* Decl. of Schurkamp, Doc. 76-1, ¶ 14.

Despite Defendants' discretion, the "voluntary cessation of a challenged practice does not deprive a federal court of its power to determine the legality of the practice." *Friends of the Earth, Inc. v. Laidlaw Envtl. Servs*., Inc., 528 U.S. 167, 189 (2000) (quoting *City of Mesquite v. Aladdin's Castle, Inc*., 455 U.S. 283, 289 (1982)). "If it did, the courts would be compelled to leave the defendant free to return to his old ways." *Id*. (quoting *City of Mesquite*, 455 U.S. at 289) (alterations omitted). The Supreme Court has established a "stringent" standard for when a defendant may moot a claim through its voluntary conduct. *Id*. The party asserting mootness bears the "heavy burden" of establishing that it is "absolutely clear that the allegedly wrongful behavior

---

[1] Capitalized terms used herein but not otherwise defined herein will have the same meaning as ascribed to those terms in Plaintiffs' Memorandum of Law in Support of Plaintiffs' Motion for Preliminary Injunction and Partial Judgment on the Pleadings (ECF Doc. 74, hereinafter the "Memorandum" or "Memo.").

1

**REPLY BRIEF IN SUPPORT OF MOTION FOR PRELIMINARY INJUNCTION AND PARTIAL JUDGMENT ON THE PLEADINGS**

could not reasonably be expected to recur." *Id*. (quoting *United States v. Concentrated Phosphate Export Ass'n*, 393 U.S. 199, 203 (1968)). The policy behind this exception is to resolve the "dispute over the legality of the challenged practices[,] [which] . . . together with a public interest in having the legality of the practices settled, militates against a mootness conclusion." *United States v. W.T. Grant Co*., 345 U.S. 629, 632 (1953) (citations omitted).

In this case, Defendants have failed to carry their "heavy burden" that the voluntary cessation exception does not apply. In fact, here, Defendants provide no support for their assertion that mootness applies at all. *See* Resp. at p. 6 (supplying a scant two paragraphs and citing no cases in support of its claim). Defendants, despite having withheld documents from Plaintiff Miran, now seek for him to wait an undefined amount of time for ICE to process the remaining 1,778 pages. The fact remains that Defendants failed to make responsive records to the Gourgen FOIA request "promptly available" as required by FOIA. For reasons further detailed below, Defendants should not be allowed to produce documents at their leisure.

### B. THE COURT SHOULD ENFORCE FOIA'S "PROMPTLY AVAILABLE" REQUIREMENT AND ORDER DECLARATORY AND INJUNCTIVE RELIEF

Defendants' Response makes no attempt to address the statutory power of this Court to order the timely production of documents. Instead, Defendants attempt to distract the Court by conflating the baseline FOIA standard that records be made "promptly available" with two statutory provisions: (1) the 20-day period to decide whether to comply with a FOIA request (5 U.S.C. § 552(a)(6)(A)) or (2) the exception under exceptional circumstances (5 U.S.C. § 552(a)(6)(C)). But these are each separate provisions under FOIA that relate – but do not equate – to the "promptly available" baseline standard for FOIA production. FOIA provides that government agencies must make records responsive to a FOIA request "promptly available." 5 U.S.C. §§ 552(a)(3)(A), (a)(6)(C)(i). This Court has the power to order the production of documents and oversee compliance with FOIA. *See* 5 U.S.C. § 552(a)(4)(B). When agencies refuse to produce documents in a timely manner, FOIA provides a "clear and simple remedy"– an order to compel production.

2

**REPLY BRIEF IN SUPPORT OF MOTION FOR PRELIMINARY INJUNCTION
AND PARTIAL JUDGMENT ON THE PLEADINGS**

*Edmonds Inst. v. U.S. Dep't of Interior*, 383 F. Supp. 2d 105, 111 (D.D.C. 2005) (citing 5 U.S.C. § 522(a)(4)(B)).

Defendants attacks on Plaintiffs' pleading are thus merely a distraction. The Complaint properly supports a cause of action under 5 U.S.C. § 552 (a)(4)(B), which instructs the Court to order the production of documents when an agency has improperly withheld agency records. *Id.* Defendants did not respond to Plaintiffs' FOIA requests within the statutory period and did not make documents promptly available, as required by statute. 5 U.S.C. § 552 (a)(6)(A). Indeed the Complaint alleges that Defendants' "failure to make reasonable and timely efforts to search for and release agency records responsive constitutes an unlawful withholding under the [FOIA]," *see* Doc 58, ¶¶ 128, 137 and 144, and Defendants "failure to initiate an adequate search and substantively respond to [Plaintiffs'] FOIA Requests within the timeframe allowed by law violates FOIA." *Id.* ¶¶ 129, 145. Furthermore, Plaintiffs' Request for Relief pleads for the Court to "[d]eclare that Defendants have violated the promptly available provision of [] FOIA and enter judgment in Plaintiffs' favor on that Count." *Id.* a p. 25, ¶ 5.

As Defendants note, the statute requires that records be produced "promptly," or "as soon as practicable." 5 U.S.C. § 552(a)(3)(A); (6)(E)(iii). Court have previously interpreted "prompt" release of records, under 5 U.S.C. § 552(a)(3)(A), to encompass a concrete delineation, noting that this provision requires agencies to produce responsive records within "days or weeks, not months or years." *Citizens for Resp. and Ethics in Washington v. Fed. Election Commn.*, 711 F.3d 180, 188 (D.C. Cir. 2013). To ensure that agencies are meeting this burden, courts have equitable power to order accelerated production schedules as well as production by dates certain. *See, e.g., Ctr. for Pub. Integrity v. U.S. Dep't of Defense*, 411 F. Supp. 3d 5, 15 (D.D.C. 2019) (ordering processing of at least 106 pages within twelve business days); *Open Soc'y Justice Initiative v. CIA*, 399 F. Supp. 3d 161, 168-69 (S.D.N.Y. 2019) (ordering document processing at a rate of 5,000 pages per month).

3
**REPLY BRIEF IN SUPPORT OF MOTION FOR PRELIMINARY INJUNCTION
AND PARTIAL JUDGMENT ON THE PLEADINGS**

But here, "as soon as practicable" does not seem to bear much weight, where Defendants offer their typical production schedule limited to 500 pages per month to begin and conclude at an undefined period of time. Resp. at p. 19; Decl. of Schurkamp, ¶ 4 ("ICE's normal processing refer cases in litigation is 500 pages per month."). Unable to satisfy the statutory "promptly available" standard, Defendants have pled themselves out of that entitlement through their statements to the Court by admitting their pace of production is a standard policy aimed at being equitable to requesters and conserving resources. Setting aside any Open America issues,[2] Defendants may not use a 500 page per month policy against Plaintiffs because one is not published in the Federal Register, as required by 5 U.S.C. § 552(a)(2)(1) or publishing it online, as required by 5 U.S.C. § 552(a)(2), or having given Plaintiffs timely and actual notice of said policy, as required by both subsections. *See* 5 U.S.C. § 552(a)(2)(B-C) (no specification of pages per month limit for document productions responsive to FOIA requests).

In fact, ICE has not published anything regarding its 500 pages per month policy. Timely notice of any said policy would have come when Plaintiffs filed the instant action—not when Plaintiffs pushed Defendants to each produce (not simply process) at least 1,000 pages per month when preparing the Joint Rule 26(f) Report. Doc. 69. Actual notice would have included a copy of the 500 page per month policy. Had Plaintiffs known of this policy, they may have filed separate lawsuits so as not to have their FOIA Requests in competition for ICE's limited releases in a single litigation. Perhaps the reason Defendants did not present Plaintiffs with timely and actual notice of any 500 page per month policy is because the policy does not exist.[3] ICE now asks the Court to excuse its productions from the FOIA's promptly available requirement not based on exceptional circumstances and due diligence, but on a self-imposed 500 pages per month limit.

---

[2] Despite agreeing that Plaintiffs are entitled to processing of their FOIA requests, Defendants appear to rely on the lack of a specified timeframe for production of records in the FOIA to set an open-ended timeframe for production. Resp. at p. 17-18.

[3] On January 29, 2022, ICE issued a final response to ICE FOIA Case Number 2020-ICFO-18553 stating "there is no policy that limits or requires the agency to request/process 500 pages per month in response to FOIA litigation productions." *See* https://www.muckrock.com/foi/united-states-of-america-10/ice-500-ppm-foia-policy-immigration-and-customs-enforcement-83993/ (accessed, November 20, 2022).

4
**REPLY BRIEF IN SUPPORT OF MOTION FOR PRELIMINARY INJUNCTION
AND PARTIAL JUDGMENT ON THE PLEADINGS**

Congress expressly forbid this outcome in FOIA. 5 U.S.C. § 552(a)(2)(E) makes clear that ICE is required to make available or publish any such policy and ensure that requester has "actual and timely notice of the terms thereof." Moreover, the FOIA also provides when this Court can retain jurisdiction of a FOIA suit and allow an agency a period of time to search for and review records before ruling: "If the Government can show exceptional circumstances exist and that the agency is exercising due diligence in responding to the request, the court may retain jurisdiction and allow the agency additional time to complete its review of the records." 5 U.S.C. § 552(a)(6)(C)(i). Here, although ICE seeks "additional time to complete its review of records[,]" ICE has not and cannot meet this burden as the agency has shown neither exceptional circumstances nor due diligence in responding to the FOIA requests. Without providing support for these two factors (exceptional circumstances *and* due diligence) to obtain judicially sanctioned "additional time," Defendants have no statutory safe harbor against an order from this Court requiring a promptly available production. Once again, the government invites this court to treat this statutory requirement—a burden Congress elected to impose on the government before allowing it additional time from a court before injunction—as inoperative surplusage. *Pereira v. Sessions,* 138 S.Ct. 2105, 2116 (U.S.,2018) (rejecting the Government's arguments injecting "ambiguity into the statute").

Finally, "Defendants **do not deny** that they did not meet the 20-day deadline set forth in 5 U.S.C. § 552(a)(6)(A)(i) for initial responses to Plaintiffs' requests." Resp. at p. 8 (emphasis added). That said, the declaratory relief sought by Plaintiffs is not for this past conduct. Rather, declaratory and injunctive relief are appropriate where, as here, a "plaintiff's allegations go not only to a specific agency action, but to an ongoing policy as well, and the plaintiff has standing to challenge the future implementation of that policy." *City of Hous. v. Dep't of Hous. & Urban Dev*., 24 F.3d 1421, 1430 (D.C. Cir. 1994). As discussed in the Plaintiffs Memorandum (*see* Memo at p. 7-10), Defendants' practice of unlawful delay continues unabated, and Defendants have failed "to confirm how [they] intend[] in the future to conform to FOIA's mandate to make requested non-

5

**REPLY BRIEF IN SUPPORT OF MOTION FOR PRELIMINARY INJUNCTION
AND PARTIAL JUDGMENT ON THE PLEADINGS**

exempt records 'promptly available.'" *See Judicial Watch, Inc. v. United States Department of Homeland Security*, 895 F.3d 770, 784 (D.C. Cir. 2018).

### C. ENJOINING DEFENDANTS' UNLAWFUL WITHHOLDING IS APPROPRIATE

Plaintiffs seek the immediate production of responsive records based on a multitude of factors which meet the required showing for injunctive relief. Defendants cannot shift the onus of delay onto Plaintiffs, *see* Resp. at 12, as the burden to comply with the FOIA lies with Defendants and especially where Defendants' own policies may be contributing to the growth of their workload. Defendants note an increase in FOIA litigation (*see* Schurkamp Decl. at ¶ 10), yet this increase may be tied to unprecedented, harsh immigration policies issued by these same agencies.[4]

Contrary to Defendants' contention, courts routinely consider injunctive relief in FOIA actions, and where warranted, grant such relief. *See Electronic Privacy Information Center*, 416 F.Supp.2d at 35 (citing *ACLU v. Dep't of Defense*, 339 F.Supp.2d 501, 503 (S.D.N.Y.2004). In addition, courts routinely recognize that ordering accelerated processing advances the public's interest in obtaining the requested records, which interest outweighs possible harm to other requesters. *Am. Immigration Council v. U.S. Dep't of Homeland Sec.*, 470 F. Supp. 3d 32, 39 (D.D.C. 2020). The Supreme Court has observed that a public informed about its government's actions is "a structural necessity in a real democracy." *Brennan Ctr. for Justice v. Dep't of Commerce*, 498 F. Supp. 3d 87, 101 (D.D.C. 2020) (citing *Nat'l Archives & Records Admin. V. Favish*, 541 U.S. 157, 172 (2004)). And timely awareness is necessary because "stale information is of little value." *Payne Enters., Inc. v. United States*, 837 F.2d 486, 494 (D.C. Cir. 1988). Granting a preliminary injunction in this matter would thus advance the purposes of the FOIA and uphold the public interest by holding Defendants accountable for their violations of their statutory obligations.

---

[4] Christine Mehta, Annual Report: FOIA Lawsuits Reach Record Highs in FY 2018, The FOIA Project (Nov. 12, 2018), http://foiaproject.org/2018/11/12/annual-report-foia-lawsuits-reach-record-highs-in-fy-2018/ (noting an increase in FOIA lawsuits against DHS agencies in light of the current administration's announcement of "controversial policies on a regular basis").

6
**REPLY BRIEF IN SUPPORT OF MOTION FOR PRELIMINARY INJUNCTION AND PARTIAL JUDGMENT ON THE PLEADINGS**

### D. PLAINTIFFS WILL SUFFER IRREPARABLE HARM ABSENT A PRELIMINARY INJUNCTION

Defendants contend that Plaintiffs Tammy and Miran's claims of irreparable harm "rest[] on the speculation about the content of the [un]released records" and that "Plaintiffs specify no fast-approaching event or deadline by which they need particular records." Resp. at pp. 14, 15. Defendants ignore that Tammy and Miran, in addition to wanting to inform the public about patterns in the government's confinement of detainees, are seeking records related to the in custody deaths of their own loved ones. While ICE routinely claims in the wake of in custody deaths that its detention facilities provide 24/7 medical care compliant with Performance-Based National Detention Standards ("PBNDS"), in 13 of 13 Mortality Reviews recently obtained and published by Plaintiff AOL's #Detention Kills Transparency Initiative, medical reviewers found violations of PBNDS standards.[5] Furthermore, the Court should take judicial notice of the fact that ICE no longer reports detainee deaths or publishes Detainee Death Reviews (DDR) on its FOIA document library.[6] Such reviews are investigations by ICE's Enforcement and Removal Operations (ERO) to determine whether the detainee received appropriate health services in accordance with the PBNDS.

Courts have recognized the delay in receiving FOIA responses as a specific harm meant to be remedied. *See Electronic Priv. Info. v. Department of Justice*, 416 F. Supp. 2d 30, 40-41 (D.D.C 2006) ("stale information is of little value . . ." and "the loss of that 'value' is a cognizable harm."). At times, such as here, injunctions are necessary to give effect to the text of the FOIA and the purpose of providing timely information. If Plaintiffs Tammy and Miran are to simply go through the litigation process without injunctive relief, the issue of timeliness remains unresolved as litigation is rarely quick. The court must not hesitate to use its injunctive power in order to enforce the statutory rights of requesters to timely determinations and prompt release of records.

Defendants delay in supplying records irreparably harms Tammy and Miran who want to speak out about the in custody deaths of their loved ones. Tammy and Miran want to inform the public about what happened to their loved ones that led each to die while detained by the U.S.

---

[5] https://detentionkills.substack.com/p/from-the-moment-individuals-arrive (accessed, November 20, 2022)
[6] https://www.ice.gov/foia/library (accessed November 20, 2022)

7
**REPLY BRIEF IN SUPPORT OF MOTION FOR PRELIMINARY INJUNCTION AND PARTIAL JUDGMENT ON THE PLEADINGS**

government and can only appropriately inform themselves, their family, and the public about those deaths by obtaining the critical records that Defendants here withhold. Every day Tammy and Miran are without these records is another day they are being silenced.

Ben Owen left behind a wife, Plaintiff Tammy, and a daughter, Gia. As explained by Tammy, the "daily, irreparable harm Gia and [her] and Ben's family in the United Kingdom suffer as a result of the federal government's refusal to provide [her] family prompt, clear answers to what happened in the days leading up to Ben's death." *See* Decl. of Tammy Owen, attached is Exhibit A, ¶ 5. Tammy declares that "Ben's death was devastating," but "the pain of losing Ben is the lack of clear, transparent, and responsive explanation for exactly how he died." *Id.* ¶ 26.

Similarly, Plaintiff Miran lost his father Gourgen Mirimanian. Plaintiff Miran also explains that the irreparable harm his family is "still experiencing as a result of the seemingly unending delays in providing all the records [they] need to learn the truth for [themselves]" concerning the Gourgen FOIA Request. *See* Decl. of Miran Mirimanian, attached is Exhibit B, ¶ 4. Miran states it is an "insult to [his] family, [his] father's memory, and the public to be told by ICE that it's just too busy to show [] what happened to Gourgen Mirimanian in the agency's custody." *Id.* ¶ 17. Miran explains that the wait for answers has affected the way he and his family have mourned, grieved and their ability to move-on. *Id.* ¶ 19. Furthermore, both Tammy and Miran raise inconsistencies with the agencies' public statements regarding Ben and Gourgen's deaths, and the materially false and misleading information that the agencies have disseminated. *See* Ex. A., ¶ 12 – 17; Ex. B, ¶¶ 7 – 16. Such inaccuracies are another reason to accelerate full production—the public interest weighs in favor of accurate communications from ICE.[7]

Additionally, Defendants rebut Plaintiff AOL's advocacy efforts arguing that "there is no apparent event on the horizon which would diminish the value of records Plaintiff AOL has requested." Resp. at p. 13. The urgent event here is the rise in ICE's detainee population, which

---

[7] The IQA requires that agencies, including ICE, to adopt policies and procedures "for ensuring and maximizing the quality, objectivity, utility and integrity of information (including statistical information) disseminated by Federal agencies." See Pub. L. No. 106-554 § 515(a).

8

**REPLY BRIEF IN SUPPORT OF MOTION FOR PRELIMINARY INJUNCTION
AND PARTIAL JUDGMENT ON THE PLEADINGS**

has more than doubled during the Biden presidency despite campaign promises.[8] Defendants fail to appreciate the current public debate regarding the conditions of ICE immigration detainers and that AOL, armed with the information it is currently seeking, is better positioned to join that conversation, inform the public and effect change.[9]

Courts have routinely found that organizational plaintiffs seeking injunctive relief in FOIA matters face irreparable injury. *See, e.g.*, *Ctr. for Pub. Integrity*, 411 F. Supp. 3d at 15 (Plaintiff['s] primary value of the information lies in its ability to inform the public[.]"); *Protect Democracy Project, Inc. v. U.S. Dep't of Defense*, 263 F. Supp. 3d 293, 301 (D.D.C. 2017) ("Ongoing public and congressional debates about issues of vital national importance cannot be restarted or wound back."). Courts have further recognized that a party may show irreparable harm as an entity whose core work advancing transparency and accountability aligns with the very purpose of FOIA. *See, e.g.*, *Washington Post v. Dep't of Homeland Sec.*, 459 F. Supp. 2d 61, 74–75 (D.D.C. 2006).

Plaintiff AOL has set forth detailed information as to how, in the absence of injunctive relief, the organization will be hindered in its ability to effectively "disseminate[] information to the public" in furtherance of "AOL's missionary work". *See* Doc. 74-8, Decl. of Jeremy Jong, ¶¶ 6, 7, 8 and 24. The organization has also articulated how, without timely access to records requested,

---

[8] https://apnews.com/article/joe-biden-health-immigration-coronavirus-pandemic-4d7427ff67d586a77487b7efec58e74d (accessed November 20, 2022); https://www.nytimes.com/2022/03/25/us/politics/biden-immigration-detention-beds.html (accessed November 20, 2022)

[9] https://www.ice.gov/news/releases/nicaraguan-man-ice-custody-passes-away-colorado-hospital (accessed, November 20, 22) (On October 14, 2022, ICE reported in-custody death of Melvin Ariel Calero-Mendoza, who was detained at the Aurora Contract Detention Facility); https://www.markey.senate.gov/news/press-releases/senators-request-for-immediate-action-from-ice-to-address-inhumane-unsafe-conditions-for-migrants-at-new-mexico-detention-facility (accessed, November 19, 2022) (On October 22, 2022, Senators Dianne Feinstein (D-Calif.), Alex Padilla (D-Calif.), Ben Ray Luján (D-N.M.), Edward J. Markey (D-Mass.), Martin Heinrich (D-N.M.) and Elizabeth Warren (D-Mass.) issued a an open-letter to ICE Acting Director Tae Johnson to remedy the ongoing unsafe, inhumane conditions at the Torrance County Detention Facility which led to the death of 23-year-old detainee Kelsey Vial on August 29, 2022); https://news.bloomberglaw.com/daily-labor-report/detained-immigrants-faced-invasive-medical-care-probe-finds (accessed, November 19, 2022) (On November 15, 2022, a Senate Subcommittee released a report on conditions at the Irwin County Detention Center, including its finding that detainee immigrants faced invasive medical care); https://theintercept.com/2022/11/15/force-feeding-video-ice/ (accessed, November 19, 2022) (Also on November 15, 2022, The Intercept released video of ICE force-feeing a hunger striker at the El Paso detention center).

AOL is unable to "inform the communities [its] critical information . . . including deaths of individuals in the government custody." *Id*. at ¶ 25. It is clear that, as the D.C. Circuit has said, "stale information is of little value," *Payne Enterprises, Inc. v. U.S*., 837 F.2d 486, 494 (C.A.D.C.,1988), especially when AOL seeks to effectively influence public opinion and policymakers' actions during a current debate.

### E. DEFENDANTS' DECLARANTS MISLEAD THE COURT ON THE FOIA REQUEST BACKLOG AND THEIR ALLEGED UNDUE BURDEN

Defendants argue that both the public interest and Defendants would be harmed by an injunction requiring processing and disclosure. Resp. at p. 20. Defendants point to their own FOIA backlog as justification to an extended production schedule but their presentation of the agencies' workload is misleading. First, ICE's Declarant Shurkamp states that in "FY 2020, the number of FOIA requests the ICE FOIA Office handled drastically increased to over 100,000 from approximately 64,000 in 2019." Doc. 76-1, ¶ 5. Shurkamp further states that "[s]ince FY 2020, [the] number has continued to increase, with the ICE FOIA handling approximately 105,000 requests in FY 2021 . . . " *Id.* The self-serving information provided by ICE's Declarant conflicts with the Department of Homeland Security's Fiscal Year 2022 FOIA Report ("2022 DHS FOIA Report").[10] As the table below shows, using information from the 2022 DHS FOIA Report, ICE received less than half of the number of new requests in FY 2021 than it received in FY 2020. Prior to the FY 2020 spike, the number of requests received during FY 2019 and FY 2018 were moderate at 64,231 and 70,267 respectively. ICE processed 8,149 more requests than it received during FY 2021.

| Requests Received | | Requests Processed | |
| --- | --- | --- | --- |
| During FY 2021 | 39,716 | During FY 2021 | 47,865 |
| During FY 2020 | 90,304 | During FY 2020 | 80,275 |
| During FY 2019 | 64,231 | During FY 2019 | 66,029 |
| During FY 2018 | 70,267 | During FY 2018 | 67,365 |

---

[10] https://www.dhs.gov/sites/default/files/2022-03/22_0314_privacy_2022_dhs_chief_foia_officer_report_508.pdf (accessed, November 20, 2022)

10

**REPLY BRIEF IN SUPPORT OF MOTION FOR PRELIMINARY INJUNCTION AND PARTIAL JUDGMENT ON THE PLEADINGS**

1  Shurkamp further states that "[b]etween FY 2017 and FY 2020, the ICE FOIA Office experienced
2  approximately a 240% increase in FOIA requests." *Id.* ¶ 6.  However, she fails to mention ICE's
3  declining requests, reduced backlog, and declining litigation from FY 2019 to FY 2021.  During FY
4  2021, the ICE FOIA Office successfully reduced its FOIA backlog by more than 91%, from 40,424
5  cases to less than 3,600 cases at the end of the fiscal year.[11]  The ICE FOIA Office reviewed more
6  than 1.5 million pages of ICE records during FY 2021.[12]  At the end of FY 2021, Defendant had
7  only 4,212 FOIA requests pending,[13] of which approximately 3,958 were considered backlogged.[14]
8  By comparison, there were 5,308 backlogged requests at the end of FY 2020.[15]  Schurkamp then
9  points to staff levels as a limitation with which the ICE FOIA Office contends.  Doc. 76-1, ¶ 10.
10 However, Defendants have a proven track record of redistributing resources, including staff, to
11 effectively reduce the backlog, with the support of the DHS Privacy Office,[16] and the ICE FOIA
12 Office and DHS Privacy acknowledge that this backlog presents a "considerable litigation risk."[17]

13       Despite the foreseeability of the need for additional resources, the ICE FOIA Office's
14 overall workload and related litigation, the agency has not demonstrated to Congress a need for
15 additional resources.  Defendant ICE's budget requests for "mission support," which includes the

---

[11] *ICE Annual Report Fiscal Year 2021* at 27 (Mar. 11, 2022), https://www.ice.gov/doclib/eoy/iceAnnualReportFY2021.pdf (accessed, November 20, 2022).
[12] *Id.*
[13] *DHS FY 2022 FOIA Report*, *supra* note 1, at 15.
[14] *Id.* at 30.
[15] *DHS FY 2020 FOIA Report*, *supra* note 1, at 28.
[16] DHS, *2022 Chief Freedom of Information Act Officer Report* at 30 (Mar. 2022), https://www.dhs.gov/sites/default/files/2022-03/22_0314_privacy_2022_dhs_chief_foia_officer_report_508.pdf [hereinafter *2022 Chief FOIA Officer Report*]; DHS., *2021 Chief Freedom of Information Act Officer Report* at 13 (May 2021), https://www.dhs.gov/sites/default/files/publications/dhs_2021_chief_foia_officer_report.pdf; *see also 2022 Chief FOIA Officer Report*, *supra*, at 30 (stating that the ICE FOIA Office "is actively recruiting and staffing up" to fill vacancies); *id.* at 16 ("The ICE FOIA Office filled five supervisory positions last fiscal year then shifted its focus to hiring staff positions. ICE began to explore the option of contractors and details due to increasing FOIA demands and staff departures.").
[17] DHS., Ofc. of the Secretary & Exec. Mgmt., *Budget Overview: FY 2022 Congressional Justification* at 15, https://www.dhs.gov/sites/default/files/publications/office_of_the_secretary_and_executive_management_0.pdf (accessed, November 20, 2022); *see also* U.S. Gov't Accountability Ofc., *FOIA: DHS Needs to Reduce Backlogged Requests and Eliminate Duplicate Processing*, GAO-20-209T (Oct. 17, 2019), https://www.gao.gov/products/gao-20-209t (accessed, November 20, 2022).

11
**REPLY BRIEF IN SUPPORT OF MOTION FOR PRELIMINARY INJUNCTION AND PARTIAL JUDGMENT ON THE PLEADINGS**

FOIA Office, have remained relatively steady in recent years, with 2,458 positions requested for FY 2021, 2,566 positions requested for FY 2020, and 2,583 positions requested for FY 2019.[18] Notably, for FY 2023 only 2,413 positions have been requested, 45 fewer than were requested in FY 2022.[19] Defendant ICE represents that it does not have the staffing to respond to requests in a timely fashion based on an increased workload while, at the same time, reducing its own staffing and choosing not to request congressional budgetary increases for FOIA staffing.[20] *See Nightingale v. U.S. Citizenship & Immigration Servs.*, 2020 WL 7640547, at *10 (N.D. Cal. Dec. 17, 2020); *see also Moore v. U.S. Immigration and Customs Enforcement*, 513 F. Supp. 3d 742, 747 (W.D. Tex. 2021) (examining a DHS Open America stay declaration in light of DHS Congressional Budget Justifications). Overall, Congress placed the burden on agencies to "improve their records management systems to enable prompt responses without routine judicial involvement." *Judicial Watch*, 895 F.3d at 783. Defendants' assertions that staffing is low and volume is high, are predictable issues for Defendants to contend with, not a reason to deny Plaintiffs' injunctive relief.

### F. CONCLUSION

WHEREFORE, for all of the foregoing reasons, the Court should grant Plaintiffs' Motion for Preliminary Injunction and Partial Judgment on the Pleadings in its entirety, enjoin Defendants improper withholdings in violation of FOIA, declare that Defendants violated the mandatory timing requirements of FOIA, and grant such other and further relief as the Court deems appropriate.

---

[18] DHS, ICE, *Budget Overview: Fiscal Year 2023 Congressional Justification*, https://www.dhs.gov/sites/default/files/2022-03/U.S.%20Immigration%20and%20Customs%20Enforcement_Remediated.pdf (accessed, November 20, 2022) [hereinafter *ICE FY2023 Congressional Justification*]; DHS, ICE, *Budget Overview: Fiscal Year 2021 Congressional Justification*, https://www.dhs.gov/sites/default/files/publications/u.s._immigration_and_customs_enforcement_0.pdf (accessed, November 20, 2022); DHS, ICE, *Budget Overview: Fiscal Year 2020 Congressional Justification*, https://www.dhs.gov/sites/default/files/publications/19_0318_MGMT_CBJ-Office-Secretary-Executive-Management_0.pdf (accessed, November 20, 2022).

[19] *ICE FY2023 Congressional Justification*, *supra* note 14.

[20] *See id.* (not requesting additional staffing for FY 2023 in its Congressional budget request).

12
**REPLY BRIEF IN SUPPORT OF MOTION FOR PRELIMINARY INJUNCTION AND PARTIAL JUDGMENT ON THE PLEADINGS**

Respectfully submitted,

Dated:  November 21, 2022

By:   */s/ Irene R. Lax*
Irene R. Lax (*Pro Hac Vice*)
**GRANT & EISENHOFER P.A.**
485 Lexington Ave, 29th Floor
New York, NY 10017
Tel: (646) 722-8512
ilax@gelaw.com

Samuel Mukiibi (*pro hac vice*)
**GRANT & EISENHOFER P.A.**
123 Justison Street, 7th Floor
Wilmington, DE 19801
Tel: (302) 622-7086
smukiibi@gelaw.com

M. Elizabeth Graham (Cal. Bar No. 143085)
**GRANT & EISENHOFER P.A.**
201 Mission Street, Suite 1200
San Francisco, California 94105
Tel: 415-293-8210
Fax: 415-789-4367
egraham@gelaw.com

Karlyn Kurichety (Cal Bar No. 313265)
**AL OTRO LADO, INC.**
634 S Spring St, Suite 908
Los Angeles, CA 90014
Tel: (253) 882-807

13

**REPLY BRIEF IN SUPPORT OF MOTION FOR PRELIMINARY INJUNCTION AND PARTIAL JUDGMENT ON THE PLEADINGS**