James Bickford (N.Y. Bar No. 5163498)
United States Department of Justice
Civil Division, Federal Programs Branch
1100 L Street, NW
Washington, DC 20530
James.Bickford@usdoj.gov
Telephone: (202) 305-7632

Attorney for Defendants
U.S. IMMIGRATION AND
CUSTOMS ENFORCEMENT, et al.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA
WESTERN DIVISION

| | |
|---|---|
| TAMMY JANE OWEN, et al.,<br><br>Plaintiffs,<br><br>v.<br><br>U.S. IMMIGRATION AND CUSTOMS ENFORCEMENT, et al.,<br><br>Defendants. | Case No. 2:22-cv-00550-DSF-AJRx<br><br>**REPLY IN SUPPORT OF DEFENDANTS' MOTION FOR LEAVE TO PRESENT A REPRESENTATIVE SAMPLE OF THE CHALLENGED WITHHOLDINGS IN SUPPORT OF THEIR FORTHCOMING MOTION FOR SUMMARY JUDGMENT**<br><br>Before the Hon. Dale S. Fischer<br><br>Hearing Date: June 17, 2024<br><br>Hearing Time: 1:30 p.m.<br><br>Location: Courtroom 7D |

As Defendants explained in their motion, the volume of withholdings at issue in this Freedom of Information Act (FOIA) case—approximately 8,500 pages of records withheld in full or in part—is much too large for Defendants to individually explain, and this Court to individually review, the basis for each withholding in a *Vaughn* index. *See Lahr v. NTSB*, 569 F.3d 964, 989 (9th Cir. 2009) (discussing the use of *Vaughn* indices in FOIA cases). When such "a large number of documents are involved," then "[r]epresentative sampling is an appropriate procedure to test an agency's FOIA exemption

claims." *Bonner v. U.S. Dep't of State*, 928 F.2d 1148, 1151 (D.C. Cir. 1991); *see, e.g.*, *Chaverra v. ICE*, 2023 WL 6291642, at *1 (D.D.C. July 31, 2023) (granting leave to use representative sampling rather than "itemizing withholdings for nearly 7,000 pages"). Defendants have therefore requested leave to use a representative sampling procedure in support of their forthcoming motion for summary judgment.

Plaintiffs make several arguments against the use of representative sampling in this case. First, Plaintiffs suggest—somewhat paradoxically—that the volume of "withholdings and redactions of records in response to Plaintiffs' requests under the Freedom of Information Act" counsels against the use of a representative sample. Opp. at 2. The opposite is true: the large volume of withholdings necessitates a procedure that will allow "the court and the parties to reduce a voluminous FOIA exemption case to a manageable number of items that can be evaluated individually through a *Vaughn* index." *Bonner*, 928 F.2d at 1151.

Second, Plaintiffs suggest that "advancements in technology-assisted review" have reduced the "number of human labor hours" that must be devoted to the preparation of a *Vaughn* index, and obviated the need for representative sampling. Opp. at 2. That is simply not the case: *Vaughn* indices and their accompanying declarations are still written by agency officials, and reviewed by the Court and its staff. The consultant's report that plaintiffs cite in suggesting otherwise merely describes efforts by U.S. Customs and Immigration Enforcement (ICE) to achieve greater efficiency in responding to FOIA requests through the use of a modern document-review platform.[1]

---

[1] *See id.* at 2 n.1 (citing Deloitte, Perspectives on Freedom of Information Act (FOIA) Program Effectiveness at 8 (2019), *available at* https://www2.deloitte.com/content/dam/Deloitte/us/Documents/finance/us-perspectives-on-freedom-of-information-act-program-effectiveness.pdf).

Third, Plaintiffs suggest that the use of a representative sample would be inappropriate in light of the FOIA Improvement Act of 2016, Pub. L. No. 114-185, 130 Stat. 538. *See* Opp. at 3. That statute amended the FOIA to provide that otherwise exempt information may be withheld "only if the agency reasonably foresees that disclosure would harm an interest protected by an exemption" or "disclosure is prohibited by law." 5 U.S.C. § 552(a)(8)(A)(i). For most withholdings, the government must therefore make a showing of "foreseeable harm" in its *Vaughn* index, in addition to describing the material withheld and explaining why it is covered by a FOIA exemption. *E.g.*, *First Look Inst., Inc. v. U.S. Marine Corps*, 2022 WL 2784431, at *2 (C.D. Cal. June 13, 2022). This additional showing makes a *Vaughn* index more labor-intensive, not less so, and only heightens the need for a representative sampling procedure in cases where a large number of withholdings are at issue. *See Chaverra*, 2023 WL 6291642, at *2 (rejecting argument "that a sample *Vaughn* Index would violate the foreseeable-harm provision of the FOIA Improvement Act of 2016").

In sum, the use of a representative sample is plainly appropriate in a case where Plaintiffs challenge the full or partial withholding of approximately 8,500 pages of records, and should be authorized here.

Defendants' proposed method of representative sampling—a random selection of 2% of all pages withheld in whole or in part, with a procedure to ensure that all relevant FOIA Exemptions appear at least ten times in the *Vaughn* index—is equally appropriate. *See, e.g.*, *Meeropol v. Meese*, 790 F.2d 942, 958–59 (D.C. Cir. 1986) ("The district court examined 1% of the documents totally or substantially withheld. . . . We think the 1% sample sufficient, and in line with—indeed, larger than—samples previously approved.");

3

*Webster v. U.S. Dep't of Justice*, 2020 WL 1536303, at *1 (D.D.C. Mar. 31, 2020) (utilizing a 2% representative sample of 350 out of 16,803 pages).

Plaintiffs suggest that, rather than using a random sample, Defendants should employ "a sampling methodology which ensures that the . . . sample contains an approximate proportion of total invoked Exemptions" in line with the body of records as a whole. Opp. at 4. That is precisely what a random sample is designed to do. "[I]t is a fundamental statistical reality that one expects a properly-drawn random sample to be representative of the population from which it comes." *Chaverra*, 2023 WL 6291642, at *2 (quotation omitted). "Random sampling has therefore been widely approved of by courts as an acceptable means of achieving a representative sample." *Id.* (collecting cases). And here, as it has before, "ICE goes further to accommodate for the possibility that a random sample may by chance overlook some exemptions by adding in additional pages with any omitted exemptions after the initial sample is taken." *Id.* "This is sufficient to ensure a representative sample for purposes of the *Vaughn* Index." *Id.*

Next, Plaintiffs say that they "intend to affirmatively challenge in their own summary judgment motion specific withholdings and categories of withholdings." Opp. at 5. Some of what Plaintiffs describe appear to be challenges to the adequacy of the searches in this case, rather than withholdings of exempt material. Defendants are prepared to defend their searches at summary judgment. But to the extent that Plaintiffs are suggesting that they should be permitted to challenge withholdings outside the scope of Defendants' *Vaughn* index, their request should be denied. One purpose of a representative sampling procedure is to define the universe of withholdings that will be reviewed at summary judgment, so that Defendants can prepare an appropriate *Vaughn* index in

4

advance of the briefing. Allowing Plaintiffs to challenge withholdings outside the scope of the *Vaughn* index after briefing has begun would defeat that purpose.

Plaintiffs also allude to a list of approximately 75 pages of withholdings that they previously identified in correspondence between the parties. *Id.* Defendants are willing to add those pages to the 2% random sample, which would bring the proportion of fully or partially withheld pages in their *Vaughn* index closer to 3% of the total volume.

Finally, Plaintiffs "request that if the Court approves a sampling methodology, any successful challenge by Plaintiff nullifies *all* of Defendants' invocations of the challenged Exemption." *Id.* at 6. It is true that a "representative sampling procedure . . . allow[s] the results of the Court's analysis to "be extrapolated . . . 'with some confidence'" to the withholdings excluded from the sample. *Competitive Enterprise Institute v. EPA*, 2013 WL 12453279, at *1 (D.D.C. June 27, 2013) (quoting *Bonner*, 928 F.2d at 1151). But such extrapolation does not imply that *every* sampled withholding under a given Exemption must be valid in order for *any* material to be withheld under that Exemption. For example, if the Court reviewed twenty Exemption 5 withholdings, and found that nineteen were justified, that would not suggest that all material withheld under Exemption 5 should be released. The question of exactly how the Court's summary judgment analysis should be extrapolated is premature at this point, but the Court should not adopt Plaintiffs' proposal.

In conclusion, for the reasons set forth above and in Defendants' motion, this Court should grant leave for Defendants to use a *Vaughn* index in support of their forthcoming motion for summary judgment composed of 1) a random 2% representative sample of all pages withheld in full or in part, 2) the approximately 75 pages of withholdings identified

1 | by Plaintiffs in correspondence, and 3) any additional pages necessary to ensure that all
2 | relevant FOIA Exemptions appear in the *Vaughn* index at least ten times.

Respectfully submitted,

BRIAN M. BOYNTON
Principal Deputy Assistant Attorney General

ELIZABETH J. SHAPIRO
Deputy Director, Federal Programs Branch

*/s/ James Bickford*
JAMES BICKFORD
Trial Attorney (N.Y. Bar No. 5163498)
United States Department of Justice
Civil Division, Federal Programs Branch
1100 L Street, NW
Washington, DC 20530
James.Bickford@usdoj.gov
Telephone: (202) 305-7632
Facsimile: (202) 616-8470

*Counsel for Defendants*

Date: June 3, 2024