James Bickford (N.Y. Bar No. 5163498)
United States Department of Justice

Civil Division, Federal Programs Branch
1100 L Street, NW
Washington, DC 20530
James.Bickford@usdoj.gov
Telephone: (202) 305-7632

Attorney for Defendants
U.S. IMMIGRATION AND
CUSTOMS ENFORCEMENT, et al.

## UNITED STATES DISTRICT COURT
## CENTRAL DISTRICT OF CALIFORNIA
## WESTERN DIVISION

| | |
|---|---|
| TAMMY JANE OWEN, et al.,<br><br>Plaintiffs,<br><br>v.<br><br>U.S. IMMIGRATION AND CUSTOMS ENFORCEMENT, et al.,<br><br>Defendants. | Case No. 2:22-cv-00550-DSF-AJRx<br><br>**DEFENDANTS' MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF DEFENDANTS' MOTION FOR SUMMARY JUDGMENT**<br><br>**Hearing Date:** November 4, 2024<br>**Hearing Time:** 1:30 p.m.<br>**Courtroom:** 7D<br><br>**The Hon. Dale S. Fischer, presiding** |

## TABLE OF CONTENTS

**INTRODUCTION**................................................................................................1

**BACKGROUND** ...............................................................................................1

**LEGAL STANDARD** .......................................................................................3

**ARGUMENT** ....................................................................................................6

  A.  **CRCL and ICE conducted adequate searches**..........................................6

  B.  **The withheld material is exempt from release under FOIA.** ....................9

     i.  **Exemption 5**........................................................................................9

     ii. **Exemptions 6 and 7(C)** ....................................................................14

     iii. **Exemption 7(E)** ..............................................................................22

     iii. **Foreseeable Harm and Segregability**..............................................25

  **CONCLUSION** ...............................................................................................26

# TABLE OF AUTHORITIES

## Cases

*Anguiano v. ICE* ,
  No. 18-CV-01782-JSC, 2018 WL 5923451 (N.D. Cal. Nov. 13, 2018)..............24

*Ancient Coin Collectors Guild v. U.S. Dep't of State*,
  641 F.3d 504 (D.C. Cir. 2011) ...............................................................................10

*Animal Legal Def. Fund v. U.S. Food & Drug Admin.*,
  836 F.3d 987 (9th Cir. 2016)............................................................................. 4, 20

*Cameranesi v. Dep't of,*
  *Def.*, 856 F.3d 626 (9th Cir. 2017)............................................................... *passim*

*Church of Scientology Int'l v. IRS*,
  995 F.2d 916 (9th Cir. 1993).................................................................................16

*Church of Scientology of Cal. v. Dep't of the Army*,
  611 F.2d 738 (9th Cir. 1979)...................................................................................5

*CIA v. Sims*,
  471 U.S. 159 (1985) .................................................................................................3

*Citizens Comm'n on Hum. Rts. v. Food & Drug Admin.*,
  45 F.3d 1325 (9th Cir. 1995)...................................................................................6

*Coastal States Gas Corp. v. Dep't of Energy*,
  617 F.2d 854 (D.C. Cir. 1980) ................................................................... 9, 10, 12

*Ctr. for Nat'l Sec. Studies v. U.S. Dep't. of Just.*,
  331 F.3d 918 (D.C. Cir. 2003) .................................................................................4

*Dames & Moore v. Dep't of the Treasury*,
  544 F. Supp. 94 (C.D. Cal. 1982) ........................................................................25

*Dep't of Interior v. Klamath Water Users Protective Ass'n*,
  532 U.S. 1 (2001) .....................................................................................................9

*Favish v. Off. of Indep. Counsel*,
  217 F.3d 1168 (9th Cir. 2000).................................................................................4

*Forest Serv. Empls. for Env't Ethics v. U.S. Forest Serv.*,
    524 F.3d 1021 (9th Cir. 2008) ........................................................................ *passim*

*FTC v. Warner Commc'ns Inc.*,
    742 F.2d 1156 (9th Cir. 1984) ..................................................................... 9, 11

*Gatson v. FBI*,
    No. CV 15-5068, 2017 WL 3783696 (D.N.J. Aug. 31, 2017) ............................ 24

*Gonzalez v. USCIS*,
    475 F.Supp.3d 334 (S.D.N.Y. 2020) ............................................................ 23, 24

*Hamdan v. DOJ*,
    797 F.3d 759 (9th Cir. 2015) ........................................................................ 5, 22

*John Doe Agency v. John Doe Corp.*,
    493 U.S. 146 (1989) ....................................................................................... 3, 4

*Klamath Siskiyou Wildlands Ctr. v. Dep't of the Interior*,
    Civ. No. 07-325-CL, 2007 WL 4180685 (D. Or. Nov. 21, 2007) ...................... 25

*Lahr v. Nat'l Transp. Safety Bd.*,
    569 F.3d 964 (9th Cir. 2009) ....................................................................... *passim*

*Lane v. Dep't of Interior*,
    523 F.3d 1128 (9th Cir. 2008) ....................................................................... 4, 5

*Lawyers Comm. for Civil Rts. of S.F. Bay Area v. Dep't of Treasury*,
    534 F. Supp. 2d 1126 (N.D. Cal. 2008) ............................................................. 4

*Mead Data Cent., Inc. v. Dep't of the Air Force*,
    566 F.2d 260 (D.C. Cir. 1977) ......................................................................... 25

*Merlmerlstein v. FBI*,
    No. 19-cv-00312, 2021 WL 3455314 (E.D.N.Y. Aug. 4, 2021) ......................... 23

*Minier v. CIA*,
    88 F.3d 796 (9th Cir. 1996) ............................................................................... 4

*Nat'l Sec. Archive v. CIA*,
    752 F.3d 460 (D.C. Cir. 2014) ......................................................................... 12

*Nat'l Immigration Law Ctr. v. ICE,*
   No. 14-cv-9632-PSG, 2015 WL 12684437 (C.D. Cal. Dec. 11, 2015)..................5

*Nat'l Wildlife Fed'n v. U.S. Forest Serv.,*
   861 F.2d 1114 (9th Cir. 1988)........................................................ 10, 12

*NLRB v. Sears, Roebuck & Co.,*
   421 U.S. 132 (1975) ................................................................... 8, 10

*Our Children's Earth Found. v. Nat'l Marine Fisheries Serv.,*
   No. 14-cv-4365, 2015 WL 4452136 (N.D. Cal. July 20, 2015)...........................12

*Pac. Fisheries, Inc. v. United States,*
   539 F.3d 1143 (9th Cir. 2008)........................................................9

*Parker v. ICE,*
   238 F. Supp. 3d 89 (D.D.C. 2017)............................................... 24, 25

*Pinson v. DOJ,*
   313 F. Supp. 3d 88 (D.D.C. 2018)....................................................23

*Privacy Info. Ctr. v. Customs & Border Prot.,*
   248 F. Supp. 3d 12 (D.D.C. 2017)....................................................24

*Prudential Locations LLC v. HUD,*
   739 F.3d 424 (9th Cir. 2013).........................................................20

*Rojas v. FAA,*
   989 F.3d 666 (9th Cir. 2021).........................................................9

*Rojas-Vega v. ICE,*
   302 F. Supp. 3d 300 (D.D.C. 2018)...................................................24

*Rosenberg v. DOD,*
   342 F. Supp. 3d 62 (D.D.C. 2018)....................................................23

*Rosenfeld v. U.S. Dep't of Just.,*
   57 F.3d 803 (9th Cir. 1995).................................................... 16, 18

*SafeCard Servs., Inc. v. SEC,*
   926 F.2d 1197 (D.C. Cir. 1991) ......................................................5

*Sigler v. U.S. Dep't of Health & Hum. Servs.*,
    No. 2:18-cv-00683-ODW, 2019 WL 4749896 (C.D. Cal. Sept. 20, 2019)............6

*Transgender Law Ctr. v. ICE*,
    46 F.4th 771 (9th Cir. 2022) ...................................................................... 6, 12, 22

*U.S. Dep't of Def. v. Fed. Lab. Rels. Auth.*,
    510 U.S. 487 (1994) ........................................................................................20

*U.S. Fish & Wildlife Serv. v. Sierra Club, Inc.*,
    141 S. Ct. 777 (2021) ............................................................................. 9, 10, 12

*United States v. Weber Aircraft Corp.*,
    465 U.S. 792 (1984) ..........................................................................................9

*Van Bourg, Allen, Weinberg & Roger v. NLRB*,
    728 F.2d 1270 (9th Cir. 1984)..........................................................................14

*Weisberg v. U.S. Dep't of Just.*,
    745 F.2d 1476 (D.C. Cir. 1984) .........................................................................6

*Yagman v. U.S. Dep't of Just.*,
    No. CV 13-0354 PA (Ex), 2014 WL 1245305 (C.D. Cal. Mar. 22, 2014) ..........21

*Zemansky v. EPA*,
    767 F.2d 569 (9th Cir. 1985)..........................................................................5, 6

**Statutes**

5 U.S.C. § 552(a)(4)(B) .........................................................................................4, 5

5 U.S.C. § 552(a)(8)(A) ...........................................................................................11

5 U.S.C. § 552(b) .......................................................................................................4

5 U.S.C. § 552(b)(5)...................................................................................................8

5 U.S.C. § 552(b)(6)..................................................................................................14

5 U.S.C. § 552(b)(7)(C) ............................................................................................16

5 U.S.C. § 552(b)(7)(E) ............................................................................................22

**Rules**

Fed. R. Civ. P. 56(a) ................................................................................................5

**INTRODUCTION**

This case concerns five Freedom of Information Act ("FOIA") requests related to the deaths of detainees while in the custody of U.S. Immigration and Customs Enforcement ("ICE").  Over the last two years, the defendant agencies have produced thousands of pages of responsive records and many hours of audio and video files.  Plaintiffs now challenge the adequacy of their searches and the propriety of their withholdings under claim of exemption.  But the agencies performed searches reasonably likely to lead to all responsive records, and their withholdings are justified under FOIA Exemptions 5, 6, 7(C) and 7(E).  They have withheld the identities of low-level government officials and others who encountered the detainees, information about law enforcement databases and detention facilities, and intra-governmental deliberations about the circumstances surrounding the detainee deaths, among other things.  The defendant agencies are now entitled to summary judgment in their favor.

**BACKGROUND**

This case concerns several FOIA requests submitted to two components of the U.S. Department of Homeland Security ("DHS"), concerning immigrants who died in federal custody and related subjects.  Plaintiffs sought records relating to the deaths of three individuals while detained by ICE: Gourgen Miramanian, Maria Celeste Ochoa-Yoc De Ramirez, and Ben Owen.  Surviving family members

1

submitted the Miramanian and Owen Requests; the organization Al Otro Lado submitted the Ochoa Request.  All three of these requests were submitted to ICE, *see* 3d Pineiro Decl. ¶¶ 6–7, 9; the Miramanian request was also submitted to the DHS Office of Civil Rights and Civil Liberties ("CRCL"), *see* 3d Law Decl. ¶ 2.

Al Otro Lado submitted two other requests that are also at issue here.  The first, which was submitted to ICE (the "Meta-FOIA Request"), sought records created in response to several previously-submitted FOIA requests.  3d Pineiro Decl. ¶ 8.  The second, submitted to CRCL (the "CRCL Report Request"), sought records relating to reports that CRCL had prepared with regard to certain ICE detention facilities.  3d Law Decl. ¶ 3.

The Miramanian Request was submitted in June 2018, the others were submitted from January 4 through December 16, 2021.  *Id.* ¶¶ 2–3; 3d Pineiro Decl. ¶¶ 6–9.  Plaintiffs filed suit on January 25, 2022, and amended their complaint several months later.  ECF No. 57.  In September 2022, Plaintiffs sought a partial judgment on the pleadings and declaratory judgment, and a preliminary injunction. The Court granted partial judgment on the pleadings, concluding (1) that the Miramanian Request had been administratively exhausted, and that the Court therefore had subject matter jurisdiction over the claims related to it, Order of Jan. 12, 2023, ECF No. 80 at 9; and (2) that CRCL and ICE had failed to make a determination as to some of these requests by the statutory 20-day deadline, and to

2

make promptly available all responsive, non-exempt records identified by their searches, *id.* at 13–14. The Court entered a declaratory judgment on these issues as to ICE, but not CRCL. *Id.* at 16. Finally, the Court denied Plaintiffs' motion for a preliminary injunction that would compel CRCL and ICE to increase their rates of production. *Id.* at 17.

Both CRCL and ICE made rolling productions of responsive, non-exempt records. CRCL completed its responses in February 2023, 3d Law Decl. ¶ 13, and ICE completed its responses in June 2024, 3d Pineiro Decl. ¶ 34. Plaintiffs now challenge the adequacy of all searches, except for the ICE search in response to the Meta-FOIA Request, and all withholdings under claim of exemption.

## LEGAL STANDARD

FOIA reflects a "general philosophy of full agency disclosure unless information is exempted under clearly delineated statutory language." *John Doe Agency v. John Doe Corp.*, 493 U.S. 146, 152 (1989) (quotation omitted). "Congress recognized, however, that public disclosure is not always in the public interest." *CIA v. Sims*, 471 U.S. 159, 166–67 (1985). Accordingly, Congress sought "'a workable balance between the right of the public to know and the need of the Government to keep information in confidence to the extent necessary without permitting indiscriminate secrecy.'" *John Doe Agency*, 493 U.S. at 152 (quoting H.R. Rep. No. 89-1497, 89th Cong., 2d Sess., at 6 (1966), *reprinted in* 1966 U.S.C.C.A.N. 2418,

*Owen v. ICE*, No. 2:22-cv-00550-DSF-AJRx
Defs.' Summ. J. Memo.

2423); *Ctr. for Nat'l Sec. Studies v. U.S. Dep't. of Just.*, 331 F.3d 918, 925 (D.C. Cir. 2003).

FOIA mandates disclosure of government records unless the requested information falls within one of nine enumerated exemptions. *See* 5 U.S.C. § 552(b). "A district court only has *jurisdiction* to compel an agency to disclose *improperly withheld* agency records," *i.e.*, records that do "not fall within an exemption." *Minier v. CIA*, 88 F.3d 796, 803 (9th Cir. 1996); *see also* 5 U.S.C. § 552(a)(4)(B) (providing the district court with jurisdiction only "to enjoin the agency from withholding agency records and to order the production of any agency records improperly withheld from the complainant"). While narrowly construed, FOIA's statutory exemptions "are intended to have meaningful reach and application." *John Doe Agency*, 493 U.S. at 152; *accord Favish v. Off. of Indep. Counsel*, 217 F.3d 1168, 1178 (9th Cir. 2000).

"Most FOIA cases are resolved by the district court on summary judgment, with the district court entering judgment as a matter of law." *Animal Legal Def. Fund v. U.S. Food & Drug Admin.*, 836 F.3d 987, 989 (9th Cir. 2016) (en banc) (per curiam); *see also Lane v. Dep't of Interior*, 523 F.3d 1128, 1134 (9th Cir. 2008) ("Generally, FOIA cases should be handled on motions for summary judgment...."); *Lawyers Comm. for Civil Rts. of S.F. Bay Area v. Dep't of Treasury*, 534 F. Supp. 2d 1126, 1131 (N.D. Cal. 2008). "To prevail on summary judgment in a FOIA action,

the federal agency must establish: (1) that its search for responsive documents was reasonable; and (2) that it has described with reasonable specificity the nature of the responsive documents and its justification for any nondisclosure." *See Nat'l Immigration Law Ctr. v. ICE*, No. 14-cv-9632-PSG, 2015 WL 12684437, at *2 (C.D. Cal. Dec. 11, 2015) (citing *Zemansky v. EPA*, 767 F.2d 569, 571 (9th Cir. 1985)).

The Government bears the burden of proving that the withheld information falls within the exemptions it invokes. *See* 5 U.S.C. § 552(a)(4)(B). Summary judgment is warranted if "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). Although the government bears the burden of justifying non-disclosure, it may satisfy that burden through submission of an agency declaration that describes the reasons for non-disclosure. *See Church of Scientology of Cal. v. Dep't of the Army*, 611 F.2d 738, 742 (9th Cir. 1979), *overruled on other grounds*, *Animal Legal Def. Fund*, 836 F.3d at 990; *Lane*, 523 F.3d at 1135–36 ("A court may rely solely on government affidavits 'so long as the affiants are knowledgeable about the information sought and the affidavits are detailed enough to allow the court to make an independent assessment of the government's claim.'"). Such declarations are accorded "a presumption of good faith, which cannot be rebutted by purely speculative claims." *SafeCard Servs., Inc. v. SEC*, 926 F.2d 1197, 1200 (D.C. Cir. 1991); *see also Hamdan v. DOJ*, 797 F.3d 759, 770 (9th Cir. 2015) ("Affidavits submitted by an agency to

1  demonstrate the adequacy of its response are presumed to be in good faith."). "Thus,

2  where an agency's declarations 'contain reasonably detailed descriptions of the

3  documents and allege facts sufficient to establish an exemption, the district court

4  need look no further.'" *Sigler v. U.S. Dep't of Health & Hum. Servs.*, No. 2:18-cv-

5  00683-ODW, 2019 WL 4749896, at *3 (C.D. Cal. Sept. 20, 2019).

6  **ARGUMENT**

7  **A.    CRCL and ICE conducted adequate searches.**

8  In responding to a FOIA request, government agencies must conduct searches

9  "reasonably calculated to uncover all relevant documents." *Lahr v. Nat'l Transp.*

10  *Safety Bd.*, 569 F.3d 964, 986 (9th Cir. 2009). To demonstrate that it has conducted

11  a reasonable search, an agency may produce "reasonably detailed, nonconclusory

12  affidavits submitted in good faith." *Zemansky*, 767 F.2d at 571 (citing *Weisberg v.*

13  *U.S. Dep't of Just.*, 745 F.2d 1476, 1485 (D.C. Cir. 1984)); *see also Citizens Comm'n*

14  *on Hum. Rts. v. Food & Drug Admin.*, 45 F.3d 1325, 1328 (9th Cir. 1995). The

15  agency's ultimate burden is to prove the adequacy of its search "beyond material

16  doubt." *Transgender Law Ctr. v. ICE*, 46 F.4th 771, 780 (9th Cir. 2022).

17  CRCL and ICE have done so. To begin with, CRCL located the two

18  documents specifically identified in the CRCL Report Request: a November 2017

19  report and an August 2021 memorandum regarding Winn Correctional Center. *See*

20  3d Law Decl. ¶ 7. There can be no question as to the adequacy of that portion of its

6

search.  For the portion of the request seeking reports or recommendations concerning three specific complaints, CRCL searched its electronic complaint files (which are used to maintain all key records related to CRCL's investigations of complaints) for any expert reports or CRCL recommendations that had been issued in relation to those complaints.  *Id.* ¶ 8.  CRCL conducted a similar search for the portion of the request seeking other reports or recommendations regarding ICE detention facilities within the New Orleans ICE Field Office of Responsibility, searching its electronic records systems for complaints related to those facilities, and then retrieving any expert reports or CRCL recommendations related to such complaints from its electronic complaint files.  *Id.* ¶ 9.  Finally, for the portion of the request seeking other communications or records related to those investigations, CRCL retrieved the full complaint file for each relevant complaint, which is where records related to those complaints would be stored.  *Id.* ¶ 10.

For the Ochoa and Owen Requests, ICE identified its Office of Enforcement and Removal Operations and its Health Service Corps, which provides and coordinates medical care in detainment facilities, as the components most likely to have responsive records.  3d Pineiro Decl. ¶¶ 32–33.  For the Ochoa Request, the Office of Enforcement and Removal Operations searched its Chicago and Dallas field offices and its Custody Management office.  *Id.* ¶ 32.  For the Owen Request, the Office of Enforcement and Removal Operations searched its Miami field office

1  as well as its Custody Management and Communications offices for responsive

2  records. *Id.* ¶ 33. The Health Service Corps searched for records responsive to both

3  requests, as well. *Id.* ¶¶ 32.d, 33.b. ICE followed a similar process for the

4  Miramanian Request. *Id.* ¶ 33.

5        All of the searches, including CRCL's search for records responsive to the

6  Miramanian Request, *see* 3d Law Decl. ¶ 11, were performed by agency employees

7  chosen for their familiarity with the subject matter of the request and the potentially

8  relevant records, using terms reasonably designed by those employees to identify

9  responsive material, as described in greater detail in the declarations submitted with

10  this motion. *Id.* ¶ 6; 3d Pineiro Decl. ¶¶ 17–19. Because these searches were

11  reasonably calculated to uncover all relevant documents, CRCL and ICE are entitled

12  to summary judgment as to the adequacy of their searches.

13  **B.    The withheld material is exempt from release under FOIA.**

14        **i.    Exemption 5**

15        Exemption 5 shields from mandatory disclosure "inter-agency or intra-agency

16  memorandums or letters that would not be available by law to a party other than an

17  agency in litigation with the agency." 5 U.S.C. § 552(b)(5). The Supreme Court has

18  clarified that Exemption 5 exempts "those documents [that are] normally privileged

19  in the civil discovery context." *NLRB v. Sears, Roebuck & Co.*, 421 U.S. 132, 149

20  (1975); *see also Dep't of Interior v. Klamath Water Users Protective Ass'n*, 532 U.S.

*Owen v. ICE*, No. 2:22-cv-00550-DSF-AJRx
Defs.' Summ. J. Memo.

1    1, 8 (2001). Exemption 5, therefore, protects from disclosure information protected

2    by the deliberative process privilege. *See, e.g.*, *United States v. Weber Aircraft Corp.*,

3    465 U.S. 792, 800 (1984); *Pac. Fisheries, Inc. v. United States*, 539 F.3d 1143, 1148

4    (9th Cir. 2008).

5         The deliberative-process privilege is intended "to enhance the quality of

6    agency decisions by protecting open and frank discussion among those who make

7    them within the Government." *Klamath Water Users Protective Ass'n*, 532 U.S. at

8    8-9 (citation omitted). The privilege "rests on the obvious realization that officials

9    will not communicate candidly among themselves if each remark is a potential item

10   of discovery and front page news." *Id.*; *see also U.S. Fish & Wildlife Serv. v. Sierra

11   Club, Inc.*, 141 S. Ct. 777, 785 (2021) ("To encourage candor, which improves

12   agency decisionmaking, the privilege blunts the chilling effect that accompanies the

13   prospect of disclosure."); *Rojas v. FAA*, 989 F.3d 666, 673 (9th Cir. 2021); *FTC v.

14   Warner Commc'ns Inc.*, 742 F.2d 1156, 1161 (9th Cir. 1984).

15        To qualify for protection under the deliberative process privilege, a document

16   must be both (1) "predecisional," and (2) "deliberative," meaning that it contains

17   opinions, recommendations or advice. *Warner Commc'ns Inc.*, 742 F.2d at 1161

18   (citing *Coastal States Gas Corp. v. Dep't of Energy*, 617 F.2d 854, 866 (D.C. Cir.

19   1980)). The Supreme Court has explained that "[d]ocuments are 'predecisional' if

20   they were generated before the agency's final decision on the matter, and they are

9

1    'deliberative' if they were prepared to help the agency formulate its position." *Sierra*

2    *Club*, 141 S. Ct. at 786. In evaluating whether certain draft opinions were subject to

3    the privilege, the Supreme Court emphasized that these inquiries have "considerable

4    overlap" and explained that "[t]o decide whether a document communicates the

5    agency's settled position, courts must consider whether the agency treats the

6    document as its final view on the matter." *Id.*

7        In general, then, to establish the predecisional nature of a record, the

8    government need not "identify a specific decision" made by the agency, *NLRB*, 421

9    U.S. at 151 n.18; rather it should not have operative effect or communicate the

10   agency's final view on the matter. *See Sierra Club*, 141 S. Ct. at 786-87; *Lahr*, 569

11   F.3d at 981. Information is "deliberative" if it "reflects the give-and-take of the

12   consultative process." *Coastal States*, 617 F.2d at 854, 866. The legitimacy of

13   withholding thus "does not turn on whether the material is purely factual in nature

14   or whether it is already in the public domain, but rather on whether the selection or

15   organization of facts is part of an agency's deliberative process." *Ancient Coin*

16   *Collectors Guild v. U.S. Dep't of State*, 641 F.3d 504, 513 (D.C. Cir. 2011); *see also*

17   *Nat'l Wildlife Fed'n v. U.S. Forest Serv.*, 861 F.2d 1114, 1118 (9th Cir. 1988)

18   ("[E]xemption 5 'was intended to protect not simply deliberative *material*, but also

19   the deliberative *process* of agencies.'"). The privilege does not cover "[p]urely

20   factual material," *Warner Commc'ns Inc.*, 742 F.2d at 1161 (citation omitted), but

*Owen v. ICE*, No. 2:22-cv-00550-DSF-AJRx
Defs.' Summ. J. Memo.

1  does apply where the "factual material . . . is so interwoven with the deliberative

2  material that it is not severable." *Id.*  Congress amended the text of FOIA in 2016 to

3  provide that an agency may withhold information only if "the agency reasonably

4  foresees that disclosure would harm an interest protected by [a FOIA] exemption"

5  or "disclosure is prohibited by law." *See* 5 U.S.C. § 552(a)(8)(A).

6        ICE withheld draft documents and related materials exchanged in the course

7  of preparing memoranda, reports, and summaries regarding the deaths of certain

8  detainees in ICE custody.  3d Pineiro Decl. ¶¶ 44–47.  "The contents of these

9  documents are pre-decisional in nature because they preceded any final decision to

10 issue a report or other public statement, or transmit a particular memorandum,

11 concerning the detainees in question."  *Id.* ¶ 41.  Moreover, "many of the withheld

12 documents contain comments or questions that are directed to government

13 personnel, suggesting corrections or revisions, or suggested revisions or corrections

14 in redline text."  *Id.*  "The preparation, revision, and review of these documents

15 constitutes a central process by which ICE deliberates over both the facts

16 surrounding . . . detainee deaths and any policy recommendations that should be

17 made in an effort to avoid future deaths in ICE custody."  *Id.* ¶ 42.  Their release

18 would cause a foreseeable harm, by chilling agency discussion of detainee deaths

19 and creating "confusion regarding what facts have actually been established and

20 what recommendations have actually been adopted by the agency." *Id.* ¶ 43.  CRCL

*Owen v. ICE*, No. 2:22-cv-00550-DSF-AJRx
Defs.' Summ. J. Memo.

also withheld one draft letter to ICE, for similar reasons. 3d Law Decl., *Vaughn* Index No. 166.

While drafts are not automatically privileged, drafts commonly satisfy the standard for withholding under the deliberative process privilege, as these do here. *See, e.g.*, *Sierra Club*, 141 S. Ct. at 786 ("A draft is, by definition, a preliminary version of a piece of writing subject to feedback and change."); *Coastal States*, 617 F.2d at 866 (finding the deliberative process privilege "covers recommendations, draft documents, proposals, suggestions, and other subjective documents which reflect the personal opinions of the writer rather than the policy of the agency"); *see, e.g.*, *Nat'l Sec. Archive v. CIA*, 752 F.3d 460, 463 (D.C. Cir. 2014) (describing importance of protecting drafts); *Nat'l Wildlife Fed'n*, 861 F.2d at 1122 (protecting working drafts); *Our Children's Earth Found. v. Nat'l Marine Fisheries Serv.*, No. 14-cv-4365, 2015 WL 4452136, at *5 (N.D. Cal. July 20, 2015) (upholding the withholding of "'working drafts subject to revision' for a biological opinion that was being prepared for release," which "reflect, among other things, deliberations between National Oceanic and Atmospheric Administration staff and scientists about how to proceed with the biological opinion"); *cf. Transgender Law Ctr.*, 46 F.4th at 783 (ordering the production of draft documents where "the Government failed to meet its burden of demonstrating predecisional status and deliberation").

*Owen v. ICE*, No. 2:22-cv-00550-DSF-AJRx
Defs.' Summ. J. Memo.

1    CRCL withheld tentative findings and recommendations from expert reports

2    prepared for its review, email communications, and memoranda that it transmitted

3    to ICE.[1]   When CRCL investigates allegations of civil rights violations, by ICE or

4    another component of DHS, it often commissions an expert report.   CRCL then

5    prepares a memorandum proposing findings and making recommendations, which it

6    transmits to the DHS component under investigation.   When that component concurs

7    in the findings or recommendations, they generally become the final position of

8    DHS.   *See* 3d Law Decl. ¶¶ 20–23.   But when ICE or another component does not

9    concur in CRCL's findings or recommendations, "CRCL will continue to work with

10    ICE to determine the best way to resolve the complaints, which involves the further

11    exchange of deliberative communications between CRCL and DHS components."

12    *Id.* ¶ 22.   CRCL memoranda and the expert reports on which they are based are thus

13    predecisional, because they are prepared before DHS has made a decision about the

14    veracity of the allegations under investigation, or any policy changes that should be

15    made in response to them.   And the tentative findings and recommendations are

16    deliberative, because they are essentially a proposal made by one DHS component

17    (CRCL) to another (in this case, ICE) about what conclusions the larger Department

---

[1] 3d Law Decl., *Vaughn* Index Nos. 1, 3–7, 39–46, 50, 52, 60–65, 73, 87–88, 91–93, 110, 115–16, 120, 142–46.   CRCL also withheld portions of several email chains in which agency employees deliberated over agency responses to complaints.   *Id.*, *Vaughn* Index Nos. 112–13, 131, 149, 151.

13

*Owen v. ICE*, No. 2:22-cv-00550-DSF-AJRx
Defs.' Summ. J. Memo.

of Homeland Security should reach in response to a given complaint.  The withheld

tentative findings and recommendations are therefore protected by the deliberative

process privilege and exempt from disclosure because their release would

foreseeably inhibit candid deliberations over potential civil rights violations within

DHS.  *Id.* ¶ 25.

### ii.    Exemptions 6 and 7(C)

Exemption 6 applies to "personnel and medical files and similar files the

disclosure of which would constitute a clearly unwarranted invasion of personal

privacy." 5 U.S.C. § 552(b)(6). The phrase "similar files" "has a broad, rather than

a narrow meaning." *Forest Serv. Empls. for Env't Ethics v. U.S. Forest Serv.*, 524

F.3d 1021, 1024 (9th Cir. 2008) ("*FSEEE*") (cleaned up). For example, "[g]overment

records containing information that applies to particular individuals satisfy the

threshold test of Exemption 6." *Id.* (quoting *Van Bourg, Allen, Weinberg & Roger v.

NLRB*, 728 F.2d 1270, 1273 (9th Cir. 1984)).  To determine whether disclosure of

the information "would constitute a clearly unwarranted invasion of personal

privacy" courts "balance the public interest in disclosure against the interest

Congress intended the [e]xemption to protect." *Cameranesi v. Dep't of Def.*, 856 F.3d

626, 637 (9th Cir. 2017) (cleaned up).  The Ninth Circuit has established "a two-step

test for balancing individual privacy rights against the public's right of access." *Id.*

*Owen v. ICE*, No. 2:22-cv-00550-DSF-AJRx
Defs.' Summ. J. Memo.

First, disclosure must implicate a personal privacy interest that is "nontrivial" or more than "de minimis." *Id.* "[A] disclosure implicates personal privacy if it affects . . . the individual's control of information concerning his or her person . . . ." *Id.* at 638 (cleaned up). "Disclosures that would subject individuals to possible embarrassment, harassment, or the risk of mistreatment constitute nontrivial intrusions into privacy under Exemption 6." *Id.* This includes harassment in the form of "unwanted commercial solicitations." *Id.* at 639 (quoting *FSEEE*, 524 F.3d at 1026). To carry its burden at this first step, an agency need only show that the requested disclosure has "the potential" to result in such harassment; the invasion of privacy need not be certain. *Id.*

If the agency succeeds in demonstrating a nontrivial privacy interest, the court must "balance the individual's right of privacy against the public interest in disclosure." *Id.* This balancing involves the consideration of two factors: (1) "whether the public interest sought to be advanced is a significant one—one more specific than having the information for its own sake"; and (2) "whether the requested information is likely to advance that interest." *Id.* (cleaned up). For the public interest to be significant, "the *only* relevant public interest in the FOIA balancing analysis is the extent to which disclosure of the information sought would she[d] light on an agency's performance of its statutory duties or otherwise let citizens know what their government is up to." *Id.* at 639–40 (cleaned up). The

15

1    requested information must also "contribute significantly to public understanding of

2    the operations or activities of the government." *Id.* at 640.

3         FOIA Exemption 7(C) protects from disclosure "records or information

4    compiled for law enforcement purposes" when production of the records or

5    information "could reasonably be expected to constitute an unwarranted invasion of

6    personal privacy." 5 U.S.C. § 552(b)(7)(C). As a threshold issue when analyzing

7    Exemption 7, the Court must make a determination as to whether the document in

8    question has a law enforcement purpose, which, in turn, requires examination of

9    whether the agency serves a "law enforcement function." *Church of Scientology*

10   *Int'l v. IRS*, 995 F.2d 916, 919 (9th Cir. 1993). Where the defendant government

11   agency in a FOIA case has a clear law enforcement mandate, it "need only establish

12   a 'rational nexus' between enforcement of a federal law and the document for which

13   [a law enforcement] exemption is claimed" to meet this threshold requirement.

14   *Rosenfeld v. U.S. Dep't of Just.*, 57 F.3d 803, 808 (9th Cir. 1995) (quotation omitted).

15        Once the threshold requirement is satisfied, similar to Exemption 6, the court

16   must "balance the privacy interest protected by the exemption[] against the public

17   interest in government openness that would be served by disclosure." *Lahr*, 569

18   F.3d at 973. While both Exemption 6 and Exemption 7(C) require this balancing,

19   "Exemption 7(C)'s privacy language is broader than the comparable language in

20   Exemption 6 in two respects." *Id.* at 974. While Exemption 6 requires that the

*Owen v. ICE*, No. 2:22-cv-00550-DSF-AJRx
Defs.' Summ. J. Memo.

invasion of privacy be "clearly" unwarranted, Exemption 7 does not contain that word. *Id.* In addition, Exemption 7(C) prevents disclosure of information that "could reasonably be expected to constitute an unwarranted invasion of privacy," whereas Exemption 6 speaks to information that "would constitute" such an unwarranted invasion. *Id.* "In other words, although both exemptions require the court to engage in a similar balancing analysis, they differ in the magnitude of the public interest that is required to override the respective privacy interests protected by the exemptions." *Id.* (quotation omitted).

As with Exemption 6, "personal privacy interests" under Exemption 7(C) "encompass a broad range of concerns relating to an individual's control of information concerning his or her person, and an interest in keeping personal facts away from the public eye." *Id.* (citation and quotations omitted). Also, similar to Exemption 6, "[o]nce the government has identified a cognizable privacy interest, the only relevant public interest . . . is the extent to which disclosure of the information sought would shed light on an agency's performance of its statutory duties or otherwise let citizens know what their government is up to." *Id.* (quotation omitted). Moreover, the interest served by disclosure must be "a significant one, an interest more specific than having the information for its own sake," and the requester must show "that disclosure is likely to advance that interest." *Id.*

*Owen v. ICE*, No. 2:22-cv-00550-DSF-AJRx
Defs.' Summ. J. Memo.

Pursuant to Exemption 6, CRCL has withheld from all responsive records the names, contact information, and personal identifiers of lower-lever DHS employees, detainees, and expert consultants, as well as the contact information (but not the names) of DHS managers.  3d Law Decl. ¶ 26–27.  Pursuant to Exemption 6 and 7(C), CRCL has withheld from all responsive records the names and contact information of lower-lever ICE employees, and the contact information (but again not the names) of ICE managers.  *Id.* ¶ 30.  ICE, for its part, has asserted Exemptions 6 and 7(C) in tandem to withhold the names and identifying information of non-Senior Executive Service personnel in government employment, law enforcement officers, medical professionals, and other detainees and witnesses.  3d Pineiro Decl. ¶¶ 53–56.

Based on the principles discussed above, these withholdings were proper.  As an initial matter, the threshold requirements of these exemptions are satisfied. First, the withheld information pertains to particular individuals and is included in records maintained by CRCL and ICE.  Those records, which concern particular individuals detained by ICE, qualify as "similar files" under Exemption 6.  *FSEEE*, 524 F.3d at 1024 (accident report prepared by the Forest Service to investigate a wildfire that killed two Forest Service employees qualified as a "similar file").  Second, the records have a law enforcement purpose, and thus meet the threshold requirement of Exemption 7(C).  DHS and ICE clearly have a law enforcement mandate.  There is

18

also a rational nexus between their enforcement of federal immigration law and the records in question, which concern individuals detained for violating those immigration laws. *Rosenfeld*, 57 F.3d at 808.

Next, all of these individuals have a significant interest privacy interest at stake, as the public release of their identities could lead to harassment and increase the risk of violence or other types of reprisal. 3d Law Decl. ¶ 26–27, 29; 3d Pineiro Decl. ¶ 57. The Ninth Circuit has held that similar concerns constitute cognizable privacy interests under Exemptions 6 and 7(C). In *Lahr v. National Transportation Safety Board*, the Ninth Circuit found that FBI agents had a privacy interest in withholding their names from documents regarding the investigation into the explosion of TWA Flight 800. 569 F.3d at 977–78. The Ninth Circuit noted that "[t]he directly applicable precedents . . . establish that FBI agents have a legitimate interest in keeping private matters that could conceivably subject them to annoyance or harassment." *Id.* at 977 (quotation omitted). "In particular, courts have recognized that agents retain an interest in keeping private their involvement in investigations of especially controversial events." *Id.* Recognizing that lower level officials "generally have a stronger interest in personal privacy than do senior officials," *id.*, both CRCL and ICE have released the names (but not the contact information) of senior officials when they appeared in records responsive to these requests. 3d Law Decl. ¶ 26, 30; 3d Pineiro Decl. ¶ 54.

*Owen v. ICE*, No. 2:22-cv-00550-DSF-AJRx
Defs.' Summ. J. Memo.

1    Moreover, there is no public interest in disclosure of the withheld identities.

2    3d Law Decl. ¶ 26–27; 3d Pineiro Decl. ¶ 58.  In *Lahr*, the Ninth Circuit found that

3    releasing names would not "advance a relevant public interest" because their release

4    would not "shed light on an agency's performance of its statutory duties or otherwise

5    let citizens know what their government is up to." 569 F.3d at 978 (quoting *U.S.*

6    *Dep't of Def. v. Fed. Lab. Rels. Auth.*, 510 U.S. 487, 497 (1994)). The Ninth Circuit

7    noted that this conclusion was "compelled" by its earlier decision in *Forest Service*

8    *Employees for Environmental Ethics v. United States Forest Service*, 524 F.3d 1021.

9    *Lahr*, 569 F.3d at 975.

10    In that case, the Ninth Circuit found that Forest Service employees whose

11    names were mentioned in a report by the Forest Service of its investigation into a

12    wildfire in which two employees died had cognizable privacy interests under

13    Exemption 6.  524 F.3d at 1026.  The *FSEEE* Court also concluded that these low

14    and mid-level employees were not stripped of their privacy interests where none had

15    been accused of official misconduct, and only six of the employees had been

16    disciplined (the remaining employees were cooperating witnesses).  *Id.* Finally, the

17    Ninth Circuit held that the release of the identities of the employees who participated

18    in the response to the wildfire "would not appreciably further the public's important

19    interest in monitoring the agency's performance during that tragic event." *Id.* at

20    1028. This was because "the identities of the employees alone will shed no new light

20

on the Forest Service's performance of its duties beyond that which is already publicly known." *Id.* at 1027; *see also Prudential Locations LLC v. HUD*, 739 F.3d 424, 432-33 (9th Cir. 2013), *rev'd on other grounds by Animal Legal Def. Fund*, 836 F.3d 987 (individuals who complained to HUD about a violation of the law had a personal privacy interest in protecting their identities under Exemption 6)). CRCL and ICE properly withheld these names and other identifying information pursuant to Exemptions 6 and 7(C).

Similarly, individuals have a significant privacy interest in their contact information. *See Lahr*, 569 F.3d at 975–76 (protection from unwanted contact by third parties, such as media entities and commercial solicitors, facilitated by disclosure of a connection to government operations and investigations is a cognizable privacy interest under Exemptions 6 and 7(C)); *Yagman v. Dep't of Justice*, No. CV 13-0354 PA (Ex)., 2014 WL 1245305, at *8-9 (C.D. Cal. Mar. 22, 2014), *aff'd* 605 F. App'x 666 (9th Cir. 2015) (third-party individuals responding via email to an Assistant United States Attorney had personal privacy interests for purposes of Exemption 7(C), as did Bureau of Prisons wardens in their direct dial telephone numbers and email addresses).

Conversely, there is no public interest in disclosure of the withheld contact information because this information would not "appreciably further the public's right to monitor the [government's] action" or "add significantly to the already

21

1    available information concerning the manner in which [the government] . . .

2    performed its statutory duties." *Cameranesi*, 856 F.3d at 640 (cleaned up).

3    "[I]nformation about private citizens that is accumulated in various government files

4    but that reveals little or nothing about an agency's own conduct is not the type of

5    information to which FOIA permits access." *Id.* Therefore, CRCL and ICE properly

6    withheld contact information pursuant to Exemptions 6 and 7(C).

7         ICE also withheld information about the claimed immigration statuses of

8    certain immigrants, "which can reveal private details of their past lives and future

9    plans," under Exemptions 6 and 7(C).  3d Pineiro Decl. ¶ 39.   No public interest in

10   the information outweighs that privacy interest. *Id.* ¶¶ 38–39.

11        **iii.    Exemption 7(E)**

12        Exemption 7(E) protects records or information compiled for law enforcement

13   purposes when release "would disclose techniques and procedures for law

14   enforcement investigations or prosecutions, or would disclose guidelines for law

15   enforcement investigations or prosecutions if such disclosure could reasonably be

16   expected to risk circumvention of the law."   5 U.S.C. § 552(b)(7)(E).   "The

17   requirement that the Government show that disclosure 'could reasonably be

18   expected to risk circumvention of the law' applies only to *guidelines* for law

19   enforcement investigations or prosecutions, not to *techniques and procedures*."

20   *Transgender Law Ctr.*, 46 F.4th at 784 (quoting *Hamdan*, 797 F.3d at 778).

22

*Owen v. ICE*, No. 2:22-cv-00550-DSF-AJRx
Defs.' Summ. J. Memo.

1     ICE withheld several categories of information under Exemption 7(E).  First,

2     ICE withheld information about detention facilities, including specific non-lethal

3     weapons allowed to be used, the routines and staffing of officers, maps of the

4     facilities, the location of commissary funds within detention facilities, and threat

5     ratings of detained individuals.  3d Pineiro Decl., *Vaughn* Index Nos. 2, 5, 7.  Such

6     techniques and procedures related to detention facilities and the management of

7     detainees are protected by Exemption 7(E), because their disclosure would pose a

8     serious risk of circumvention of the law within those facilities.  *See, e.g.*, *Rosenberg*

9     *v. DOD*, 342 F. Supp. 3d 62, 94-95 (D.D.C. 2018) (protecting protocols addressing

10    handling of detainees on hunger strikes because disclosure would render techniques

11    and procedures ineffective); *Pinson v. DOJ*, 313 F. Supp. 3d 88, 117-18 (D.D.C.

12    2018) (protecting use of force techniques and procedures in federal prison because

13    disclosure would allow circumvention and could reduce usefulness).

14    Next, ICE withheld internal email addresses used only within ICE and other

15    law enforcement agencies, and the addresses of internal websites used only within

16    ICE and other law enforcement agencies.  3d Pineiro Decl., *Vaughn* Index Nos. 1, 3.

17    This information is well within the scope of Exemption 7(E), because its release

18    would risk the hacking and disruption of law enforcement computer systems.  *See,*

19    *e.g.*, *Merlmerlstein v. FBI*, No. 19-cv-00312, 2021 WL 3455314, at *15 (E.D.N.Y.

20    Aug. 4, 2021) (approving withholding of "internal email addresses and non-public

23

*Owen v. ICE*, No. 2:22-cv-00550-DSF-AJRx
Defs.' Summ. J. Memo.

intranet web addresses" under Exemption 7(E)); *Gonzalez v. USCIS*, 475 F.Supp.3d
334, 351–52 (S.D.N.Y. 2020) ("Courts frequently find that . . . URLs of internal law
enforcement databases" are "properly withheld under Exemption 7(E).") (approving
withholding and collecting cases); *Rojas-Vega v. ICE*, 302 F. Supp. 3d 300, 310
(D.D.C. 2018) (holding that ICE properly invoked 7(E) for "internal URLs"); *Parker
v. ICE*, 238 F. Supp. 3d 89, 100 (D.D.C. 2017) (holding "law enforcement system
URLs" and "internal website links" exempt from disclosure under 7(E)); *Gatson v.
FBI*, No. CV 15-5068, 2017 WL 3783696, at *14 (D.N.J. Aug. 31, 2017) (approving
withholding of law enforcement "intra-agency email addresses" under 7(E)), *aff'd*,
779 F. App'x 112 (3d Cir. 2019).

Information about law enforcement databases was properly withheld by ICE
and CRCL for similar reasons.  3d Law Decl. ¶ 33 & *Vaughn* Index; 3d Pineiro Decl.,
*Vaughn* Index No. 6.  *See, e.g.*, *Gonzalez*, 475 F. Supp. 3d at 352 ("The manner by
which . . . law enforcement agencies . . . access databases, and maintain information
regarding cases in general falls within FOIA Exemption 7(E)."); *Elec. Privacy Info.
Ctr. v. Customs & Border Prot.*, 248 F. Supp. 3d 12, 19 (D.D.C. 2017) (protecting
"records detailing the function, access, navigation, and capabilities" of law
enforcement database), *aff'd per curiam*, No. 17-5078, 2017 WL 4220339 (D.C. Cir.
Aug. 1, 2017).

Finally, ICE withheld law enforcement identification numbers and codes, such as FBI numbers and alien numbers (commonly known as "A-numbers"). 3d Pineiro Decl., *Vaughn* Index No. 4. This information is also within the scope of Exemption 3. *See, e.g.*, *Anguiano v. ICE*, No. 18-CV-01782-JSC, 2018 WL 5923451, at *13 (N.D. Cal. Nov. 13, 2018) (approving withholding of FBI numbers under Exemption 7(E)); *Rojas-Vega*, 302 F. Supp. 3d at 310 (holding that ICE properly invoked 7(E) for "subject identification numbers"); *Parker*, 238 F. Supp. 3d at 100 (approving withholding of "identification numbers").

## iv. Foreseeable Harm and Segregability

Under FOIA, "any reasonably segregable portion of a record shall be provided to any person requesting such record after deletion of the portions which are exempt . . . ." 5 U.S.C. § 552(b). Accordingly, "non-exempt portions of a document must be disclosed unless they are inextricably intertwined with exempt portions." *Mead Data Cent., Inc. v. Dep't of the Air Force*, 566 F.2d 242, 260 (D.C. Cir. 1977). This provision does not require disclosure of records in which the non-exempt information that remains is meaningless. *See Nat'l Sec. Archive Fund, Inc. v. CIA*, 402 F. Supp. 2d 211, 220–21 (D.D.C. 2005) (concluding that no reasonably segregable information exists because "the non-exempt information would produce only incomplete, fragmented, unintelligible sentences composed of isolated, meaningless words"); *see, e.g.*, *Dames & Moore v. Dep't of the Treasury*, 544 F.

Supp. 94, 96 (C.D. Cal. 1982) ("any portions which might be released would have no meaning to plaintiff"); *Klamath Siskiyou Wildlands Ctr. v. Dep't of the Interior*, Civ. No. 07-325-CL, 2007 WL 4180685, at *8 (D. Or. Nov. 21, 2007) ("In cases where nonexempt material is inextricably intertwined with exempt material and the deletion of the exempt material would leave only meaningless words and phrases, the entire document is exempt.").

Here, the declaration establishes that there is no additional reasonably segregable, non-exempt information.  3d Law Decl. ¶ 12; 3d Pineiro Decl. ¶ 63–64. This segregability conclusion is borne out by the released documents themselves: redactions have been taken narrowly and only where specific information protected by exemptions is at issue.

Similarly, FOIA provides (as relevant here) that an agency may only withhold records in whole or in part if it "reasonably foresees that disclosure would harm an interest protected by" a FOIA "exemption"  5 U.S.C. § 552(a)(8)(A)(i)(I).  The declarations similarly support the agencies' conclusions that release of any withheld records or portions thereof would cause relevant and reasonably foreseeable harms. *See, e.g.*, 3d Law Decl. ¶ 25; 3d Pineiro Decl. ¶ 43.

**CONCLUSION**

For the reasons set forth above, both CRCL and ICE are entitled to summary judgment in their favor.

Respectfully submitted,

BRIAN M. BOYNTON
Principal Deputy Assistant Attorney General

ELIZABETH J. SHAPIRO
Deputy Director, Federal Programs Branch

*/s/ James Bickford*
JAMES BICKFORD
Trial Attorney (N.Y. Bar No. 5163498)
United States Department of Justice
Civil Division, Federal Programs Branch
1100 L Street, NW
Washington, DC 20530
James.Bickford@usdoj.gov
Telephone: (202) 305-7632
Facsimile: (202) 616-8470

*Counsel for Defendants*

Date: August 16, 2024

## CERTIFICATE OF COMPLIANCE

The undersigned, counsel of record for Defendants, certifies that this brief contains 6,184 words, which complies with the word limit of L.R. 11-6.1.

*/s/ James Bickford*

Date: August 16, 2024

27