# UNITED STATES DISTRICT COURT
# CENTRAL DISTRICT OF CALIFORNIA
# WESTERN DIVISION

TAMMY JANE OWEN as the Administrator of the Estate of Benjamin James Owen; AL OTRO LADO, Inc.; and MIRAN MIRIMANIAN,

    Plaintiffs,

vs.

U.S. IMMIGRATION AND CUSTOMS ENFORCEMENT; and U.S. DEPARTMENT OF HOMELAND SECURITY – OFFICE FOR CIVIL RIGHTS AND CIIVL LIBERTIES,

    Defendants.

Case No.: 2:22-cv-00550-DSF-AFM

**THIRD DECLARATION OF ROSEMARY LAW**

I, Rosemary Law, pursuant to 28 U.S.C. § 1746, hereby declare as follows:

1. This declaration serves to supplement information provided in my first declaration filed in this action on October 31, 2022, *see* docket no [76-9]; and my second declaration filed in this action on May 20, 2024. *See* docket no [95-1].

2. On June 19, 2018, Miran Mirimanian submitted a FOIA request to the Privacy Office seeking records from the Office for Civil Rights and Civil Liberties (CRCL) for all agency records relating to "Gourgen Mirimanian, a citizen and national of Armenia, A 070 963 630, DOB 3/16/1964" (the "Mirimanian Request").

3. On December 16, 2021, Al Otro Lado submitted a FOIA request to CRCL (the "CRCL Report Request") that sought:

    a. The November 17, 2017, report sent by CRCL to ICE regarding Winn Correctional Center;

    b. The August 10, 2021, CRCL memorandum regarding Winn Correctional Center;

      c. Any reports or recommendations concerning complaints assigned numbers 000945-21-ICE, 21-05-ICE-0248, and 000382-21;

      d. Any other recommendations or reports regarding any ICE detention facilities within the New Orleans ICE Field Office of Responsibility (Adams County Detention Center, Allen Parish Public Safety Complex, Etowah County Detention Center, Jackson Parish Correctional Center, LaSalle ICE Processing Center, Pine Prairie ICE Processing Center, Richwood Correctional Center, River Correctional Center, South Louisiana ICE Processing Center, Winn Correctional Center) dated or sent from January 1, 2017 until the time this search is conducted;

      e. All communications sent by or received from CRCL concerning or in connection to any of the above complaints and investigations;

      f. All records collected for or used in any of the above complaints and investigations.

4. When CRCL receives a FOIA request, the CRCL FOIA Office evaluates the request to determine which functional units, personnel, or records systems within CRCL may reasonably be expected to have the records requested. This determination is based on the description of the records requested and requires a familiarity with the CRCL records systems, applicable records disposition schedules, and the substantive and functional mandates of DHS CRCL functional units. Factors such as the nature, scope, and complexity of the request itself are also relevant.

5. After reviewing Plaintiffs' requests, the CRCL FOIA Office determined that the only unit within CRCL reasonably likely to have documents responsive to Plaintiffs' requests was the Compliance Branch, which reviews and investigates allegations of civil rights and civil liberties violations involving DHS policies, activities, and personnel. The Compliance Branch can open a formal complaint investigation based upon the allegations received and may make recommendations or take other informal steps following the completion of the investigation.

These investigations produce documents such as investigatory reports, expert review reports, and formal recommendations or informal advice to DHS agencies such as ICE and CBP.

6. When conducting a search in response to a FOIA request, the CRCL FOIA Office relies on the knowledge and expertise of the employees of each CRCL functional unit to determine the files and locations reasonably likely to house responsive records and the best means of locating such records, as these employees are in the best position to know how their files are organized. Likewise, those employees are also in the best position to determine which search methods or terms would yield potentially responsive records, because they are most knowledgeable about the organization of the records systems in use.

7. In response to the CRCL Report Request, Compliance Branch staff located the November 17, 2017, report sent by CRCL to ICE regarding Winn Correctional Center and the August 10, 2021 CRCL memorandum regarding Winn Correctional Center.

8. Reports or recommendations concerning complaints assigned numbers 000945-21-ICE, 21-05-ICE-0248, and 000382-21 were located by going to the electronic complaint file or other electronic document collections to retrieve responsive records and using simple search terms or identifying information (like facility name, document title, or date, among other things) to find the records. CRCL's Compliance Branch maintains an electronic case management system where it stores documents related to complaints including incoming documents, expert reports, letters, and recommendations.

9. To respond to the portion of the CRCL Report request for any other recommendations or reports regarding any ICE detention facilities within the New Orleans ICE Field Office of Responsibility, a Compliance staff member who was knowledgeable about the request conducted a search of Compliance electronic records system reasonably likely to contain responsive records. The search terms looked for all complaints related to the named facilities during the time period and then identified anywhere recommendations or reports were issued. The staff member then pulled the responsive documents from Compliance's electronic complaint database, which is used to maintain all key records related to each complaint investigation.

10. To respond to the portion of the CRCL Report request for all communications sent by or received from CRCL concerning or in connection to any of the above complaints and investigations, and all records collected for or used in any of those complaints and investigations, the Compliance staff downloaded the full complaint file where relevant. Compliance's instruction to its staff members is to upload all key documents related to each investigation into the electronic complaint database, and Compliance relies on that database as the source of responsive documents. Compliance electronic database files often include both CRCL documents and documents obtained from other DHS offices or components.

11. To respond to the Mirimanian Request, a Compliance staff member who was knowledgeable about the request conducted a search of Compliance electronic records systems reasonably likely to contain responsive records.

12. In response to these FOIA requests, CRCL produced all responsive, non-exempt information that was identified by its searches and reasonably segregable from any information exempt from disclosure under one or more FOIA exemptions.

13. CRCL made eight productions in response to these FOIA requests, from February 7, 2022 through February 16, 2023. A supplemental production of material previously withheld in full was made on August 13, 2024. *See* attached Ex. A (CRCL Aug, 13, 2024 letter). The remainder of this declaration and the attached *Vaughn* index, which is Exhibit B, describe the records withheld in full or in part under one or more FOIA exemptions, and the reasons that those records are exempt from disclosure.

14. I have personally reviewed the Department's productions in this case, including the documents with contested Exemption withholdings that are addressed on the Department's *Vaughn* index.

### The Application of FOIA Exemption (b)(5)

15. FOIA Exemption (b)(5) protects from disclosure "inter-agency or intra-agency memorandums or letters that would not be available by law to a party . . . in litigation with the agency." 5 U.S.C. § 552(b)(5). Exemption (b)(5) exempts documents or information normally

4

privileged in the civil discovery context, and incorporates the attorney work product, attorney-client, and deliberative process privileges.

16. To apply Exemption (b)(5), agencies must first show that the information protected was "inter-agency or intra-agency." Such communications include, but are not limited to, e-mail communications, memoranda, correspondence, and expert reports.

17. The deliberative process privilege protects pre-decisional, deliberative communications that are part of a process by which agency decisions are made. It protects opinions, advice, evaluations, deliberations, proposals, or recommendations that form part of an agency decision-making process.

18. With respect to the deliberative process assertion, agencies must show that the withheld communication was (1) part of the process in which the agency engaged in an effort to reach a final decision (i.e., deliberative) and (2) preceded any final agency decision, regardless of whether a final decision was ever reached (i.e., pre-decisional).

19. As explained more fully on a document-by-document basis in the attached *Vaughn* index, the Department determined that the withheld information is pre-decisional and deliberative.

20. CRCL receives complaints from various stakeholders with allegations regarding civil rights and civil liberties violations involving DHS personnel, policies, and activities. CRCL reviews these allegations and deliberates whether to formally investigate the concerns, or take another action such as issue a response letter or close letter after annotating the complaint in CRCL's informational system. If it chooses to investigate the allegations, CRCL may commission one or more expert report to document an independent evaluation of the allegations in the complaint.

21. In the decisional process at issue here, CRCL will review one or more expert reports before preparing a recommendation memo that contains CRCL's recommendations concerning any allegations, findings, or best practices. CRCL's recommendations are then shared with the DHS component that was the subject of the investigation. Then CRCL and the

component begin an iterative process during which the recommendations are potentially refined based on additional information made available by the component.

22. In a recommendation memo, CRCL will, for example, request that ICE provide a response to CRCL whether it concurs or does not concur with its recommendations, and if it concurs, a proposed action plan for implementation. After issuing a recommendation memo, CRCL will continue to work with ICE to determine the best way to resolve the complaints, which involves the further exchange of deliberative communications between CRCL and DHS components.

23. Even with matters that are administratively closed, the matter remains active in that the respondent is still responding to certain recommendations and/or determining final implementation of certain CRCL recommendations in a memorandum. In such circumstances, the memorandum will be redacted to produce non-deliberative material, such as factual information and recommendation concurrences. Redacted material consists of CRCL recommendations that were partially or fully non-concurred with, or that continued to undergo further deliberations concerning the nature and details of respondent's final policy language and implementation. The redacted portions are an integral part of the deliberations, as they are part of the back-and-forth discussion of CRCL's policy recommendations made to the respondent.

24. Certain recommendations made by CRCL to a component are not concurred upon and require further deliberations and discussions. These recommendations are therefore not considered final and remain deliberative in nature and are redacted under FOIA Exemption (b)(5) as subject to the deliberative process privilege. All recommendations that are concurred with by a component are released.

25. In the Department's view, release of preliminary findings and recommendations poses a substantial risk of confusing the public as to any eventual final actions of the Department concerning the complaints in question, or the reasons for them. Disclosure of these records redacted under FOIA Exemption (b)(5) could also inhibitthe discussion of civil rights issues

within DHS, which would hinder the ability of DHS to be fully informed concerning the agency's ability to make informed decisions about such issues.

### The Application of FOIA Exemptions (b)(6) and (b)(7)(C)

26.     DHS applied FOIA Exemption (b)(6) to withhold and protect the names and contact information of lower-level DHS employees. These employees are not senior leaders, nor are these employees who make actions or decisions on behalf of the Department or provide statements that are subject to press coverage.  Disclosure of their names or contact information would constitute a clearly unwarranted invasion of the privacy of these employees.  Further, disclosure of these names and contact information would not shed any light on the functioning or operations of DHS.  Disclosure of their positions alone are sufficient in understanding the context of the communications and their role in shedding light on the functions and operations of DHS.  Thus, there is no public interest present in disclosing their names that outweighs their right to personal privacy.  Further, DHS personnel have a legitimate interest in having their personally identifiable information (PII) protected and withheld because they are associated with a Department that has multiple sensitive law enforcement and intelligence gathering missions.  Given the heightened risk and threats made against DHS personnel regardless of their duties or assignments in the Department, DHS personnel have a substantial privacy interest in their names and contact information and the balance leans toward withholding DHS personnel's names and contact information unless disclosure would shed light on how DHS performs its statutory duties and such disclosure would outweigh the privacy interest of the DHS employee or contractor

27.     DHS also applied FOIA Exemption (b)(6) to withhold and protect the names and Alien-numbers of detainees, as well as names and contact information of expert consultants from the private sector.  This is PII that DHS has an obligation to protect, it would be potentially harmful to the detainees and the subject matter experts if their PII was made public.  The public

7

1   has no significant interest in the withheld names and contact information, and certainly none that
2   is outweighed by the substantial privacy interests of the detainees and subject matter experts.
3          28.     A government agency is entitled to withhold information under Exemption 6
4   when the "information is contained in a personnel, medical, or similar file." *See United States*
5   *Dep't of State v. Wash. Post Co.*, 456 U.S. 595, 598 (1982).  The names and contact information
6   contained in CRCL's emails, memoranda, and expert reports fall within this category.
7   Additionally, disclosure of these individuals' names and contact information would constitute a
8   "clearly unwarranted invasion of personal privacy." 5 U.S.C. § 552(b)(6).  A court can only
9   authorize the disclosure of employees names when it weighs the public interest in disclosure with
10  the individual privacy concerns. *See Campaign Legal Ctr. v. Dep't of Justice*, 373 F.Supp.3d
11  160, 170 (D.D.C. 2019).  The Department has released the names of its managers and persons
12  with review authority (but not their contact information).
13         29.     FOIA Exemption (b)(7)(C) applies the lower standard of "could reasonably be
14  expected to constitute an unwarranted invasion of personal privacy."  The information for which
15  FOIA Exemption (b)(7)(C) has been asserted in the instant matter relates to DHS Immigration
16  Customs and Enforcement (ICE) agency personnel and their law enforcement partners in
17  detention centers.  ICE is the largest investigative arm of DHS and is responsible for identifying
18  and eliminating vulnerabilities within the nation's borders.  ICE is tasked with preventing any
19  activities that threaten national security and public safety by investigating the people, money,
20  and materials that support illegal enterprises.
21         30.     Both FOIA Exemptions (6) and (7(C) afford protection to the names, identifiable
22  information, telephone numbers, email addresses, physical addresses in law enforcement records.
23  Here the Department has applied Exemptions 6 and 7(C) to names of non-Senior Executive
24  Service personnel within ICE and law enforcement officers, but not to the names of managers at
25  DHS law enforcement agencies.

**The Application of FOIA Exemption (b)(7)(E)**

31. Exemption (b)(7)(E) applies to information that would disclose techniques and procedures for law enforcement investigations or prosecutions.

32. DHS databases that include information related to U.S. traveler examination criteria and techniques, U.S. border entry points, and national security indicators are subject to this exemption to protect information relating to homeland security.

33. CRCL asserts its (b)(7)(E) exemptions with references to DHS databases in its reports and documents, to protect homeland security interests.

Pursuant to 28 U.S.C. § 1746, I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct to the best of my knowledge and belief.

Dated this 16th day of August, 2024

_____
Rosemary Law

9