**GRANT & EISENHOFER P.A.**
Barbara J. Hart (*Pro Hac Vice*)
485 Lexington Ave., 29th Floor
New York, NY 10017
Tel: (646) 722-8512
bhart@gelaw.com

Ken S. Massey (*Pro Hac Vice*)
123 Justison St., 7th Floor
Wilmington, DE 19801
Tel: (302) 622-7000
kmassey@gelaw.com

**AL OTRO LADO, INC.**
Diego J. Aranda Teixeira  (Cal Bar No. 344956)
634 S. Spring St, Suite 908
Los Angeles, CA 90014
Tel: (253) 882-8071
diego@alotrolado.org

*Attorneys for Plaintiffs*

# UNITED STATES DISTRICT COURT
## CENTRAL DISTRICT OF CALIFORNIA
## WESTERN DIVISION

| | |
|---|---|
| TAMMY JANE OWEN as the Administrator of the Estate of Ben James Owen; AL OTRO LADO, INC.; and MIRAN MIRIMANIAN,<br><br>Plaintiffs,<br><br>v.<br><br>U.S. IMMIGRATION AND CUSTOMS ENFORCEMENT; and U.S. DEPARTMENT OF HOMELAND SECURITY – OFFICE FOR CIVIL RIGHTS AND CIVIL LIBERTIES,<br><br>Defendants. | Case 2:22-cv-00550-DSF-AJRx<br><br>**PLAINTIFFS' NOTICE OF MOTION AND CROSS-MOTION FOR SUMMARY JUDGMENT** |

1

1    <u>**NOTICE OF MOTION**</u>

2       PLEASE TAKE NOTICE THAT Plaintiffs Ben James Owen ("Ben"), Maria

3    Celeste Ochoa-Yoc De Ramirez ("Maria") and Gourgen Mirimanian ("Gourgen")

4    (collectively, "Plaintiffs"), by their attorneys, move this Court for an order granting

5    summary judgment in favor of Plaintiffs on all claims and against Defendants United

6    States Immigration and Customs Enforcement and United States Department of

7    Homeland Security Office for Civil Rights and Civil Liberties, and for such other and

8    further relief as this Court deems appropriate, pursuant to Fed. R. Civ. P. 56.

9    <u>**RELIEF SOUGHT**</u>

10       Plaintiffs request an Order granting Plaintiffs' Motion for Summary Judgment

11    in its entirety, dismissing Defendants' Motion for Summary Judgment in its entirety,

12    and for such other and further relief as the Court deems appropriate.

13

14    Date: September 13, 2024            Respectfully submitted,

15                                        */S/ Ken Massey*

16

17

18

19

20

21

22

23

24

25

26

27

28

# **TABLE OF CONTENTS**

**Page**

TABLE OF AUTHORITIES.................................................................................ii

I.     INTRODUCTION...............................................................................1

II.    THE PURPOSE OF THE FOIA ..........................................................1

III.   LEGAL STANDARD FOR SUMMARY JUDGMENT.......................3

IV.    ARGUMENT ......................................................................................4

    A.     DEFENDANTS FAILED TO CONDUCT AN ADEQUATE SEARCH ...................4

        1.     Defendants fail to meet their burden for the Mirimanian Request. 5

        2.     ICE fails to meet its burden for the Ochoa and Owen Requests....6

        3.     CRCL fails to meet its burden for the CRCL Report Request.......8

    B.     DEFENDANTS IMPROPERLY REDACTED MATERIALS .................................9

        1.     Exemption 5......................................................................10

        2.     Exemptions 6 and 7(C)......................................................14

        3.     Exemption 7(E)..................................................................18

    C.     CONCLUSION..................................................................................19

# <u>TABLE OF AUTHORITIES</u>

**Page(s)**

**Cases**

*A.C.L.U. v. D.O.J.*,
  655 F.3d 1 (D.C. Cir. 2011) ........................................................... 16, 18

*American Civil Liberties Union Foundation of Southern California v.*
  *U.S. Immigration and Customs Enforcement*,
  2024 WL 3370532 (C.D. Cal. July 8, 2024) ...................................... 13

*American Oversight v. Department of Homeland Security*,
  691 F.Supp.3d 109 (D.D.C. 2023) ........................................... 7, 13, 14

*Assembly of the State of Cal. v. Dep't of Commerce*,
  968 F.2d 916 (9th Cir. 1992) .............................................................. 12

*Cameranesi v. Dep't of Def.*,
  856 F.3d 626 (9th Cir. 2017) .............................................................. 16

*Celotex Corp. v. Catrett*,
  477 U.S. 317 (1986) ............................................................................. 3

*Civil Beat Law Ctr. for the Pub. Interest, Inc. v. CDC & Prevention*,
  929 F.3d 1079 (9th Cir. 2019) .............................................................. 1

*Coastal States Gas Corp. v. Dep't of Energy*,
  617 F.2d 854 (D.C. Cir. 1980) ........................................................... 14

*Codrea v. A.T.F.*,
  2022 WL 4182189 (D.D.C. Sept. 13, 2022) ...................................... 16

*DiBacco v. Army*,
  795 F.3d 178 (D.C. Cir. 2015) .......................................................... 6, 7

*Ecological Rights Found. v. FEMA*,
  2017 WL 5972702 (N.D. Cal. Nov. 30, 2017)................................... 10

*EPA v. Mink*,
  410 U.S. 73 (1973) ............................................................................... 1

*Forest Serv. Emps. for Env't Ethics v. Forest Serv.*,
   524 F.3d 1021 (9th Cir. 2008)................................................................ 16

*Gilmore v. Dep't of Energy*,
   33 F. Supp. 2d 1184 (N.D. Cal. 1998) ..................................................... 2

*Hall v. CIA*,
   881 F. Supp. 2d 38 (D.D.C. 2012) ....................................................... 6, 7

*Hamdan v. U.S. Dep't of Justice*,
   797 F.3d 759 (9th Cir. 2015).................................................................. 4, 5

*Human Rights Defense Center v. U.S. Dep't of Justice*,
   2024 WL 2302501 (W.D. Wash. May 21, 2024)................................. 15, 16

*Judicial Watch, Inc. v. U.S. Dep't of Commerce*,
   375 F. Supp. 3d 93 (D.D.C. 2019) ........................................................ 12

*Lion Raisins v. U.S. Dept. of Agriculture*,
   354 F.3d 1072 (9th Cir. 2004)................................................................... 4

*Minier v. Cent. Intelligence Agency*,
   88 F.3d 796 (9th Cir. 1996).................................................................... 10

*N.L.R.B. v. Sears, Roebuck & Co.*,
   421 U.S. 132 (1975) ................................................................................. 1

*National Resources Defense Council v. U.S. Dep't of Defense*,
   388 F.Supp.2d 1086 (C.D. Cal. 2005)...................................................... 3

*New Orleans Workers' Center for Racial Justice v. U.S. Immigration & Customs Enforcement*,
   373 F.Supp.3d 16 (D.D.C. 2019) ......................................................... 5, 9

*Reps. Comm. for Freedom of the Press v. Fed. Bureau of Investigation*,
   3 F.4th 350 (D.C. Cir. 2021) ................................................................. 12

*Rosenfeld v. U.S. Dept. of Justice*,
   57 F.3d 803 (9th Cir. 1995).................................................................... 18

*Schmidt v. U.S. Air Force*,
   2007 WL 2812148 (C.D. Ill. Sept. 20, 2007)......................................... 16

*Transgender Law Center v. U.S. Immigration and Customs Enforcement*
   46 F.4th 771 (9th Cir. 2022)................................................................. *passim*

*Truit v. Dep't of State*,
   897 F.2d 540 (D.C. Cir. 1990) ................................................................. 4

*Valencia-Lucena v. U.S. Coast Guard*,
   180 F.3d 321 (D.C. Cir. 1999) ........................................................... 4, 5

*Wessler v. U.S. Dep't of Justice*,
   381 F.Supp.3d 253 (S.D.N.Y. 2019)................................................... 17

*Zemansky v. U.S. EPA*,
   767 F.2d 569 (9th Cir. 1985)................................................... 3, 4, 5, 9

**Statutes**

5 U.S.C. § 552(a)(4)(B) ....................................................................... 3, 10

5 U.S.C. § 552(a)(8)(A)(i) ...................................................................... 12

5 U.S.C. § 552(b)(5) ............................................................................... 11

5 U.S.C. § 552(b)(6) ............................................................................... 15

5 U.S.C. § 552(b)(7)(C) .......................................................................... 16

5 U.S.C. § 552(b)(7)(E) .......................................................................... 18

FOIA Improvements Act .......................................................................... 12

Freedom of Information Act.............................................................. *passim*

## I.     INTRODUCTION

Tammy James Owen, as the Administrator of the Estate of Ben James Owen ("Owen"), Al Otro Lado, Inc. ("AOL"), and Miran Mirimanian ("Mirimanian") (collectively, "Plaintiffs"), through their undersigned counsel, move for summary judgment against Defendants U.S. Immigration and Customs Enforcement ("ICE") and the Office of Civil Rights and Civil Liberties' ("CRCL") (collectively, "Defendants") for their claims under the Freedom of Information Act ("FOIA" or the "Act"). Plaintiffs contemporaneously and separately submit their Opposition to Defendants' Motion for Summary Judgment, ECF no. 109 (the "Opposition"). Plaintiff incorporates the Opposition here as if fully stated herein, and specifically refers the Court to the Statement of Facts in the Opposition for factual and procedural background. Plaintiff further incorporates all of its Opposition's exhibits and affidavits.

## II.    THE PURPOSE OF THE FOIA

The FOIA "establish[es] a general philosophy of full agency disclosure unless information is exempted under clearly delineated statutory language." *N.L.R.B. v. Sears, Roebuck & Co.*, 421 U.S. 132, 136 (1975); *EPA v. Mink*, 410 U.S. 73, 79-90 (1973). "Without question, the [FOIA] is broadly conceived. It seeks to permit access to official information long shielded unnecessarily from public view and attempts to create a judicially enforceable public right to secure such information from possibly unwilling official hands." *Mink*, 410 U.S. at 80. The FOIA's broad conception of full governmental disclosure undergirds its "'core purpose …' which is 'contribut[ing] significantly to public understanding of the operations or activities of the government.'" *Civil Beat Law Ctr. for the Pub. Interest, Inc. v. CDC & Prevention*, 929 F.3d 1079, 1091 (9th Cir. 2019) (citing *U.S. Dep't of Def. v. Fed. Labor Relations Auth.*, 510 U.S. 487, 495 (1994)).

The purpose of FOIA is particularly relevant for cases involving the topic at hand—the investigation into the deaths of detainees seeking asylum while in federal

1    custody.  As the Ninth Circuit recently declared, "[a]t the heart of this case is an effort
2    by advocates to learn about the circumstances of an asylum-seeker's tragic death in
3    federal custody. The Freedom of Information Act exists for just such a purpose—to
4    ensure an informed citizenry, promote official transparency, and provide a check
5    against government impunity." *Transgender Law Center v. U.S. Immigration and*
6    *Customs Enforcement ("TLC")*, 46 F.4th 771, 777 (9th Cir. 2022).

7        Ensuring the public's timely access to government records was a particular focus
8    of Congress in enacting the FOIA. In fact, Congress specifically amended the FOIA to
9    address the most frequent complaint about its operation—agency delays in responding
10   to FOIA requests. *Gilmore v. Dep't of Energy*, 33 F. Supp. 2d 1184, 1185, 1187 (N.D.
11   Cal. 1998) ("Congress has repeatedly stressed the need for timely compliance with the
12   requirements of the FOIA."). "[I]nformation is often useful only if it is timely. Thus,
13   excessive delay by the agency in its response is often tantamount to denial.  It is the
14   intent of this bill that the affected agencies be required to respond to inquiries and
15   administrative appeals within specific time limits." *Id.*   "There can be no doubt that
16   Congress took these deadlines very seriously." *Id.*

17       The disclosure aims of the FOIA are particularly critical to educate the public
18   about the actions of its governmental agencies. Disclosure of detainee death records
19   will serve the public's interest educationally and will improve the health care services
20   provided to detainees—which will help prevent easily avoided deaths occurring due to
21   a lack of medical oversight. *See* Decl. of Dr. Joseph Nwadiuko, Ex. B to the
22   Opposition.  Dr. Nwadiuko is an internal medicine physician who has focused on
23   conditions of care in immigration detention. He has found that access to detainee health
24   records can prevent more than 95% of deaths in ICE custody. *See id.*, ¶ 3. Accordingly,
25   and in the absence of affirmative transparency from federal detention healthcare
26   authorities, court-ordered releases of ICE death records—such as those requested
27   here—are essential. *See id.*, ¶ 13.

28

1    Defendants' interpretation of Congress's mandate and timing structure, which

2    essentially posits that a FOIA requester can wait *years* for completion of a FOIA

3    request so long as the agency trickles out a handful of documents per month under a

4    timeline unilaterally set by Defendants, would render the requirements of Section

5    552(a)(3)(A) effectively meaningless.  This is not the intent of the FOIA, and

6    Defendants' interpretation should be rejected.

7    **III.    LEGAL STANDARD FOR SUMMARY JUDGMENT**

8    Summary judgment is appropriate when the moving party affirmatively

9    establishes that there is no genuine issue of material fact. *See Celotex Corp. v. Catrett,*

10    477 U.S. 317, 323 (1986). In deciding a motion for summary judgment, the Court must

11    view "the facts … in the light most favorable to the requestor." *Zemansky v. U.S. EPA*,

12    767 F.2d 569, 571 (9th Cir. 1985). "Summary judgment is the procedural vehicle by

13    which nearly all FOIA cases are resolved." *National Resources Defense Council v.*

14    *U.S. Dep't of Defense*, 388 F.Supp.2d 1086, 1094 (C.D. Cal. 2005) (citation omitted).

15    In 2022, the Ninth Circuit clarified that an agency's "precise burden of proof" at

16    the summary judgment stage is to demonstrate "beyond material doubt" that its search

17    was "reasonably calculated to uncover all relevant documents." *Transgender Law*

18    *Center*, 46 F.4th at 779 (finding ICE had failed its burden). This burden "appropriately

19    reflects the purpose and policy of FOIA, including transparency, public access, and an

20    informed citizenry." *Id.* (citing *NLRB v. Robbins Tire & Rubber Co.*, 437 U.S. 214,

21    242 (1978) ("The basic purpose of FOIA is to ensure an informed citizenry, vital to the

22    functioning of a democratic society, needed to check against corruption and to hold the

23    governors accountable to the governed."). Defendants bear this burden

24    notwithstanding the fact that Plaintiffs have also moved for partial summary judgment.

25    *See* 5 U.S.C. § 552(a)(4)(B).

26

27

28

## IV.    ARGUMENT

### A.    DEFENDANTS FAILED TO CONDUCT AN ADEQUATE SEARCH

Plaintiffs should be granted summary judgment because the materials the agencies have produced fail to meet their prima facie burden of showing, beyond a material doubt, that they "conducted a search reasonably calculated to uncover *all* relevant documents." *Hamdan v. U.S. Dep't of Justice*, 797 F.3d 759, 770 (9th Cir. 2015) (emphasis added). In doing so, Defendants are required to construe FOIA requests liberally. *Truit v. Dep't of State*, 897 F.2d 540, 544-45 (D.C. Cir. 1990).

To assess the adequacy of a government agency's search for FOIA requested documents, the Ninth Circuit applies a reasonableness standard. In order to conduct an "adequate search" as required by the FOIA, the agency must:

> [d]emonstrate that it has conducted a "search reasonably calculated to uncover all relevant documents."  Further, the issue to be resolved is not whether there might exist any other documents possibly responsive to the request, but rather whether the *search* for those documents was *adequate*. The adequacy of the search in turn is judged by a standard of reasonableness and depends, not surprisingly, upon the facts of each case. In demonstrating the adequacy of the search, the agency may rely upon reasonably detailed, nonconclusory affidavits submitted in good faith.

*Zemansky*, 767 F.2d at 571 (quoting *Weisberg*, 745 F.2d at 1485) (emphasis in original). Because "the fundamental principle animating FOIA is public access to government documents," agencies responding to FOIA requests must "make more than perfunctory searches and, indeed, follow through on obvious leads to discover requested documents." *Valencia-Lucena v. U.S. Coast Guard*, 180 F.3d 321, 325 (D.C. Cir. 1999). The agency "cannot limit its search" to one or more places if there are additional sources that are likely to turn up the information requested." *Id*. (quoting *Oglesby v. Dep't of the Army*, 920 F.2d 57, 68 (D.C. Cir. 1990)).

"In demonstrating the adequacy of the search, the agency may rely upon reasonably detailed, nonconclusory affidavits submitted in good faith," *Zemansky*, 767

1  F.2d at 571 (quoting *Weisberg*, 745 F.2d at 1485), which "set[s] forth the search terms

2  and type of search performed, and averring that all files likely to contain responsive

3  materials … were searched." *New Orleans Workers' Center for Racial Justice v. U.S.*

4  *Immigration & Customs Enforcement*, 373 F.Supp.3d 16, 31 (D.D.C. 2019) (citing

5  *Iturralde v. Comptroller of Currency*, 315 F.3d 311, 313–14 (D.C. Cir. 2003)); *see also*

6  *Hamdan*, 797 F.3d at 771 (noting agency used "many variations of the terms suggested

7  by Plaintiffs" in their search). "The plaintiff may then provide countervailing evidence

8  as to the adequacy of the agency's search." *Id*. at 314 (quotation omitted).

9      In *Transgender Law Center v. ICE*, the Ninth Circuit denied summary judgment

10  to Defendants because TLC provided the agencies with both 'well-defined requests'

11  and 'positive indications of overlooked materials,' as well as 'leads that emerge[d]

12  during [the agencies'] inquiry.'" 46 F.4th at 780 (citations omitted). By failing to

13  follow up on the "new leads and indications of overlooked material," which included

14  custodian email accounts and a description of an agency visit to the detention facility

15  at issue, the court concluded that "the agencies have not met their burden of

16  demonstrating adequacy beyond material doubt." *Id*. at 781.

17          **1.    Defendants fail to meet their burden for the Mirimanian**

18          **Request**

19      As both agencies fail to establish that they conducted an adequate search by

20  making reasonable efforts to obtain all responsive records, summary judgment should

21  be awarded to Plaintiffs. *See Hamdan*, 797 F.3d at 770 (agencies' burden is to

22  demonstrate they "conducted a search reasonably calculated to uncover all relevant

23  documents"). For ICE, the Pineiro Affidavit states that "ICE FOIA sent a tasking to

24  ERO and IHSC, which similarly followed their standard practices, relying on their

25  expertise and knowledge of their own records to conduct a thorough search for

26  responsive records."  *See* Pineiro Aff., ¶ 33. ICE states that those "standard practices"

27  are "thorough," but does not aver that it searched for all relevant records.

28

**PLAINTIFFS' MOTION FOR SUMMARY JUDGMENT**

CRCL similarly fails to establish in its own affidavit that it searched for **all** relevant records, averring only that "a Compliance staff member … conducted a search of Compliance electronic records systems reasonably likely to contain responsive records." *See* Law Aff. at ¶ 11. But the FOIA requires more than searches that are "reasonably likely" to contain records—an agency is obligated to conduct a search which will "uncover all relevant documents." *TLC*, 46 F.4th at 780; *DiBacco v. Army*, 795 F.3d 178, 190 (D.C. Cir. 2015) ("[Requester] is correct that 'most likely' is not the relevant metric."); *Hall v. CIA*, 881 F. Supp. 2d 38, 58 (D.D.C. 2012) ("a search of the systems 'most likely' to contain responsive records does not satisfy FOIA, because systems that are not the 'most likely' to contain documents may still be likely to contain responsive documents"). Both agencies fail to aver in their affidavits that they searched for all relevant records—thereby failing to meet their prima facie burden.

Even more troublingly, CRCL has failed to produce **any** materials responsive to the Mirimanian Request—even though it identified at least one document referring to Gourgen's death. *See* Massey Aff. (Ex. A to the Opposition). In describing its production, CRCL's affidavit broadly states that its productions were "in response to *these* FOIA requests" without identifying any specific materials produced in response to the Mirimanian Request. *See* Law Aff. at ¶ 13 (emphasis added). The CRCL *Vaughn* index also fails provide any explanation of its searches. By failing to explain its search methods and aver that it searched for all relevant records, CRCL cannot demonstrate beyond material doubt that it conducted an adequate search.

### 2.    ICE fails to meet its burden for the Ochoa and Owen Requests

For both the Ochoa and Owen Requests, ICE's affidavit, by its own terms, fails to establish that the agency searched for all responsive records. For the Ochoa Request, the Pineiro Affidavit states "ICE FOIA sent a tasking to ERO and IHSC" but that each sub-agency searched only those offices that "would most likely possess responsive records." *See* Pineiro Aff., ¶ 32. As discussed *supra*, a search for the "most likely"

1   sources of records are not the correct standard—the agencies must conduct a search for

2   all records. *See TLC*, 46 F.4th at 780; *DiBacco*, 795 F.3d at 190; *Hall*, 881 F. Supp. 2d

3   at 58. ICE states that those "standard practices" are "thorough," but does not aver that

4   it searched for all relevant records. Similarly, for the Owen Request, the affidavit states

5   that ICE "sent a tasking to ERO and IHSC"—but fails to aver that the ERO Miami

6   office, the ERO Executive Information Unit, and CM searched for all relevant records

7   (or even that those offices were most likely to possess the relevant records). *See id*., ¶

8   33. For both searches, ICE failed its burden to demonstrate beyond a reasonable

9   material doubt that it conducted a reasonable search for all relevant materials.

10          ICE also cannot meet its burden because it decided not to make reasonable

11  efforts to use consistent search terms, as discussed in Plaintiff's Opposition. ICE's

12  production also demonstrates that the agency failed to produce ***all*** records responsive

13  to these requests. For the Ochoa request, the production includes drafts of health and

14  security compliance analyses dated April 8, 2020 and July 29, 2020 which each contain

15  numerous comment bubbles—but fails to include the final analyses as transmitted on

16  July 26, 2020 and November 6, 2020, respectively. *See* Massey Aff., ¶ 6. Similarly,

17  ICE produced partial draft summaries of Maria's medical condition dated March 6,

18  2020, but failed to include the final summary as transmitted on March 8, 2020. *See id*.

19  For the Owen Request, the production also includes drafts of health and security

20  compliance analyses dated February 11, 2020 and April 2020, but fails to include the

21  final analyses as transmitted on March 11, 2020 and August 10, 2020, respectively. *See*

22  *id*. The record at this stage demonstrates there are ample missing records, making

23  summary judgment on the Ochoa and Owen Requests plainly inappropriate.

24          Defendants have also failed to conduct a search for all relevant records with

25  respect to all of the FOIA Requests by avoid searches of private detention facilities. As

26  a channeling provision, 8 C.F.R. § 236.6 cannot be used to render detainee records *per*

27  *se* inaccessible because the regulation draws its power from the Housekeeping statute

28

1   and not just the power to detain. Titled "Information about detainees", 8 C.F.R. § 236.6,

2   the scope of the regulation is expansive: any information about detainees in private

3   detention under ICE/DHS custody, whether in document form or otherwise, is

4   explicitly under ICE/DHS control and therefore agency records. Since ICE/DHS must

5   adhere to the Housekeeping statute and their own statutory authority that allowed for

6   promulgation of the regulation, this provision is a channeling provision: it simply

7   allows ICE and DHS to channel the method of release of information out of state hands

8   and into federal ones through FOIA.

9       **3.    CRCL fails to meet its burden for the CRCL Report Request**

10         Summary judgment for the CRCL Report Request is improper because the

11   agency has not established that it conducted an adequate search by making reasonable

12   efforts to obtain all responsive records. In an attempt to meet its prima facie burden,

13   CRCL highlights that it produced two documents identified in the CRCL Request. *See*

14   Mot. at 6. This does not support CRCL's assertion that there "can be no question as to

15   the adequacy of that portion of its search," particularly after reviewing the Law

16   Affidavit. Mot. at 6-7. The Law Affidavit states that CRCL used certain search terms

17   in searching for recommendations or reports, but fails to identify those search terms.

18   *See* Law Aff. at ¶¶ 8-9. It also avers that "a Compliance staff member who was

19   knowledgeable about the request conducted a search of Compliance electronic records

20   system reasonably likely to contain responsive records," but does not explain which

21   individuals the affiant communicated with or where precisely was searched. *Id*. The

22   Law Affidavit also notes that the "Compliance staff downloaded the full complaint file

23   where relevant," but fails to explain when the file would be "relevant" and whether any

24   responsive hits were deemed irrelevant. *See id*. at ¶ 10. By omitting the search terms

25   used and other key details about the search methods, the Law Affidavit is not

26   "reasonably detailed." *Zemansky*, 767 F.2d at 571; *New Orleans Workers' Center for*

27   *Racial Justice*, 373 F.Supp.3d at 31.

28

1    CRCL also fails to meet its burden by not producing expert reports and
2    recommendations regarding the Richwood Correctional Facility, as requested by AOL.
3    *See* Massey Aff. ¶ 9. Even though other produced records refer to reports about the
4    Richwood Correctional Facility, *see id.*, CRCL failed to follow up on these "new leads
5    and indications of overlooked material." *TLC*, 46 F.4th at 781.

6    Finally, CRCL has failed to provide records reflecting its correspondence with
7    ICE, as referenced in its affidavit. *See* Law Aff., ¶¶ 5-9. CRCL avers that it provides
8    "investigatory reports, expert review reports, and formal recommendations or informal
9    advice to DHS agencies such as ICE and CBP," *id.* at ¶ 5, but it has failed to produce
10    any responses by ICE to CRCL's recommendations or replies by CRCL to ICE's
11    responses. CRCL also fails to include any such materials in its *Vaughn* index.

12    **B.    DEFENDANTS IMPROPERLY REDACTED MATERIALS**

13    Defendants have withheld or redacted hundreds of pages of records in response
14    to the FOIA Requests. Their boilerplate, conclusory *Vaughn* index and supporting
15    affidavits insufficiently explain the bases for their production omissions—and doom
16    their attempt to win summary judgment. The FOIA provides a strong presumption in
17    favor of disclosure and exemptions are to be "construed narrowly." *TLC*, 46 F.4th at
18    782 (citing *Dep't of Just. v. Julian*, 486 U.S. 1, 8 (1988)). Government agencies bear
19    the burden of proof to show that any withheld documents are properly exempt from
20    disclosure. 5 U.S.C. § 552(a)(4)(B); *TLC*, 46 F.4th at 782; *Minier v. Cent. Intelligence*
21    *Agency*, 88 F.3d 796, 800 (9th Cir. 1996).

22    To satisfy their production burden, Defendants are required to submit a *Vaughn*
23    index with "'detailed public affidavits' that, together, 'identify [ ] the documents
24    withheld, the FOIA exemptions claimed, and a particularized explanation of why each
25    document falls within the claimed exemption.'" *Ecological Rights Found. v. FEMA*,
26    2017 WL 5972702, *3 (N.D. Cal. Nov. 30, 2017) (quoting *Yonemoto*, 686 F.3d at 688).
27    A *Vaughn* index is a submission that "identif[ies] the documents withheld, the FOIA
28

1    exemptions claimed, and a particularized explanation of why each document falls
2    within the claimed exemption." *TLC*, 46 F.4th at 781. It must explain how the
3    information withheld "logically falls within the claimed exemptions, and show that the
4    justifications are not controverted by contrary evidence in the record or by evidence of
5    [agency] bad faith." *Id.* (citing *Hunt v. CIA*, 981 F.2d 1116, 1119 (9th Cir. 1992)).
6    "Specificity is the defining requirement of the *Vaughn* index." *Id.* (citing *Wiener v.*
7    *FBI*, 943 F.2d 972, 979 (9th Cir. 1991)).

8        Both the *Vaughn* index and agency declarations must be from "'affiants who are
9    knowledgeable about the information sought' and 'detailed enough to allow a court to
10   make an independent assessment of the government's claim of exemption.'"
11   *Ecological Rights Found.,* 2017 WL 5972702 at *3 (quoting *Yonemoto*, 686 F.3d at
12   688); *see also* 5 U.S.C. § 552(a)(4)(B). Defendants cite caselaw that the government's
13   *Vaughn* index and affidavits are presumed to be in good faith, Mot. at 5-6, but any such
14   presumption cannot apply here where Defendants have waited years to complete their
15   production—and took nearly 18 months since the January 2023 Order in which the
16   Court stated it expected the production to be done within a few months.

17       ICE's *Vaughn* index is seven pages and identifies seven categories of withheld
18   records—all citing Exemption 7(E) as the sole basis for withholding. *See* ECF no. 110-
19   4. In ICE's affidavit, however, the agency describes numerous other records withheld
20   under Exemptions 5, 6, and 7(C). *See* Pineiro Aff., ¶¶ 38-60. By failing to list all
21   withheld records in the *Vaughn* index, along with a particularized explanation for each
22   document, ICE fails to meet its prima facie burden at the summary judgment stage.
23   Other fatal deficiencies with ICE's *Vaughn* index and that of CRCL are discussed
24   below.

25       **1.    Exemption 5**

26       Exemption 5 of the FOIA concerns "inter-agency or intra-agency memorandums
27   or letters that would not be available by law to a party other than an agency in litigation

28

with the agency ....” 5 U.S.C. § 552(b)(5). “This allows agencies to withhold privileged information, including documents revealing an agency’s deliberative process and confidential attorney-client communications.” *TLC*, 46 F.4th at 782-83 (citing *Dep’t of Interior v. Klamath Water Users Protective Ass’n*, 532 U.S. 1, 8 (2001)).

“To properly assert this privilege, an agency must show that a document is both (1) ‘predecisional’ or ‘antecedent to the adoption of agency policy’ and (2) ‘deliberative,’ meaning ‘it must actually be related to the process by which policies are formulated.’” *TLC*, 46 F.4th at 783 (citing *Nat’l Wildlife Fed’n v. Forest Serv.*, 861 F.2d 1114, 1117 (9th Cir. 1988)). “A document is ‘predecisional’ if it was ‘prepared in order to assist an agency decisionmaker in arriving at his decision.’” *Id.* (quoting *Renegotiation Bd. v. Grumman Aircraft Eng’g Corp.*, 421 U.S. 168, 184 (1975)). “A document is ‘deliberative’ if ‘disclosure of materials would expose an agency’s decision-making process in such a way as to discourage candid discussion within the agency and thereby undermine the agency’s ability to perform its functions.’” *Id.* (quoting *Assembly of the State of Cal. v. Dep't of Commerce*, 968 F.2d 916, 921 (9th Cir. 1992)).

In 2016, the FOIA Improvements Act amended FOIA’s exemptions (including Exemption 5) to codify the government’s “foreseeable harm” standard for the withholding of requested information. Agencies must now withhold information under FOIA “only if the agency reasonably foresees that disclosure would harm an interest protected by an exemption” or “disclosure is prohibited by law.” 5 U.S.C. § 552(a)(8)(A)(i). Congress passed the act “in part out of ‘concerns that some agencies [were] overusing FOIA exemptions that allow, but do not require, information to be withheld from disclosure.’” *Reps. Comm. for Freedom of the Press v. Fed. Bureau of Investigation*, 3 F.4th 350, 369 (D.C. Cir. 2021) (quoting S. Rep. No. 4, 114th Cong., 1st Sess. 2 (2015)). The foreseeable-harm requirement is not a perfunctory regulation but “impose[s] an independent and meaningful burden on agencies.” *Id.; see also*

1    *Judicial Watch, Inc. v. U.S. Dep't of Commerce*, 375 F. Supp. 3d 93, 100 (D.D.C. 2019)

2    (foreseeable-harm requirement is a "heightened standard"). "Satisfying that burden

3    requires more than the assertion of "speculative or abstract fears, ... fear of

4    embarrassment," or "generalized assertions" of harm. *Reps. Comm. for Freedom of the*

5    *Press*, 3 F.4th at 372. "Instead, what is needed is a focused and concrete demonstration

6    of why disclosure of the particular type of material at issue will, in the specific context

7    of the agency action at issue, actually impede" agency decision making or harm agency

8    interests. *Id.* at 370.

9        ICE fails to meet its burden to demonstrate the withheld materials' predecisional

10   and deliberative nature. ICE identifies numerous drafts and related materials as

11   "undated," *see* Massey Aff. (Ex. A), ¶ 10, which fails to establish that such materials

12   are genuinely predecisional or were instead "postdecisional" which "do not enjoy the

13   protection of the deliberative process privilege." *Assembly of State of Cal. v. U.S. Dept.*

14   *of Commerce*, 968 F.2d 916, 920 (9th Cir. 1992). Additionally, ICE inconsistently

15   redacts some recommendations under the deliberative process privilege, but not other

16   recommendations which appear to be similar. *See* Massey Aff. (Ex. A), ¶ 11. In doing

17   so, ICE undermines its contentions that certain recommendations are deliberative, the

18   release of which would cause foreseeable harm.

19       ICE also fails to establish foreseeable harm. For materials concerning "draft

20   documents and related materials exchanged in the course of preparing memoranda,

21   reports, and summaries regarding the deaths of certain detainees in ICE custody," ICE

22   identifies only the generic harms that disclosure would "chill[] agency discussion" and

23   "creat[e] confusion regarding what facts have actually been established and what

24   recommendations have actually been adopted by the agency." Mot. at 11. This court

25   has recently denied ICE summary judgment based on the same issues, declining to

26   protect certain Memoranda of Activity ("MOA") regarding the deaths of two detainees

27   from disclosure under Exemption 5 after ICE claimed the disclosure would have a

28

**PLAINTIFFS' MOTION FOR SUMMARY JUDGMENT**

1    "chilling effect" agency communications and would lead to "public confusion." *See*

2    *American Civil Liberties Union Foundation of Southern California v. U.S.*

3    *Immigration and Customs Enforcement*, 2024 WL 3370532, at *8 (C.D. Cal. July 8,

4    2024). The court found the "cookie-cutter" justifications lacked any explanation as to

5    "why actual harm would foreseeably result from the release of the specific type of

6    material at issue here." *Id.* at *8. ICE's Exemption 5 defenses here must fail for the

7    same reason. *See also American Oversight v. Department of Homeland Security*, 691

8    F.Supp.3d 109, 117 (D.D.C. 2023) (ICE's explanations that disclosure "would only

9    serve to confuse the public" and "discourage the expression of candid opinions …

10   between agency personnel" were impermissibly general and untethered to any

11   particular materials).

12        For many other materials responsive to Mirimanian, Ochoa, and Owen, ICE and

13   CRCL claim the deliberative process but offer no statement justifying application of

14   Exemption 5. *See* Massey Aff. (Ex. A), ¶ 12. Reliance on boilerplate objections that

15   fail to tether the exemption with the particular document renders summary judgment

16   inappropriate. *See American Oversight*, 691 F.Supp.3d at 117 ("Indeed, ICE never

17   tethers its concerns to these particular documents.").

18        CRCL asserts that it withheld under the deliberative process privilege tentative

19   findings and recommendations from expert reports and related emails. Mot. at 13.

20   CRCL fails to meet its summary judgment burden, however, by insufficiently

21   explaining the purported foreseeable harm—and by repeating the same formulaic

22   justification. For instance, *20* records in CRCL's *Vaughn* index simply describe the

23   Exemption 5 redaction as follows: "These were reviewed by ICE but were not

24   concurred with by ICE and thus remain deliberative. All observations and

25   recommendations that were concurred with by ICE were released." ECF no. 111-2.

26   These records pertain to topics ranging from the water quality at the Winn facility to

27   lack of medical care after a pepper spray incident to use of force incidents. *See* Massey

28

**PLAINTIFFS' MOTION FOR SUMMARY JUDGMENT**

1    Aff. (Ex. A), ¶ 13. Such "generalized assertions" that ICE did not concur with the

2    recommendations do not meet the agency's burden for the deliberative process

3    privilege. *American Oversight*, 691 F.Supp.3d at 117.

4         Defendants' Motion misstates the standard for drafts as "commonly" meeting

5    the requirements for the deliberative process privilege. Mot. at 12 (citing *Coastal States*

6    *Gas Corp. v. Dep't of Energy*, 617 F.2d 854 (D.C. Cir. 1980) and others). *Coastal*

7    *States Gas* emphasized that a draft can "lose [its predecisional] status if it is adopted,

8    formally or informally, as the agency position on an issue or is used by the agency in

9    its dealings with the public." 617 F.2d at 866. CRCL improperly withheld or redacted

10   numerous communications with ICE as deliberative, stating that because ICE did not

11   concur with them that they remain deliberative. All observations and recommendations

12   that were concurred with by ICE were released. But in its affidavit, CRCL makes no

13   averments as to whether the expert report materials were ever adopted by the agency

14   or used in communications with the public. *See* Massey Aff. (Ex. A), ¶ 14.

15        Finally, CRCL seeks to indefinitely extend the period in which matters are

16   considered "active" and fall under the deliberative process privilege. CRCL's affidavit

17   states that "[e]ven with matters that are administratively closed, the matter remains

18   active in that the respondent is still responding to certain recommendations …. [i]n

19   such circumstances, the memorandum will be redacted to produce nondeliberative

20   material, such as factual information and recommendation concurrences." Law Aff., ¶

21   23. Extending the active life of such investigations when they have already been

22   pending for three years is flatly unreasonable. Moreover, CRCL provided no

23   communications or other records indicating that the investigations at issue were still

24   pending.

25        **2.    Exemptions 6 and 7(C)**

26        Exemption 6 applies to "personnel and medical files and similar files the

27   disclosure of which would constitute a clearly unwarranted invasion of personal

28

privacy." 5 U.S.C. § 552(b)(6). The Ninth Circuit has adopted "'a two-step test for balancing individual privacy rights against the public's right of access' under Exemption 6, which begins with a threshold evaluation of whether the personal privacy interest at stake 'is nontrivial.'" *TLC*, 46 F.4th at 783-84 (citing *Cameranesi v. Dep't of Def.*, 856 F.3d 626, 637 (9th Cir. 2017)). This threshold is not satisfied if the information does not apply to "particular individuals." *Id.* (citing *Forest Serv. Emps. for Env't Ethics v. Forest Serv.*, 524 F.3d 1021, 1024 (9th Cir. 2008)); *see also Human Rights Defense Center v. U.S. Dep't of Justice*, 2024 WL 2302501, at *5 (W.D. Wash. May 21, 2024) ("Exemption 6 was intended to cover detailed Government records on an individual which can be identified as applying to that individual. Information unrelated to any particular person presumably would not satisfy the threshold test.") (quotations omitted).

If the agency demonstrates that the privacy interest is nontrivial, the second step turns to the public's interest: "the requester 'must show that the public interest sought to be advanced is a significant one and that the information [sought] is likely to advance that interest.'" *Cameranesi*, 856 F.3d at 637 (quoting *Lane v. Dep't of Interior*, 523 F.3d 1128, 1137 (9th Cir. 2008)). The public interest is significant if "disclosure of the information sought would shed light on an agency's performance of its statutory duties or otherwise let citizens know what their government is up to." *Human Rights Defense Center*, 2024 WL 2302501 at *5 (citing *Bibles v. Oregon Nat. Desert Ass'n*, 519 U.S. 355, 355–56 (1997)).

Exemption 7(C) concerns "records or information compiled for law enforcement purposes, but only to the extent that the[ir] production ... could reasonably be expected to constitute an unwarranted invasion of personal privacy." 5 U.S.C. § 552(b)(7)(C). Like Exemption 6, the second step of the analysis weighs the public's interest in disclosure. "The balancing of public and private interests under Exemption 6 mirrors that which applies under Exemption 7(C)." *Forest Service Employees for*

1    *Environmental Ethics v. U.S. Forest Service*, 524 F.3d 1021, 1025 (9th Cir. 2008).

2    While "Exemption 7(C) is 'more protective of privacy' than Exemption 6 … the only

3    distinction between the balancing tests applied to them is the 'magnitude of the public

4    interest' required to override the respective privacy interests they protect." *Id*.

5         Defendants improperly categorize the privacy rights of personnel found culpable

6    for wrongdoing (falsifying logs and medical records, destroying evidence, covering up

7    essential facts about people who died) with those not accused. *See* Massey Aff., ¶ 15.

8    But the privacy rights of those accused of wrongdoing are diminished under Exemption

9    6. *See Lahr v. National Transp. Safety Bd*., 569 F.3d 964, 977 (9th Cir. 2009) ("We

10   have held that an investigator's privacy interest may be reduced when there are doubts

11   about the integrity of his efforts."). This is due to the public's strong interest in knowing

12   about governmental misconduct. *Human Rights Defense Center* v, 2024 WL 2302501,

13   at *14.

14        The significant public interest in disclosure of these records is illustrated by

15   widespread reporting on deaths of ICE detainees while in government custody. Courts

16   have held that media attention evinces a significant public interest in disclosure. *See*

17   *A.C.L.U. v. D.O.J.*, 655 F.3d 1, 12-13 (D.C. Cir. 2011) (widespread media attention

18   demonstrated public interest); *Codrea v. A.T.F.*, 2022 WL 4182189, at *9 (D.D.C.

19   Sept. 13, 2022) (finding significant public interest where incident had been subject of

20   media and congressional attention); *Schmidt v. U.S. Air Force*, 2007 WL 2812148, at

21   *11 (C.D. Ill. Sept. 20, 2007) (finding public interest where FOIA request concerned

22   incident that garnered "significant public and media attention"). Deaths of individuals

23   while in government custody is of particular interest to the public and militates against

24   the use of FOIA exemptions against their disclosure. *See Wessler v. U.S. Dep't of*

25   *Justice*, 381 F.Supp.3d 253, 260 (S.D.N.Y. 2019) ("the fact that articles have been

26   published on the topic by national media outlets" demonstrated there was "significant

27

28

1  public interest in the release" of medical records of federal pretrial detainees who died

2  in the custody of the U.S. Marshals).

3     There has been widespread reporting about the deaths of Ben, Maria, and

4  Gourgen.[1] *See also* Complaint, ECF no. 58, ¶¶ 66-70. The media has also more broadly

5  investigated and reported on the deaths of detainees while in ICE custody.[2]

6  Additionally, Dr. Nwadiuko has found that complete disclosure in response to the

7  FOIA Requests "will further the public's interest in knowing how the federal

8  government spends billions of taxpayer detention funds by enhancing the ability of

9  trained professionals such as myself to critically, candidly, and objectively review the

10  care people in custodial settings received before they died and make recommendations

11  aimed at implementing systems-level changes our research demonstrates could reduce

12  death and suffering. *See* Aff. of Dr. Joseph Nwadiuko (Ex. B), ¶ 3. Disclosure of the

13  records sought by the FOIA Requests "would inform this ongoing public policy

14  discussion by shedding light on" how the military detects service members at risk of

15  suicide and addresses this public health crisis. *See A.C.L.U.*, 655 F.3d at 13.

16

17  [1] *See e.g.*, Hamed Aleaziz, A British Man Has Become The Fifth Immigrant to Die in ICE Custody

18  Since October, BUZZFEED NEWS, Jan. 27, 2020, https://www.buzzfeednews.com/article/hamedaleaziz/british-immigrant-dies-ice-custody; Camilo

19  Montoya-Galvez, Death of British Immigrant Marks Third Apparent Suicide in ICE Custody in 4 Months, CBS NEWS, Jan. 27. 2020, https://www.cbsnews.com/news/death-of-british-immigrant-

20  marks-third-apparent-suicide-in-ice-custody-in-4-months/; Bev Holder, Wife's Heartbreak After

21  Ben Owen Dies in US Detention Centre, DUDLEY NEWS, Jan. 6, 2020, https://www.dudleynews.co.uk/news/18213064.wifes-heartbreak-ben-owen-dies-us-detention-

22  centre/; Daniella Silva, Guatemalan Woman Dies in ICE Custody in Texas, Eighth Death Since October, NBC NEWS, March 10, 2020, (https://www.nbcnews.com/news/us-news/guatemalan-

23  woman-dies-ice-custody-texas-eighth-death-october-n1154136); Dianne Solis and Imelda Garcia, Guatemalan Asylum-Seeker Dies in ICE Custody in Fort Worth Hospital, Mar. 10, 2020,

24  https://www.dallasnews.com/news/2020/03/10/guatemalan-asylum-seeker-dies-in-ice-custody-in-fort-worth-hospital/.

25  [2] *See e.g.*, Cathrin E. Shoichet, The death toll in ICE custody is the highest it's been in 15 years,

26  CNN, Sept. 30, 2020, https://www.cnn.com/2020/09/30/us/ice-deaths-detention-2020/index.html; Grace Vitaglione & Sammy Sussman, Families, activists, ACLU question ICE's accounting of

27  deaths in detention, IRW: Investigative Reporting Workshop, Nov. 15, 2021,

28  https://investigativereportingworkshop.org/investigation/dying-in-silence/.

**PLAINTIFFS' MOTION FOR SUMMARY JUDGMENT**

### 3.    Exemption 7(E)

Exemption 7(E) also concerns "records or information compiled for law enforcement purposes, but only to the extent that the production of such law enforcement records or information ... would disclose techniques and procedures for law enforcement investigations or prosecutions, or would disclose guidelines for law enforcement investigations or prosecutions if such disclosure could reasonably be expected to risk circumvention of the law." 5 U.S.C. § 552(b)(7)(E). "The requirement that the Government show that disclosure 'could reasonably be expected to risk circumvention of the law' applies only to guidelines for law enforcement investigations or prosecutions, not to techniques and procedures." *TLC*, 46 F.4th at 784 (citing *Hamdan*, 797 F.3d at 778). "'[G]uidelines' refer to how the agency prioritizes its investigative resources, while 'techniques and procedures' cover 'how law enforcement officials go about investigating a crime.'" *Id*. at 784-85 (quoting *Anguiano v. ICE*, 356 F. Supp. 3d 917, 923–24 (N.D. Cal. 2018)). Investigative techniques are only exempt where they are "not generally known to the public." *Rosenfeld v. U.S. Dept. of Justice*, 57 F.3d 803, 815 (9th Cir. 1995).

Defendants inappropriately withheld "law enforcement database" information pursuant to Exemption 7(E).  *See* Massey Aff., ¶ 16. The withholding of such law enforcement database information is "overbroad." *TLC*, 46 F.4th at 785. Defendants' *Vaughn* index and supporting affidavits fail to specifically describe how the below exemptions to the FOIA overcome the strong presumption in favor of disclosure.

**C.    CONCLUSION**

WHEREFORE, for all of the foregoing reasons, the Court should GRANT Plaintiff's Motion for Summary Judgment in its entirety and grant such other and further relief as the Court deems appropriate.

Respectfully submitted,

Dated:  September 13, 2024

By: */s/ Ken Massey*
Ken S. Massey (*pro hac vice*)
**GRANT & EISENHOFER P.A.**
123 S. Justison St., Suite 7000
Wilmington, DE 19801
Tel: 302-622-7000
kmassey@gelaw.com

Barbara J. Hart (*Pro Hac Vice*)
**GRANT & EISENHOFER P.A.**
485 Lexington Ave, 29th Floor
New York, NY 10017
Tel: (646) 722-8512
bhart@gelaw.com

Diego J. Aranda Teixeira  (Cal Bar No. 344956)
634 S. Spring St, Suite 908
Los Angeles, CA 90014
Tel: (253) 882-8071
diego@alotrolado.org

**PLAINTIFFS' MOTION FOR SUMMARY JUDGMENT**