James Bickford (N.Y. Bar No. 5163498)
United States Department of Justice
Civil Division, Federal Programs Branch
1100 L Street, NW
Washington, DC 20530
James.Bickford@usdoj.gov
Telephone: (202) 305-7632

Attorney for Defendants
U.S. IMMIGRATION AND
CUSTOMS ENFORCEMENT, et al.

## UNITED STATES DISTRICT COURT
## CENTRAL DISTRICT OF CALIFORNIA
## WESTERN DIVISION

| | |
|---|---|
| TAMMY JANE OWEN, et al., | Case No. 2:22-cv-00550-DSF-AJRx |
| Plaintiffs, | **DEFENDANTS' COMBINED OPPOSITION TO PLAINTIFFS' CROSS-MOTION FOR SUMMARY JUDGMENT AND REPLY IN SUPPORT OF DEFENDANTS' MOTION FOR SUMMARY JUDGMENT** |
| v. | |
| U.S. IMMIGRATION AND CUSTOMS ENFORCEMENT, et al., | |
| Defendants. | Before the Hon. Dale S. Fischer |

## TABLE OF CONTENTS

INTRODUCTION ..........................................................................................................1

ARGUMENT ................................................................................................................1

A.    CRCL and ICE conducted adequate searches for all responsive
      records....................................................................................................1

B.    The withheld material is exempt from release under FOIA. ...........................5

      i.    Exemption 5 ....................................................................................8

      ii.   Exemptions 6 and 7(C)....................................................................13

      iii.  Exemption 7(E) ..............................................................................16

CONCLUSION ...........................................................................................................18

i

# TABLE OF AUTHORITIES

## CASES

*Am. Small Bus. League v. U.S. Small Bus. Assoc.*,
   623 F.3d 1052 (9th Cir. 2010)..................................................................3

*Cameranesi v. U.S. Dep't of Def.*,
   856 F.3d 626 (9th Cir. 2017)..................................................................15

*Church of Scientology of Cal. v. U.S. Dep't of the Army*,
   611 F.2d 738 (9th Cir. 1979), *overruled on other grounds*,
   *Animal Legal Def. Fund v. FDA*, 836 F.3d 987, 990 (9th Cir. 2016) ...................5

*Coastal States Gas Corp. v. Dep't of Energy*,
   617 F.2d 854 (D.C. Cir. 1980) ......................................................... 10, 12

*DBW Partners LLC v. U.S. Postal Serv.*,
   2019 WL 5549623 n.4 (D.D.C. Oct. 28, 2019) .......................................6

*Elec. Frontier Found. v. U.S. Dep't of Just.*,
   739 F.3d 1 (D.C. Cir. 2014) ..................................................................12

*Elec. Priv. Info. Ctr. v. Customs & Border Prot.*,
   248 F. Supp. 3d 12 (D.D.C. 2017), *aff'd per curiam*,
   No. 17-5078, 2017 WL 4220339 (D.C. Cir. Aug. 1, 2017) .................................18

*Forest Serv. Emps. for Env't Ethics v. U.S. Forest Serv. ("FSEE")*,
   524 F.3d 1021 (9th Cir. 2008)..................................................................15

*Fox News Network v. Dep't of Treasury*,
   739 F. Supp. 2d 515 (S.D.N.Y. 2010).......................................................4

*Gonzalez v. U.S. Citizenship & Immigr. Servs.*,
   475 F. Supp. 3d 334 (S.D.N.Y. 2020)....................................................18

*Hamdan v. U.S. Dep't of Just.*,
   797 F.3d 759 (9th Cir. 2015)..................................................................7

ii

*Hardy v. Bureau of Alcohol, Tobacco, Firearms & Explosives,*
    243 F. Supp. 3d 155 (D.D.C. 2017)........................................................................6

*Heffernan v. Azar,*
    317 F. Supp. 3d 94 (D.D.C. 2018)........................................................................12

*Immigrant Def. Project v. ICE,*
    208 F. Supp. 3d 520 (S.D.N.Y. 2016)....................................................................4

*Iturralde v. Comptroller of the Currency,*
    315 F.3d 311 (D.C. Cir. 2003) .............................................................................3

*Lahr v. Nat'l Transp. Safety Bd.,*
    569 F.3d 964 (9th Cir. 2009)........................................................................ *passim*

*Lane v. Dep't of Interior,*
    523 F.3d 1128 (9th Cir. 2008)...............................................................................7

*Nat'l Immigr. Project of Nat'l Laws. Guild v. ICE,*
    2020 WL 5798429 (D.D.C. Sept. 29, 2020)..........................................................12

*Organized Cmtys. Against Deportations v. ICE,*
    2024 WL 2053123 (N.D. Ill. May 8, 2024)............................................................4

*Reinhard v. Dep't of Homeland Sec.,*
    2019 WL 3037827 (D.D.C. July 11, 2019) ...........................................................12

*SafeCard Servs., Inc. v. Secs. & Exch. Comm'n,*
    926 F.2d 1197 (D.C. Cir. 1991) ............................................................................7

*Transgender Law Ctr. v. ICE,*
    46 F.4th 771 (9th Cir. 2022) ...............................................................................17

*U.S. Dep't of Def. v. Fed. Lab. Rels. Auth.,*
    510 U.S. 487 (1994) ..........................................................................................15

*Zemansky v. EPA,*
    767 F.2d 569 (9th Cir. 1985)................................................................................3

iii

**STATUTES**

5 U.S.C. § 552(a)(8)(A)(i)(I) ...................................................................10

5 U.S.C. § 552(b)(7)(E) ........................................................................17

**REGULATIONS**

8 C.F.R. § 236.6 ......................................................................................3

iv

# INTRODUCTION

Plaintiffs have filed a cross-motion for summary judgment, ECF No. 113, and a separate opposition to CRCL's and ICE's motion, ECF No. 112. The two filings are nearly—but not completely—identical, and purport to incorporate each other by reference. Plaintiffs challenge some (but not all) of the agencies' searches, and some (but not all) of their withholdings of material as exempt from release under the Freedom of Information Act. But nothing in either of Plaintiffs' filings casts doubt on the fact that the agencies conducted searches reasonably calculated to uncover all records responsive to their FOIA requests and withheld only exempt material, as demonstrated in the agencies' motion and accompanying declarations. CRCL and ICE are therefore entitled to summary judgment in their favor.

# ARGUMENT

## A.    CRCL and ICE conducted adequate searches for all responsive records.

In response to the FOIA requests at issue here, CRCL and ICE conducted searches "reasonably calculated to uncover all relevant documents." *Lahr v. Nat'l Transp. Safety Bd.*, 569 F.3d 964, 986 (9th Cir. 2009) (citation omitted). CRCL and ICE described those searches in their declarations and their motion for summary judgment, *see* MSJ at 6–8, but Plaintiffs contend that the agencies did not say they searched for all responsive records. Pls.' Cross-MSJ at 5–7, ECF No. 113 at 11–13. Plaintiffs are incorrect.

1

*Owen v. ICE*, No. 2:22-cv-00550-DSF-AJRx
Defs.' Summ. J. Opp. & Reply

As ICE explained in its declaration, when the agency receives a FOIA request, "the ICE FOIA Office will identify which program offices . . . are reasonably likely to possess records responsive to that request, if any, and task the relevant program offices with searches."  3d Pineiro Decl. ¶ 17, ECF No. 110.  Those offices then "forward the request and instructions to the individual employee(s), field office(s) or component office(s) within the program office that they believe are reasonably likely to have responsive records, if any."  *Id.*  In this case, "the ICE FOIA Office determined that . . . the Office of Enforcement Removal and Operations, (ERO) was the program office likely to have responsive records (if such records existed)" and "instructed ERO to conduct a comprehensive search for records."  *Id.* ¶ 23.  Because ERO and its subcomponents did so, ICE averred that "all locations likely to contain records responsive to Plaintiffs' FOIA Requests (to the extent that they exist within ICE's custody) were searched."  *Id.*  Similarly, CRCL "determined that the only unit . . . reasonably likely to have documents responsive to Plaintiffs' requests was the Compliance Branch."  3d Law Decl. ¶ 5, ECF No. 111.  CRCL repeatedly averred that its Compliance Branch searched all files "reasonably likely to contain responsive records."  *Id.* ¶¶ 9, 11; *see* 4th Law Decl. ¶ 2.  Plaintiffs' argument to the contrary is meritless.[1]

---

[1] To the extent that Plaintiffs' argument rests on ICE's occasional use of "most likely" interchangeably with "likely," *see* 3d Pineiro Decl. ¶¶ 17, 32, any ambiguity is

*Owen v. ICE*, No. 2:22-cv-00550-DSF-AJRx
Defs.' Summ. J. Memo. Opp. & Reply

1    Plaintiffs also take issue with the agencies' descriptions of the searches they

2    conducted.  For the Miramanian Request, Plaintiffs contend that CRCL's failure to

3    produce responsive records casts doubt on the adequacy of its search.  However, "the

4    adequacy of a FOIA search is generally determined not by the fruits of the search,

5    but by the appropriateness of the methods used to carry out the search." *Iturralde v.*

6    *Comptroller of the Currency*, 315 F.3d 311, 315 (D.C. Cir. 2003); *accord Lahr*, 569

7    F.3d at 986–89; *Zemansky v. EPA*, 767 F.2d 569, 571 (9th Cir. 1985).  For the Ochoa

8    and Owen Requests, Plaintiffs criticize ICE for failing to produce certain

9    documents—which, again, is not the measure of a reasonable search—and for not

10   requiring its employees to use identical search terms when searching their files.[2]  ICE

11   reasonably relies on its employees to conduct "searches of their files systems which

12   in their [judgment], based on their knowledge of the manner in which they routinely

13   keep records, would be reasonably likely to have responsive records, if any."  3d

---

resolved by the agency's clear statement that "all locations likely to contain records responsive to Plaintiffs' FOIA Requests (to the extent that they exist within ICE's custody) were searched," *id.* ¶ 23.

[2] Plaintiffs may also intend to argue that ICE should have searched the files of its contractors.  *See* Pls.' Cross-MSJ at 7–8, ECF No. 113 at 13–14 (discussing 8 C.F.R. § 236.6).  But ICE did not "actually possess" such records, and there is no indication that it "extensively supervised or was otherwise significantly entangled with [any contractor's] production and management of the records."  *Am. Small Bus. League v. U.S. Small Bus. Assoc.*, 623 F.3d 1052, 1053 (9th Cir. 2010) (per curiam).  It was therefore under no obligation to obtain records from its contractors for the purposes of searching them.

*Owen v. ICE*, No. 2:22-cv-00550-DSF-AJRx
Defs.' Summ. J. Memo. Opp. & Reply

1    Pineiro Decl. ¶ 25. And as long as an agency's "searches are designed to retrieve

2    responsive documents," which ICE's searches clearly were, "using varied search

3    terms does not automatically undermine the adequacy of a search." *Organized*

4    *Cmtys. Against Deportations v. ICE*, 2024 WL 2053123, at *8 (N.D. Ill. May 8,

5    2024); *see Immigrant Def. Project v. ICE*, 208 F. Supp. 3d 520, 529 (S.D.N.Y. 2016);

6    *Fox News Network v. Dep't of Treasury*, 739 F. Supp. 2d 515, 534 (S.D.N.Y. 2010)

7    (explaining that "there is no requirement that an agency use identical search terms

8    in all of its offices").

9       Finally, for the CRCL Report Request, Plaintiffs argue that the agency's

10    declaration lacks adequate detail. But the declaration establishes that CRCL (a)

11    located and produced two documents requested by name, 3d Law Decl. ¶ 7; (b)

12    searched for reports and recommendations related to three specified complaints in

13    the "electronic complaint file" for each complaint, which is where "documents

14    related to complaints including . . . expert reports . . . and recommendations" are

15    stored, *id.* ¶ 8; (c) searched for any reports or recommendations related to the

16    jurisdiction of a particular ICE field office by identifying "all complaints related to

17    the [detention] facilities" within that jurisdiction during the relevant time period and

18    then searching the "electronic complaint database" for reports or recommendations

19    related to those complaints, *id.* ¶ 9; and (d) "downloaded the full complaint file" to

20    respond to Plaintiffs' request for communications about those complaints, *id.* ¶ 10.

4

*Owen v. ICE*, No. 2:22-cv-00550-DSF-AJRx
Defs.' Summ. J. Memo. Opp. & Reply

As to the last item, Plaintiffs quibble that CRCL only says that it did so "where relevant," *id.*, which in context clearly means "where the file corresponded to a relevant complaint."  Plaintiffs also criticize CRCL for failing to retrieve specific documents—an objection discussed above.

Because the CRCL and ICE declarations establish that their searches were "reasonably calculated to uncover all relevant documents," *Lahr*, 569 F.3d at 986 (citation omitted), the agencies are entitled to summary judgment on the adequacy of those searches.

**B.    The withheld material is exempt from release under FOIA.**

As CRCL and ICE explained in their motion for summary judgment, some responsive records and portions thereof were withheld from Plaintiffs under Exemptions 5, 6, 7(C), and 7(E).[3]  In accordance with the usual procedure in FOIA cases, both CRCL and ICE submitted declarations explaining the basis for their withholdings in detail.  *See Church of Scientology of Cal. v. U.S. Dep't of the Army*, 611 F.2d 738, 742 (9th Cir. 1979) ("The government may rely upon detailed

---

[3] After that motion was filed, both CRCL and ICE released responsive material that had been initially withheld under claim of exemption, but which the agencies chose to disclose as a matter of discretion.  4th Law Decl. ¶ 3; 4th Pineiro Decl. ¶ 11.  In doing so, ICE discovered that it had inadvertently omitted the documents contained within the monthly production made in December 2022 from its declaration and *Vaughn* index.  4th Pineiro Decl. ¶ 6.  ICE now submits a supplemental declaration describing the exempt material withheld from that production, which falls within the same rationales for withholding that ICE discussed in its motion and initial declaration.  *Id.* ¶¶ 6–10.

5

affidavits . . . so long as the evidence offered enables the court to make an independent assessment of the government's claim of exemption."), *overruled on other grounds*, *Animal Legal Def. Fund v. FDA*, 836 F.3d 987, 990 (9th Cir. 2016). ICE explained its Exemption 5, 6, and 7(C) withholdings in the body of its declaration, and appended a *Vaughn* index (*i.e.*, a table) explaining its Exemption 7(E) withholdings.  CRCL explained all of its withholdings in both the body of its declaration and the accompanying *Vaughn* index.

The structure of these explanations was entirely proper, as "[a]n agency may carry its burden of properly invoking an exemption by submitting sufficiently detailed affidavits or declarations, a *Vaughn* index of the withheld documents, or both, to demonstrate that the government has analyzed carefully any material withheld."  *Hardy v. Bureau of Alcohol, Tobacco, Firearms & Explosives*, 243 F. Supp. 3d 155, 162 (D.D.C. 2017).  Plaintiffs are wrong to suggest that CRCL and ICE had a "prima facie burden at the summary judgment stage" to "list all withholdings in the *Vaughn* index" rather than explaining them in the body of the agency's declaration.  Pls.' Cross-MSJ at 10, ECF No. 113 at 16.  To the contrary, "agencies are under no obligation to produce a *Vaughn* index at all."  *DBW Partners LLC v. U.S. Postal Serv.*, 2019 WL 5549623, at *9 n.4 (D.D.C. Oct. 28, 2019) (explaining that a tabular *Vaughn* index "is only one of several means by which an agency may carry its FOIA burden").  An agency's ultimate obligation is to provide

6

1    information about the withholdings "detailed enough to allow the court to make an

2    independent assessment of the government's claim" of exemption, in whatever

3    format the agency chooses. *Lane v. Dep't of Interior*, 523 F.3d 1128, 1135–36 (9th

4    Cir. 2008) (citation omitted).

5            CRCL's and ICE's declarations are accorded "a presumption of good faith."

6    *SafeCard Servs., Inc. v. Secs. & Exch. Comm'n*, 926 F.2d 1197, 1200 (D.C. Cir.

7    1991); *see Hamdan v. U.S. Dep't of Just.*, 797 F.3d 759, 770 (9th Cir. 2015)

8    ("Affidavits submitted by an agency to demonstrate the adequacy of its response are

9    presumed to be in good faith."). Plaintiffs argue that this presumption "cannot apply

10   here where Defendants have waited years to complete their production." Pls.' Cross-

11   MSJ at 10, ECF No. 113 at 16. But the Court denied Plaintiffs' request for an order

12   that CRCL and ICE process the records more quickly than they had proposed, noting

13   that "Defendants have now agreed to and have begun to produce records at a pace

14   of 500 for ICE records and 450 for DHS CRCL records." Order, ECF No. 80 at 16.

15   Defendants continued to process potentially responsive records at least that

16   quickly—and indeed, faster than that—and completed their productions no later than

17   June 2024, as they represented to the Court. Some responses to individual requests

18   took longer than initially anticipated because the agencies identified additional

19   potentially responsive records to process, including audio and video files. There is

20   no reason—and Plaintiffs offer none—that CRCL's and ICE's processing of a

7

*Owen v. ICE*, No. 2:22-cv-00550-DSF-AJRx
Defs.' Summ. J. Memo. Opp. & Reply

1  larger-than-expected volume of records at a faster-than-expected pace should be

2  taken to undermine the presumption of good faith accorded to their explanations of

3  why certain records were withheld in whole or in part.

4       **i.**     **Exemption 5**

5       Both CRCL and ICE withheld records, or portions thereof, pursuant to the

6  deliberative process privilege incorporated by FOIA Exemption 5. ICE withheld

7  draft documents and related materials exchanged in the course of preparing

8  memoranda, reports, and summaries regarding the deaths of certain detainees in ICE

9  custody. 3d Pineiro Decl. ¶¶ 44–47. As ICE explained, these documents were

10  predecisional and deliberative, and their release would cause a foreseeable harm to

11  the interests protected by Exemption 5. Plaintiffs briefly contest each point.

12       First, Plaintiffs contend that any undated materials cannot be predecisional,

13  because one cannot tell whether they were generated before or after the decision in

14  question. (This argument only applies to a small minority of the drafts withheld by

15  ICE, most of which were dated.) But where the materials are undisputedly draft

16  documents, which necessarily "preceded any final decision to issue a report or other

17  public statement, or transmit a particular memorandum, concerning the detainees in

18  question," 3d Pineiro Decl. ¶ 41, then the materials are obviously and self-evidently

19  predecisional. The fact that some of them may be undated is immaterial. Take, for

20  example, an undated draft of Mr. Miramanian's detainee death review, which was

8

1  "partially written over [a] template detainee death review," included "comment

2  bubbles," and retained "many portions of [the] template pertaining to the death of

3  another detainee." *Id.* ¶ 44.a.vi.  This document quite clearly precedes any final

4  decision regarding the issuance of the final detainee death review: it is incomplete,

5  the comment bubbles are a clear sign of ongoing deliberations, and it retains

6  irrelevant material from another document that was used as a template.  The fact that

7  the document is undated does not raise any doubt that it is indeed predecisional.  The

8  ICE declaration includes many other indications that undated documents are

9  predecisional drafts: redline edits, watermarks designating them as "DRAFT," dates

10  of transmission in some cases, and family relationships to later dated drafts.  (For

11  another example, *see id.* ¶ 46.c.i, which describes an undated clean draft of a

12  memorandum that was transmitted on a particular date and subsequently revised in

13  a dated draft.)  Plaintiffs' objection that undated documents cannot be predecisional

14  is meritless, and in any event only applies to a small number of the drafts withheld

15  by ICE.

16      As to the deliberative status of these drafts, Plaintiffs argue that "ICE

17  inconsistently redacts some recommendations under the deliberative process

18  privilege, but not other recommendations which appear to be similar," and in so

19  doing "undermines its contentions that certain recommendations are deliberative."

20  Pls.' Cross-MSJ at 12, ECF No. 113 at 18.  But Plaintiffs do not identify a single

*Owen v. ICE*, No. 2:22-cv-00550-DSF-AJRx
Defs.' Summ. J. Memo. Opp. & Reply

1    instance of inconsistent redaction.  Their only support for this assertion is a citation

2    to their own attorney's declaration, which simply repeats the claim.  *See* Massey

3    Decl. ¶ 11, ECF No. 112-1 ("ICE redacts certain recommendations under the

4    deliberative process privilege but not other recommendations which appear to be

5    similar.")  And in any case, the intentional or accidental release of some deliberative

6    material would not undermine the deliberative status of the drafts withheld by ICE.

7    If a record "reflects the give-and-take of the consultative process," *Coastal States*

8    *Gas Corp. v. Dep't of Energy*, 617 F.2d 854, 866 (D.C. Cir. 1980), then it is

9    deliberative, whether or not the agency has released other deliberative material.

10       Finally, Plaintiffs contend that ICE has not established that it "reasonably

11   foresees that disclosure" of the withheld drafts "would harm an interest protected

12   by" the deliberative process privilege, as incorporated by FOIA Exemption 5. 5

13   U.S.C. § 552(a)(8)(A)(i)(I).  But as ICE explained in its declaration, "[t]he central

14   purpose of the draft memoranda, reports, and summaries being withheld is to

15   accurately document the circumstances surrounding the deaths of the detainees in

16   question." 3d Pineiro Decl. ¶ 42.  "Drafts of these documents contain inaccurate and

17   imprecise information that is reviewed, revised, and corrected by many ICE

18   employees before the documents are finalized." *Id.*  "The preparation, revision, and

19   review of these documents constitutes a central process by which ICE deliberates

20   over both the facts surrounding these detainee deaths and any policy

10

recommendations that should be made in an effort to avoid future deaths in ICE custody." *Id.* The release of drafts containing inaccurate or imprecise information, or policy recommendations that ICE did not make, would "create confusion regarding what facts have actually been established and what recommendations have actually been adopted by the agency," *id.* ¶ 43, as ICE explained in the government's motion for summary judgment.

In sum, ICE's declaration and accompanying motion for summary judgment established that the draft documents it withheld under Exemption 5 were predecisional and deliberative, and that their release could reasonably be foreseen to harm interests protected by the deliberative process privilege. ICE is therefore entitled to summary judgment on the propriety of those withholdings.

CRCL withheld tentative findings and recommendations from expert reports prepared for its review, email communications, and memoranda that it transmitted to ICE.[4] Plaintiffs do not deny that the CRCL memoranda, and the expert reports on which they are based, are predecisional because they were prepared before DHS had made a decision about the veracity of the allegations under investigation, or any policy changes that should be made in response to them. As for their deliberative status, Plaintiffs note that deliberative material can lose its protection when it is

---

[4] CRCL also withheld portions of several email chains in which agency employees deliberated over agency responses to complaints. Plaintiffs do not contest those withholdings.

*Owen v. ICE*, No. 2:22-cv-00550-DSF-AJRx
Defs.' Summ. J. Memo. Opp. & Reply

1    "adopted, formally or informally, as the agency position on an issue" or "used by the

2    agency in its dealings with the public." *Coastal States*, 617 F.2d at 866.  Plaintiffs

3    offer no reason to believe that any of the tentative findings or recommendations

4    withheld by CRCL were subsequently adopted as DHS's position or used by the

5    agency in its public dealings, but simply criticize CRCL for offering "no averments"

6    to the contrary.  Pls.' Cross-MSJ at 14, ECF No. 113 at 20.  Such averments are not

7    required, because CRCL "does not carry the burden of proving that each withheld

8    document was not adopted formally or informally." *Heffernan v. Azar*, 317 F. Supp.

9    3d 94, 122 (D.D.C. 2018) (citation omitted); *accord Nat'l Immigr. Project of Nat'l*

10   *Laws. Guild v. ICE*, 2020 WL 5798429, at *4 (D.D.C. Sept. 29, 2020); *Reinhard v.*

11   *Dep't of Homeland Sec.*, 2019 WL 3037827, at *10 (D.D.C. July 11, 2019).  Rather,

12   it is Plaintiffs who must offer some indication that a tentative finding or

13   recommendation was subsequently adopted. *See Elec. Frontier Found. v. U.S. Dep't*

14   *of Just.*, 739 F.3d 1, 10 (D.C. Cir. 2014) (rejecting similar argument where plaintiff

15   "cannot point to any evidence supporting its claim that the [agency] expressly

16   adopted the OLC Opinion as its reasoning").

17        Finally, Plaintiffs object to CRCL's showing of foreseeable harm, criticizing

18   the agency for offering a similar explanation of the harm that would ensue from

19   releasing deliberative recommendations and tentative findings from reports and

20   memoranda on a variety of subjects.  Pls.' Cross-MSJ at 13, ECF No. 113 at 19.  But

there is no requirement that the harm reasonably foreseen from the release of deliberative material be unique to a particular document.  As CRCL explained in its declaration, the "release of preliminary findings and recommendations poses a substantial risk of confusing the public" about what final actions DHS took "concerning the complaints in question," or why it took such actions.  3d Law Decl. ¶ 25.  Such a release would also foreseeably inhibit candid deliberations over potential civil rights violations within DHS.  *Id.*  That is true regardless of the subject of a given expert report or memorandum.  Plaintiffs' objections are unavailing, and CRCL is therefore entitled to summary judgment on the propriety of its withholdings under FOIA Exemption 5.

### ii.    Exemptions 6 and 7(C)

CRCL and ICE withheld the identities and contact information of many individuals—and the contact information but not the names of high-level officials— under Exemptions 6 and 7(C).[5]  As the agencies explained, and Plaintiffs do not dispute, the withheld identities and contact information meet the threshold requirements of Exemptions 6 and 7(C).  Moreover, these individuals—who include detainees and witnesses, doctors and nurses, law enforcement officers, and lower-level employees of DHS and ICE—have significant privacy interests in their

---

[5] ICE also withheld information about the claimed immigration status of certain immigrants under Exemptions 6 and 7(C).  Plaintiffs do not contest those withholdings.

*Owen v. ICE*, No. 2:22-cv-00550-DSF-AJRx
Defs.' Summ. J. Memo. Opp. & Reply

1   identities, the public release of which could lead to harassment and increase the risk

2   of violence or other types of reprisal.  3d Law Decl. ¶ 26–27, 29; 3d Pineiro Decl.

3   ¶ 57; *see Lahr*, 569 F.3d at 977–78.  And, for similar reasons, they also have a

4   significant privacy interest in their contact information.  *See Lahr*, 569 F.3d at 975–

5   76.

6        Plaintiffs respond that "the privacy rights of those accused of wrongdoing,"

7   such as "falsifying logs and medical records, destroying evidence, [and] covering up

8   essential facts about people who died," are "diminished."  Pls.' Cross-MSJ at 16,

9   ECF No. 113 at 22.  But even if that were so, Plaintiffs do not identify a single such

10  accusation of wrongdoing relevant to the records at issue here.  Nor do they explain

11  why such an accusation would diminish the privacy interests of every single

12  individual whose identity or contact information has been withheld from those

13  records, rather than only the individual or individuals who were credibly accused.

14  Plaintiffs' argument for diminished privacy interests sweeps far too broadly, even if

15  it rested on a credible accusation of wrongdoing—which it does not.

16       Turning to the public interest in disclosure, Plaintiffs argue that "media

17  attention" to the deaths of Miramanian, Owen, and Ochoa in particular, and detainee

18  deaths more generally, favor the release of the names and contact information

19  withheld under Exemptions 6 and 7(C).  *Id*.  But the only "relevant public interest"

20  for the purposes of these exemptions is the interest in "an agency's performance of

14

its statutory duties," or "what the[] government is up to." *Lahr*, 569 F.3d at 978 (quoting *U.S. Dep't of Def. v. Fed. Lab. Rels. Auth.*, 510 U.S. 487, 497 (1994)). Unless the release of the withheld identities or contact information "would . . . appreciably further the public's important interest in monitoring the agency's performance," then the public interest cannot outweigh the considerable privacy interests of the individuals in question. *Forest Serv. Emps. for Env't Ethics v. U.S. Forest Serv. ("FSEE")*, 524 F.3d 1021, 1028 (9th Cir. 2008); *see Cameranesi v. U.S. Dep't of Def.*, 856 F.3d 626, 640 (9th Cir. 2017). And Plaintiffs fail to explain why the public's interest in monitoring the performance of CRCL and ICE would be appreciably furthered by the release of any—much less all—of the identities and contact information withheld under Exemptions 6 and 7(C). *See FSEE*, 524 F.3d at 1027 (affirming withholding where "the identities of the employees alone will shed no new light on the Forest Service's performance of its duties").

Plaintiffs' argument appears to be that generalized concerns about misconduct and public interest in the general subject of the records are enough to compel the release of the names, email addresses, and phone numbers of every individual mentioned in the thousands of pages of records at issue here.[6] That is not the law,

---

[6] Plaintiffs also argue that release of these identities and contact information would "shed[] light on how the military detects service members at risk of suicide and addresses this public health crisis." Pls.' Cross-MSJ at 17, ECF No. 113 at 23 (citation omitted). It is unclear how that could be so when the FOIA requests at issue here do not concern the military, or service members at risk of suicide.

*Owen v. ICE*, No. 2:22-cv-00550-DSF-AJRx
Defs.' Summ. J. Memo. Opp. & Reply

as CRCL and ICE explained in their motion for summary judgment. The privacy interests of these individuals in their names and contact information are undiminished, and Plaintiffs have not identified any weighty public interest in this identifying information. CRCL and ICE are therefore entitled to summary judgment on their withholdings under Exemptions 6 and 7(C).

### iii.    Exemption 7(E)

Plaintiffs do not contest most of the withholdings made by ICE under Exemption 7(E). ICE withheld information about detention facilities, including specific non-lethal weapons allowed to be used, the routines and staffing of officers, maps of the facilities, the location of commissary funds within detention facilities, and threat ratings of detained individuals. 3d Pineiro Decl., *Vaughn* Index Nos. 2, 5, 7. It withheld internal email addresses used only within ICE and other law enforcement agencies, and the addresses of internal websites used only within ICE and other law enforcement agencies. *Id.*, *Vaughn* Index Nos. 1, 3. And ICE withheld law enforcement identification numbers and codes, such as FBI numbers and alien numbers (commonly known as "A-numbers"). *Id.*, *Vaughn* Index No. 4. Plaintiffs do not contest any of those withholdings.

CRCL and ICE also withheld information about law enforcement databases. 3d Law Decl. ¶ 33 & *Vaughn* Index; 3d Pineiro Decl., *Vaughn* Index No. 6. Plaintiffs suggest that these withholdings are "overbroad," with no further explanation. Pls.'

Cross-MSJ at 18, ECF No. 113 at 24. Plaintiffs quote that single word from a Ninth Circuit opinion holding that a district court failed to determine whether certain information (which did not concern law enforcement databases) withheld under Exemption 7(E) constituted law enforcement "techniques and procedures," which are categorically exempt from disclosure, or "guidelines," which are only exempt if "disclosure could reasonably be expected to risk circumvention of the law," 5 U.S.C. § 552(b)(7)(E). *Transgender Law Ctr. v. ICE*, 46 F.4th 771, 785 (9th Cir. 2022).

In this case, the withheld information about law enforcement databases clearly constitutes "techniques and procedures," and its release would in any event risk circumvention of law. ICE explained that the release of "[i]nformation . . . concerning the law enforcement systems and databases accessed to retrieve information about detainees . . . . would disclose . . . techniques or procedures" for accessing "systems and databases that are not shared outside of law enforcement," and moreover " could reasonably be expected to risk circumvention of the law . . . by allowing nefarious actors to, first, gain knowledge of the existence of these otherwise non-public systems, and second, to hack them." *Vaughn* Index; 3d Pineiro Decl., *Vaughn* Index No. 6. CRCL withheld similar information its databases for similar reasons. *See* 3d Law Decl. ¶ 33 & *Vaughn* Index. Such withholdings are routinely upheld. *See, e.g.*, *Gonzalez v. U.S. Citizenship & Immigr. Servs.*, 475 F. Supp. 3d 334, 352 (S.D.N.Y. 2020) ("The manner by which . . . law enforcement

17

1  agencies . . . access databases, and maintain information regarding cases in general

2  falls within FOIA Exemption 7(E)."); *Elec. Priv. Info. Ctr. v. Customs & Border*

3  *Prot.*, 248 F. Supp. 3d 12, 19 (D.D.C. 2017) (protecting "records detailing the

4  function, access, navigation, and capabilities" of law enforcement database), *aff'd*

5  *per curiam*, No. 17-5078, 2017 WL 4220339 (D.C. Cir. Aug. 1, 2017).

6  **CONCLUSION**

7      For the reasons set forth above and in their motion for summary judgment,

8  both CRCL and ICE are entitled to summary judgment in their favor.

9

                  Respectfully submitted,

                  BRIAN M. BOYNTON
                  Principal Deputy Assistant Attorney General

                  ELIZABETH J. SHAPIRO
                  Deputy Director, Federal Programs Branch

                  */s/ James Bickford*
                  JAMES BICKFORD
                  Trial Attorney (N.Y. Bar No. 5163498)
                  United States Department of Justice
                  Civil Division, Federal Programs Branch
                  1100 L Street, NW
                  Washington, DC 20530
                  James.Bickford@usdoj.gov
                  Telephone: (202) 305-7632
                  Facsimile: (202) 616-8470

                  *Counsel for Defendants*

Date: October 8, 2024

*Owen v. ICE*, No. 2:22-cv-00550-DSF-AJRx
Defs.' Summ. J. Memo. Opp. & Reply

## CERTIFICATE OF COMPLIANCE

The undersigned, counsel of record for Defendants, certifies that this brief contains 4,355 words, which complies with the word limit of L.R. 11-6.1.

*/s/ James Bickford*

Date: October 8, 2024

19