# UNITED STATES DISTRICT COURT
# CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| TAMMY JANE OWEN, et al.,<br><br>Plaintiffs,<br><br>v.<br><br>U.S. IMMIGRATION AND CUSTOMS ENFORCEMENT, et al.,<br><br>Defendants. | 2:22-cv-00550-DSF-AJRx<br><br>Order GRANTING IN PART and DENYING IN PART Defendants' Motion for Summary Judgment (Dkt. 109) and GRANTING IN PART and DENYING IN PART Plaintiffs' Motion for Summary Judgment (Dkt. 113) |

Defendants U.S. Immigration and Customs Enforcement (ICE) and U.S. Department of Homeland Security Office for Civil Rights and Civil Liberties (CRCL) move for summary judgment. Dkt. 109-1 (Defs. Mot.). Plaintiffs Tammy Jane Owen, Miran Mirimanian, and Al Otro Lado Inc. (AOL) oppose. Dkt. 112 (Pls. Opp'n). Plaintiffs also move for summary judgment. Dkt. 113 (Pls. Mot.). Defendants oppose. Dkt. 118 (Defs. Opp'n). The Court deems this matter appropriate for decision without oral argument. See Fed. R. Civ. P. 78; Local Rule 7-15. For the reasons stated below, Defendants' motion is GRANTED IN PART and DENIED IN PART, and Plaintiffs' motion is GRANTED IN PART and DENIED IN PART.

# I. UNDISPUTED FACTS

This is an action under the Freedom of Information Act (FOIA) to compel Defendants to produce documents relating to deaths in ICE custody. Plaintiffs submitted five FOIA requests to ICE and CRCL.

Plaintiffs sought records relating to the deaths of Ben Owen, Maria Celeste Ochoa-Yoc De Ramirez, and Gourgen Mirimanian while detained by ICE. Dkt. 112-8 (DSUF) ¶ 1.[1] Plaintiff AOL also sought records created in response to previously submitted FOIA requests and records relating to reports that CRCL had prepared regarding certain ICE detention facilities. Id. ¶¶ 2-3.

CRCL produced responsive records through February 2023, and then made a supplemental production on August 13, 2024.[2] Id. ¶ 6; see also Dkt. 111 (3d Law Decl.) ¶ 13. ICE completed its production of records in June 2024. DSUF ¶ 7.

The parties dispute the reasonableness of CRCL and ICE's searches for responsive records and their redactions or withholding of responsive records under FOIA exemptions 5, 6, 7(C), and 7(E). Id. ¶¶ 4-5, 8-21; see also PSUF ¶¶ 4-5, 8-11.

# II. LEGAL STANDARD

FOIA is intended to allow public access to government documents. Lahr v. Nat'l Transp. Safety Bd., 569 F.3d 964, 973 (9th Cir. 2009). However, some information may be legitimately withheld under nine enumerated exemptions within FOIA. See id.; see also 5 U.S.C. § 552(b)(1)-(9). There is a "strong presumption in favor of

---

[1] The Court refers to Plaintiffs' response to Defendants' Statement of Uncontroverted Facts as DSUF and to Defendants' response to Plaintiffs' Statement of Uncontroverted Facts as PSUF because the responses show which facts are undisputed.

[2] The parties dispute whether CRCL completed its production of responsive records in February 2023 or in August 2024 when it made a supplemental production. DSUF ¶ 6; see also Dkt. 117-3 (PSUF) ¶ 6.

disclosure," and an agency invoking an exemption has the burden of demonstrating that the exemption applies. Lahr, 569 F.3d at 973 (citation omitted). "[I]n light of FOIA's purpose of encouraging disclosure, . . . its exemptions are to be interpreted narrowly." Id. (internal quotation marks and citation omitted).

A district court is required to give "substantial weight" to agency declarations as long as they are not "controverted by contrary evidence in the record or by evidence of [agency] bad faith." Hunt v. CIA, 981 F.2d 1116, 1119 (9th Cir. 1992) (citation omitted). "If the affidavits contain reasonably detailed descriptions of the documents and allege facts sufficient to establish an exemption, the district court need look no further." Citizens Comm'n on Hum. Rts. v. FDA, 45 F.3d 1325, 1329 (9th Cir. 1995) (citation omitted).

## III. DISCUSSION

### A. Adequacy of Searches

The parties dispute whether Defendants conducted adequate searches for the documents requested by Plaintiffs. Defendants argue that their searches "were performed by agency employees chosen for their familiarity with the subject matter of the request and the potentially relevant records, using terms reasonably designed by those employees to identify responsive material," and were therefore "reasonably calculated to uncover all relevant documents." Defs. Mot. at 8. Plaintiffs argue that Defendants have failed to establish the adequacy of their searches because they did not aver that they searched for all relevant records; they did not produce certain documents; CRCL did not explain its search methods; and ICE did not use consistent search terms. Pls. Mot. at 5-9.

To demonstrate the adequacy of its searches, an agency must show beyond material doubt that its searches were "reasonably calculated to uncover all relevant documents." Transgender L. Ctr. v. Immigr. & Customs Enf't, 46 F.4th 771, 779 (9th Cir. 2022) (quoting Hamdan v. U.S. Dep't of Just., 797 F.3d 759, 770 (9th Cir. 2015)). "[A]ffidavits describing agency search procedures are sufficient for

3

purposes of summary judgment only if they are relatively detailed in their description of the files searched and the search procedures, and if they are nonconclusory and not impugned by evidence of bad faith." Zemansky v. EPA, 767 F.2d 569, 573 (9th Cir. 1985).

Plaintiffs first argue that Defendants fail to aver in their affidavits that they complied with their FOIA obligation to search for "all relevant records." Pls. Opp'n at 7. However, the affidavits explain that Defendants tasked the office or offices reasonably likely to possess responsive records with searching the locations likely to contain those records. See dkt. 110 (3d Pineiro Decl.) ¶ 17; see also 3d Law Decl. ¶¶ 5-6. In fact, ICE declares that "all locations likely to contain records responsive to Plaintiffs' FOIA Requests (to the extent that they exist within ICE's custody) were searched," and CRCL declares that it "searched for all responsive records for this matter in all relevant and applicable CRCL databases using the requested search terms." Dkt. 117-1 (4th Law Decl.). Defendants have established that they both identified and searched the locations that would contain responsive documents. See Am. Oversight v. Dep't of Homeland Sec., 691 F. Supp. 3d 109, 116 (D.D.C. 2023) (explaining that "most likely" language does not necessarily make the search inadequate).

Plaintiffs also argue that Defendants' failure to produce certain documents reflects the inadequacy of their searches. Pls. Mot. at 6-9. Specifically, Plaintiffs contend that ICE did not produce final analyses and summaries relating to the Ochoa and Owen Requests, and that CRCL did not produce any records responsive to the Mirimanian Request, expert reports regarding the Richwood Correctional Facility, and records reflecting its correspondence with ICE. Id. at 6-9. But "[e]ven if the documents did exist when the agencies conducted their searches, the failure to produce or identify a few isolated documents cannot by itself prove the searches inadequate." Lahr, 569 F.3d at 988. In Lahr, the Ninth Circuit explained that "the issue to be resolved is not whether there might exist any other documents possibly responsive to the request, but rather whether the *search* for those documents was *adequate*." Id. at 987 (citation omitted). An agency is not required "to account for documents which the requester has in some way identified

4

if it has made a diligent search for those documents in the places in which they might be expected to be found." Id. (quoting Miller v. U.S. Dep't of State, 779 F.2d 1378, 1385 (8th Cir. 1985)). Therefore, if Defendants' "searches were reasonably calculated to uncover responsive documents," their searches were adequate even if Defendants failed to produce certain documents. Lahr, 569 F.3d at 987.

However, CRCL failed to produce *any* documents responsive to the Mirimanian Request despite "positive indications of overlooked materials." Transgender L. Ctr., 46 F.4th at 780. On April 23, 2024, Plaintiffs sent Defendants a letter identifying examples of deficiencies in their productions in response to the Mirimanian requests, including the lack of videos, ICE Health Service Corps reports, and contract records. Dkt. 112-1 (Massey Decl.) ¶ 4, Ex. 1. Although the letter does not specify which Defendant is likely to possess which document, CRCL provides no explanation as to why it would not possess a single document responsive to the Mirimanian Request. CRCL merely declares that "[t]o respond to the Mirimanian Request, a Compliance staff member who was knowledgeable about the request conducted a search of Compliance electronic records systems reasonably likely to contain responsive records." 3d Law Decl. ¶ 11. The Court finds that CRCL has failed to demonstrate beyond material doubt the adequacy of its search for records responsive to the Mirimanian Request.

The Court also agrees with Plaintiffs that CRCL cannot meet its burden because of its failure to identify the search terms used to search for responsive records. CRCL declares that its Compliance Branch used "simple search terms or identifying information (like facility name, document title, or date, among other things)" to find reports or recommendations concerning complaints and "search terms look[ing] for all complaints related to the named facilities during the time period" to find recommendations or reports regarding ICE detention facilities within the New Orleans ICE Field Office of Responsibility. Id. ¶¶ 8-9. CRCL does not identify any of the search terms its Compliance Branch used to find "all communications sent by or received from CRCL concerning or in connection to any of the above complaints and investigations" or records responsive to the Mirimanian Request. Id.

5

¶¶ 10-11. Because CRCL has failed to "set[] forth the search terms and the type of search performed," it has failed to demonstrate beyond material doubt the adequacy of its search. New Orleans Workers' Ctr. for Racial Just. v. U.S. Immigr. & Customs Enf't, 373 F. Supp. 3d 16, 31 (D.D.C. 2019).

Similarly, Plaintiffs argue that ICE "did not make reasonable efforts to use consistent search terms" and provides "[n]o terms . . . for the search conducted by an employee in Chicago, and no specific name terms . . . for the data analyst's search." Pls. Opp'n at 8-9. ICE provides no explanation for these inconsistencies and instead argues that the failure to use identical search terms does not render its search inadequate. Defs. Opp'n at 3-4. The Court agrees with Plaintiffs that the use of inconsistent search terms may lead to the omission of responsive documents. And this is particularly true for searches of Maria and Ben's names, as searching different variations of their names could yield different results.[3] See Am. Oversight, 691 F. Supp. 3d at 115 (ordering ICE to conduct another search "using appropriate name variations" because "if ICE used detainees' full names only, it might have missed responsive reports"). Without an explanation as to why ICE did not use consistent search terms or consistently search variations in Maria and Ben's names, ICE has not met its burden to prove beyond material doubt that it conducted an adequate search.

The Court denies Defendants' motion for summary judgment and grants Plaintiffs' motion for summary judgment as to the adequacy of Defendants' searches. The Court directs Defendants to comply with

---

[3] For example, three Assistant Field Office Directors at the Office of Enforcement and Removal (ERO) in Dallas searched for "Maria Ochoa," but another searched for "Maria Celeste Ochoa-Yoc De Ramirez." 3d Pineiro Decl. ¶ 32(a). Similarly, while one officer in the Miami ERO field office searched for "Ben Owen," a data analyst searched for "Ben James Owen," and a different analyst searched for variations of both "Ben" and "Benjamin" with "Owen" and "James Owen." Id. ¶ 33(a)-(d).

Plaintiffs' FOIA requests and submit new declarations that detail their search terms and procedures.

## B.     Redacted or Withheld Material

Defendants seek to withhold records pursuant to FOIA exemptions 5, 6, 7(C), and 7(E). They submitted declarations and Vaughn indexes to explain their withholdings. Plaintiffs argue that Defendants insufficiently explain why they have withheld or redacted hundreds of pages of records. Pls. Opp'n at 11.

An agency bears the burden of proving an exemption applies to information it seeks to withhold from disclosure. See Yonemoto v. Dep't of Veterans Affs., 686 F.3d 681, 688 (9th Cir. 2012), overruled on other grounds by Animal Legal Def. Fund v. U.S. Food & Drug Admin., 836 F.3d 987 (9th Cir. 2016). "Withholding is permissible 'only if the agency reasonably foresees that disclosure would harm an interest protected by an exemption' and only after 'consider[ing] whether partial disclosure of information is possible' and taking 'reasonable steps necessary to segregate and release nonexempt information.'" Transgender L. Ctr., 46 F.4th at 782 (citing 5 U.S.C. § 552(a)(8)(A)). "To carry their summary judgment burden, agencies are typically required to submit an index and 'detailed public affidavits' that, together, 'identify[] the documents withheld, the FOIA exemptions claimed, and a particularized explanation of why each document falls within the claimed exemption.'" Yonemoto, 686 F.3d at 688 (citation omitted). This "Vaughn index" must be "detailed enough to allow [the] court to make an independent assessment of the government's claim [of exemption]." Id. (citation omitted); see also Vaughn v. Rosen, 484 F.2d 820 (D.C. Cir. 1973). The district court may rely on the agency's affidavits if they "contain reasonably detailed descriptions of the documents and allege facts sufficient to establish an exemption." Lewis v. Internal Revenue Serv., 823 F.2d 375, 378 (9th Cir. 1987). However, if the affidavits are "too generalized," the court "may, *in its discretion*, examine the disputed documents in camera in order to make 'a first-hand determination of their exempt status.'" Id. (citation omitted). In

7

camera review of the documents is not a substitute for the agency's burden to prove that the claimed exemptions apply.  Id.

1. **Exemption 5**

Exemption 5 applies to "inter-agency or intra-agency memorandums or letters that would not be available by law to a party other than an agency in litigation with the agency."  5 U.S.C. § 552(b)(5).  "To qualify for exemption 5 under the 'deliberative process' privilege, a document must be *both* (1) 'predecisional' or 'antecedent to the adoption of agency policy' and (2) 'deliberative,' meaning 'it must actually be related to the process by which policies are formulated.'" Nat'l Wildlife Fed'n v. U.S. Forest Serv., 861 F.2d 1114, 1117 (9th Cir. 1988) (citation omitted).

> A "predecisional" document is one prepared in order to assist an agency decisionmaker in arriving at his decision, and may include recommendations, draft documents, proposals, suggestions, and other subjective documents which reflect the personal opinions of the writer rather than the policy of the agency.  A predecisional document is a part of the "deliberative process" if the disclosure of [the] materials would expose an agency's decisionmaking process in such a way as to discourage candid discussion within the agency and thereby undermine the agency's ability to perform its functions.

Ireland v. Internal Revenue Serv., No. 2:16-cv-02855-CAS-AGR, 2017 WL 1731679, at *7 (C.D. Cal. May 1, 2017) (citing Assembly of State of Cal. v. U.S. Dep't of Com., 968 F.2d 916, 920 (9th Cir. 1992) (citations and quotation marks omitted).  The foreseeable harm from disclosure requirement was adopted "in part out of concerns regarding 'increasing agency overuse and abuse of [e]xemption 5 and the deliberative process privilege.'" Am. C.L. Union Found. of S. Cal. v. U.S. Immigr. & Customs Enf't, No. 2:22-cv-04760-SHK, 2024 WL 3370532, at *6 (C.D. Cal. July 8, 2024) (citing Reps. Comm. for Freedom of the Press v. Fed. Bureau of Investigation, 3 F.4th 350, 369 (D.C. Cir. 2021)).

Under exemption 5, "ICE withheld draft documents and related materials exchanged in the course of preparing memoranda, reports, and summaries regarding the deaths of certain detainees in ICE custody" that preceded a final decision to issue a report, public statement, or memorandum regarding those detainees. Defs. Mot. at 11. CRCL withheld recommendations from expert reports, emails, and memoranda that it transmitted to ICE that were prepared before DHS made decisions regarding "the veracity of the allegations under investigation, or any policy changes that should be made in response to them." Id. at 13.

Plaintiffs argue Defendants have failed to demonstrate that the withheld documents qualify for the "deliberative process" privilege because Defendants provide boilerplate justifications for the application of exemption 5 instead of tethering their justifications to specific documents. Pls. Opp'n at 14. Plaintiffs also argue that Defendants insufficiently explain the foreseeable harm from the disclosure of the documents and instead identify "only the generic harms that disclosure would 'chill[] agency discussion' and 'creat[e] confusion regarding what facts have actually been established and what recommendations have actually been adopted by the agency.'" [4] Id.

The Court finds that Defendants have met their burden to demonstrate that the withheld documents are predecisional and deliberative. In its declaration, ICE lists several draft documents and declares that exemption 5 applies to them because "[t]he preparation, revision, and review of these documents constitutes a central process by which ICE deliberates over both the facts surrounding these detainee

---

[4] Additionally, Plaintiffs argue that ICE does not establish that undated documents are "predecisional" and inconsistently redacted similar recommendations as "deliberative." See Pls. Opp'n at 13. The Court is not persuaded by these arguments. Documents that do not contain dates can nonetheless clearly constitute draft documents that precede final decisions. See Lahr, 569 F.3d at 983-84 (finding an undated document predecisional). And as Defendants point out, "Plaintiffs do not identify a single instance of inconsistent redaction." Defs. Opp'n at 9-10.

9

deaths and any policy recommendations that should be made in an effort to avoid future deaths in ICE custody." 3d Pineiro Decl. ¶ 42. ICE has established that these draft documents qualify for exemption 5 because they consist of proposals and internal deliberations and contributed to final agency reports, such as Detainee Death Reviews. See id. ¶ 43; see also Nat'l Wildlife Fed'n, 861 F.2d at 1118-19 ("[T]he deliberative process privilege has been held to cover . . . documents which would 'inaccurately reflect or prematurely disclose the views of the agency.'") (citation omitted). Similarly, CRCL declares that it shares recommendations regarding its findings and best practices with the relevant DHS component, beginning an iterative process during which the recommendations may be refined. 3d Law Decl. ¶¶ 21-23. Therefore, CRCL's recommendations are both predecisional and deliberative because they "continued to undergo further deliberations concerning the nature and details of respondent's final policy language and implementation." Id. ¶ 23; see also Nat'l Wildlife Fed'n, 861 F.2d at 1121 ("Recommendations on how best to deal with a particular issue are themselves the *essence* of the deliberative process. So long as such recommendations do not represent final agency policy, it is clear that they fall within the deliberative process privilege.").

However, the Court agrees with Plaintiffs that Defendants' declarations and Vaughn indexes fail to establish the foreseeable harm from disclosure of these documents. Defendants declare that disclosure would inhibit the exchange of information within their agencies and create public confusion regarding what information constitutes final agency decisions or actions.[5] 3d Pineiro Decl. ¶ 43; 3d Law Decl. ¶ 25. But these are generalized assertions and "cookie-cutter formulations" of harm rather than "a focused and concrete demonstration of why disclosure of the particular type of material at issue will, in the specific

---

[5] Although ICE also declares that disclosure of its internal deliberations "could cause a great likelihood of harassment and annoyance by members of the public," ICE "cannot rely on mere speculative or abstract fears, or fear of embarrassment" to meet its burden. See 3d Pineiro Decl. ¶ 43; see also Am. Oversight, 691 F. Supp. 3d at 117 (citation omitted).

10

context of the agency action at issue, actually impede those same agency deliberations going forward." Reps. Comm. for Freedom of the Press, 3 F.4th at 370-71; see also Am. C.L. Union Found. of S. Cal., 2024 WL 3370532, at *8 ("Defendants' explanations are nearly identical to the 'chilling effect' explanation rejected by the D.C. Circuit in Reporters Committee and 'public confusion' explanation rejected by the D.C. District Court in American Oversight."). Defendants fail to explain why the disclosure of these particular recommendations and drafts would chill communications regarding the agencies' decision-making processes or how revealing the differences between the various iterations of these documents would cause confusion. See Am. C.L. Union Found. of S. Cal., 2024 WL 3370532, at *9 ("[I]f stating simply that a draft version 'differ[s] from the final version' of a policy or a statement, were enough to show reasonably foreseeable harm, agencies would never need to provide a situation specific reason for withholding a nonfinal draft.") (citation omitted). Because Defendants have failed to link the information contained in these documents to a specific foreseeable harm, they have not met their burden to withhold these documents under exemption 5. See Reps. Comm. for Freedom of the Press, 3 F.4th at 369 ("Congress added the distinct foreseeable harm requirement to foreclose the withholding of material unless the agency can 'articulate both the nature of the harm [from release] and the link between the specified harm and specific information contained in the material withheld.'") (citation omitted).

Further, Defendants have failed to demonstrate that they have disclosed all segregable portions of these withheld documents. FOIA requires that "any reasonably segregable portion of a record shall be provided to any person requesting such record after deletion of the portions which are exempt." 5 U.S.C. § 552(b). The district court may rely on an agency's declaration to determine whether "the agency met its burden to establish that all reasonably segregable material had been separated and disclosed." Hamdan, 797 F.3d at 779. Here, ICE declares that "[t]hese draft reports include factual assertions, but that material is not reasonably segregable." 3d Pineiro Decl. ¶ 42. CRCL declares that it produced all "reasonably segregable" information, "such

11

as factual information and recommendation concurrences." 3d Law Decl. ¶¶ 12, 23.  These statements are conclusory and do not "provide [[P]laintiff[s]] or the district court with specific enough information to determine whether the [agenc[ies]] had properly segregated and disclosed factual portions of those documents that the [agenc[ies]] claimed were exempt under the deliberative process privilege." Transgender L. Ctr., 46 F.4th at 785-86 (citing Pac. Fisheries, Inc. v. United States, 539 F.3d 1143, 1149 (9th Cir. 2008)).  Defendants also withheld documents in their entirety, despite the high likelihood that these documents contain some factual information that does not fall under exemption 5.  See Transgender L. Ctr., 46 F.4th at 786 ("The deliberative process privilege does not cover '[p]urely factual material that does not reflect deliberative processes . . . .'") (citation omitted).  Defendants have failed to establish that the "factual material . . . is so interwoven with the deliberative material that it is not severable" and therefore have not been relieved of their burden to segregate.  Id.

The Court denies Defendants' motion for summary judgment and grants Plaintiffs' motion for summary judgment as to documents withheld under exemption 5.  The Court directs Defendants to submit affidavits explaining the foreseeable harm from disclosure of these documents and "describing in more detail the withheld portions of these documents so that both the district court and [Plaintiffs] can evaluate [Defendants'] claims of exemption."  Id.

### 2. Exemptions 6 and 7(C)

Exemption 6 applies to "personnel and medical files and similar files the disclosure of which would constitute a clearly unwarranted invasion of personal privacy."  5 U.S.C. § 552(b)(6).  Exemption 7(C) applies to "records or information compiled for law enforcement purposes, but only to the extent that the production of such law enforcement records or information . . . could reasonably be expected to constitute an unwarranted invasion of personal privacy."  5 U.S.C. § 552(b)(7)(C).

For both exemptions, courts must "balance the privacy interest protected by the exemptions against the public interest in government openness that would be served by disclosure." Torres Consulting & L. Grp., LLC v. Nat'l Aeronautics & Space Admin., 666 F. App'x 643, 645 (9th Cir. 2016) (citation omitted); see also Lahr, 569 F.3d 964, at 974 ("Because both exemptions require balancing of public and private interests, cases arising under [e]xemption 6 also inform our analysis."). First, the agency must prove that the personal privacy interest is more than de minimis. See Torres Consulting & L. Grp., LLC, 666 F. App'x at 645. If the agency does so, the court balances the personal privacy interest with the public interest in disclosure. See id. However, "the *only* relevant public interest in the FOIA balancing analysis is the extent to which disclosure of the information sought would she[d] light on an agency's performance of its statutory duties or otherwise let citizens know what their government is up to." Yonemoto, 686 F.3d at 694 (citation omitted).

Under exemptions 6 and 7(C), ICE has withheld the names of non-ICE law enforcement officers, "non-Senior Executive Service personnel in government employment, law enforcement officers, medical professionals, other detainees and witnesses," and the names and identifiable demographic information of ICE employees. 3d Pineiro Decl. ¶¶ 54-55. ICE has also withheld "telephone numbers, email addresses, physical addresses, fax numbers, badge numbers, other identifiable numbers such as employee numbers, patient numbers, and 'A-File' numbers," and identifying information in video and audio files. Id. ¶ 56. Under exemption 6, CRCL has withheld the names and contact information of lower-level DHS employees, the names and Alien-numbers of detainees, the names and contact information of expert consultants, and the contact information of DHS managers. 3d Law Decl. ¶¶ 26-28. Under both exemptions 6 and 7(C), CRCL has withheld the names and contact information of lower-level ICE employees but only the contact information of ICE managers. Id. ¶ 30.

Plaintiffs do not dispute that the threshold requirement of exemption (b)(7)—that the records be compiled for law enforcement purposes—is met. However, they argue that Defendants improperly

13

withheld this information because of the diminished privacy rights of those accused of wrongdoing and the significant public interest in disclosure of this information, which "is illustrated by widespread reporting on deaths of ICE detainees while in government custody" and the declaration of Dr. Joseph Nwadiuko. Pls. Opp'n at 17-18.

The Court finds Defendants have met their burden to demonstrate that the redacted information qualifies for exemptions 6 and 7(C). First, the aforementioned individuals have a more than de minimis privacy interest in withholding their names and contact information from disclosure. See Ireland, 2017 WL 1731679, at *8 ("The Ninth Circuit has held that government employees involved in an investigation have 'a cognizable privacy interest under [e]xemption 6 in preventing the disclosure of their names in connection with the incident and the official investigation.'") (citing Lahr, 569 F.3d at 976). Under exemption 6, "[d]isclosures that would subject individuals to possible embarrassment, harassment, or the risk of mistreatment constitute nontrivial intrusions into privacy." Cameranesi v. U.S. Dep't of Def., 856 F.3d 626, 638 (9th Cir. 2017). Here, the disclosure of the names or contact information of those associated with investigations into the deaths of individuals detained by ICE could lead to the embarrassment or harassment of those individuals, including through unwanted contact. See Lahr, 569 F.3d at 975-76 (explaining "that protection from such unwanted contact facilitated by disclosure of a connection to government operations and investigations is a cognizable privacy interest under [e]xemptions 6 and 7(C)"). Although "an investigator's privacy interest may be reduced when there are doubts about the integrity of his efforts," Plaintiffs provide no evidence that the specific individuals whose information is redacted "behaved improperly." Id. at 977. Their accusations of impropriety are too generalized to diminish the privacy interests of all the individuals whose information has been withheld. See Defs. Opp'n at 14.

Because Defendants have established a nontrivial privacy right, the Court must balance this right to privacy against the public interest in disclosure. Plaintiffs "must show that 'the public interest sought to be advanced is a significant one' and that 'the information [sought] is

14

likely to advance that interest.'" Lane v. Dep't of Interior, 523 F.3d 1128, 1137 (9th Cir. 2008) (citation omitted). Although the public has a significant interest in knowing about the deaths of those detained by ICE, the Court agrees with Defendants that "Plaintiffs fail to explain why the public's interest in monitoring the performance of CRCL and ICE would be appreciably furthered by the release of any—much less all—of the identities and contact information withheld." Def. Opp'n at 15; see also Forest Serv. Emps. for Env't Ethics v. U.S. Forest Serv., 524 F.3d 1021, 1028 (9th Cir. 2008) (concluding "that the release of the identities of the employees who participated in the Forest Service's response to the Cramer Fire would not appreciably further the public's important interest in monitoring the agency's performance during that tragic event"). Plaintiffs provide no explanation as to why they are interested in the disclosure of the names and contact information of these individuals as opposed to the disclosure of all records generally. See Cameranesi, 856 F.3d at 644-45 (explaining that "[t]he Supreme Court has ruled that the purposes of FOIA are not fostered by disclosure of information about private individuals that 'reveals little or nothing about an agency's own conduct.'") (citation omitted). Therefore, the Court finds that the individuals' privacy interest in their names and contact information outweighs the public interest in disclosing this personal information.

The Court grants Defendants' motion for summary judgment and denies Plaintiffs' motion for summary judgment as to information withheld under exemptions 6 and 7(C).

### 3. Exemption 7(E)

Exemption 7(E) applies to law enforcement records that "would disclose techniques and procedures for law enforcement investigations or prosecutions, or would disclose guidelines for law enforcement investigations or prosecutions if such disclosure could reasonably be expected to risk circumvention of the law." 5 U.S.C. § 552(b)(7)(E). "As used in [e]xemption 7(E), 'guidelines' refer to how the agency prioritizes its investigative resources, while 'techniques and procedures' cover 'how law enforcement officials go about investigating a crime.'"

15

Anguiano v. U.S. Immigr. & Customs Enf't, 356 F. Supp. 3d 917, 923-24 (N.D. Cal. 2018) (citation omitted). Only investigative techniques that are not generally known to the public qualify for exemption 7(E). See Hamdan, 797 F.3d at 777.

Under exemption 7(E), Defendants withheld information about detention facilities—"including specific non-lethal weapons allowed to be used, the routines and staffing of officers, maps of the facilities, the location of commissary funds within detention facilities, and threat ratings of detained individuals"—internal email addresses, addresses of internal websites, law enforcement identification numbers and codes, and information about law enforcement databases. Defs. Mot. at 23-25. Plaintiffs object to Defendants' withholding of "law enforcement database" information as "overbroad" and argue that Defendants fail to explain why these records are "techniques and procedures" and not "guidelines." Pls. Opp'n at 19; Dkt. 119 at 10.

The Court agrees with Defendants that these withheld records are techniques and procedures, but that Defendants have nonetheless explained that disclosure of this information would risk circumvention of the law. Defs. Opp'n at 17. ICE submitted a detailed Vaughn index that indicates what information it withheld and why disclosure of this information would risk circumvention of the law, such as by enabling the hacking of sensitive law enforcement information, the planning of criminal activity "to take advantage of standard operating procedures," and the manipulation of law enforcement databases. Dkt. 110-4. The index also explains that this information is shared only with other law enforcement agencies or is otherwise unknown to the public. See id. In its Vaughn index, CRCL explains that it redacted information from and references to law enforcement databases and information about its electronic file structure. See Dkt. 111-2. It declares that it redacted references to DHS databases that contain notes or law enforcement procedures to protect homeland security interests. See 3d Law Decl. ¶¶ 32-33. Although CRCL's declaration and Vaughn index regarding exemption 7(E) are less detailed than those of ICE, the Court finds that this is the type of information properly withheld under the exemption.

16

Defendants have met their burden to withhold these law enforcement records under exemption 7(E).

The Court grants Defendants' motion for summary judgment and denies Plaintiffs' motion for summary judgment as to information withheld under exemption 7(E).

## IV. CONCLUSION

Defendants' motion for summary judgment is GRANTED IN PART and DENIED IN PART, and Plaintiffs' motion for summary judgment is GRANTED IN PART and DENIED IN PART.

Defendants must comply with Plaintiffs' FOIA requests as indicated above and submit new declarations that detail their search terms and procedures. Defendants' declarations must also sufficiently describe the documents withheld under FOIA exemption 5 and explain the foreseeable harm from disclosure of these documents. This information must be provided within 30 days unless the parties stipulate to additional time.

IT IS SO ORDERED.

Date: November 12, 2024

_____
Dale S. Fischer
United States District Judge